# IN THE DISTRICT COURT OF THE UNITED STATES

## for the Western District of New York

_____

|  |  |
|---|---|
| | **NOVEMBER 2014 GRAND JURY (Impaneled 11/07/2014)** |
| **THE UNITED STATES OF AMERICA** | |
|     *-vs-* | **SECOND SUPERSEDING INDICTMENT** |

**THE UNITED STATES OF AMERICA**
    *-vs-*

**DAVID PIRK**
    (Counts 1-2, 19-22, 45-46),

**ANDRE JENKINS a/k/a Little Bear**
    (Counts 1-2, 19-23, 45-46),

**TIMOTHY ENIX a/k/a Blaze**
    (Counts 1-2, 45-46),

**FILIP CARUSO a/k/a Filly**
    (Counts 1-2, 34-40, 45-46),

**EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed**
    (Counts 1-2, 10-16, 39-40, 45-46),

**JASON WILLIAMS a/k/a Toop**
    (Counts 1-2, 37-40, 45-46),

**THOMAS KOSZUTA a/k/a Kazoo**
    (Counts 1-2, 10-18, 45-46),

**GREGORY WILLSON a/k/a Flip**
    (Counts 1-16, 45-46),

**EMMETT GREEN**
    (Counts 1-2, 43-46),

**ROBERT OSBORNE, JR.**
    (Counts 1-2, 24-26, 41-42, 45-46),

**STANLEY OLEJNICZAK**
    (1-2, 10-13, 45-46),

**JACK WOOD a/k/a Jake a/k/a Snake**
    (Counts 1-2, 31-33, 45-46),

**RYAN MYRTLE**
    (Counts 1-2, 39-40, 45-46),

**THOMAS SCANLON a/k/a Tom**
    (Counts 1-2, 27-30, 41-42, 45-46),

**GLEN STACHARCZYCK a/k/a Turbo**
    (Counts 1-2, 39-40, 45-46), and

**SEAN MCINDOO a/k/a Professor**
    (Counts 1-2, 14-16, 45-46)

**NOVEMBER 2014
GRAND JURY
(Impaneled 11/07/2014)**

**SECOND
SUPERSEDING
INDICTMENT**

**15-CR-142-W**

**Violations:**
Title 18, United States Code, Sections 922(g)(1), 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(j), 1503, 1512(c)(2), 1623(c), 1951(a), 1959(a)(1), 1959(a)(3), 1959(a)(5), 1959(a)(6), 1962(d), 3 and 2; Title 21, United States Code, Sections 841(a)(1), 846, and 856(a)(1) (46 Counts and 4 Forfeiture Allegations)

## COUNT 1

### (RICO Conspiracy)

### The Grand Jury Charges That:

### Introduction

**At all times relevant to the Second Superseding Indictment:**

1.       The Kingsmen Motorcycle Club ("KMC") was a motorcycle organization comprised of individual chapters located in various counties, cities, and towns in New York, Pennsylvania, Tennessee, and Florida.  KMC Chapters in the Western District of New York were located in North Tonawanda, Buffalo, Delevan/Arcade, Olean, and Lockport, and were formerly also located in the West Side/Riverside section of Buffalo, Springville, Attica, and Gowanda.

2.       The KMC was started in or about 1959 in Lockport, New York.  The KMC's structure, rules, and chain of command were governed by written by-laws.  Pursuant to the by-laws, the KMC was "one club, not separate clubs divided by states or cities."

3.       KMC members were expected to abide by the by-laws, and failure to do so could result in punishment ranging from fines, assaults, or expulsion from the organization. Expulsion from the organization was referred to as being "out bad," at which time other KMC members were to cease all contact with expelled members.

4.       The KMC imposed additional rules known to the members, but, intentionally not written into the by-laws in the event law enforcement came into possession of them.

One such unwritten rule was that members were not to speak to law enforcement.   If it became known that a member talked to law enforcement that member was subject to being expelled from the club.

5.      Each KMC chapter had a hierarchical rank structure consisting of a President, Vice President, Sergeant at Arms, Treasurer, and Secretary.   Chapter Presidents were generally responsible for overseeing the chapter, building its membership, and ensuring its profitability.   Chapter Vice Presidents were generally responsible for the day-to-day operations of the chapter, and carrying out the orders of the Chapter President.   Chapter Sergeant-at-Arms were responsible for maintaining security and order within a particular chapter.   Chapter Secretaries were generally responsible for generating meeting minutes. Chapter Treasurers were responsible for accounting and tabulating monies collected from the collection of monthly membership dues and the illegal sale of illicit commodities occurring in the KMC chapter clubhouses.

6.      Local chapter officers answered to regional officers, including a Regional President.   Regional officers answered to national officers.   National officers included the President and the Nomad President.   The National President oversaw all KMC chapters nationwide, and the Nomad President oversaw all KMC Nomads.

7.      A KMC Nomad was a KMC member who was not required to regularly attend all of the enterprise's meetings and other events, but was expected to serve the interests of the KMC enterprise, including fighting other clubs and committing violent

crimes on behalf of the KMC. The KMC Nomads answered only to the National President, or Regional Presidents passing down orders to the Nomad President from the National President.

8. To join the KMC, applicants were required to complete an initiation process. During this period, prospective members, known as "strikers," were expected to assist the KMC with all of its activities, including activities which were criminal in nature. Before a striker was able to become a "full patch" member of the KMC, they must have earned a "top rocker" patch, "bottom rocker" patch, and the "center" KMC patch.

9. KMC members generally referred to one another by their "club names" and in some cases did not know fellow KMC members except by their club names. KMC members were also eligible to obtain rank within the organization providing further means of identification within the KMC.

10. KMC members paid monthly dues, which were divided between the local chapter and National chapter.

11. KMC members wore leather vests or jackets with the KMC emblem on the back. These vests were commonly referred to as "colors" or "patches." In addition to the KMC emblem on the back, the club's "colors" displayed other symbols such as rank and club location. The KMC "colors" and "patches" were distinctive to the KMC, and were items of significant value to the KMC and KMC members.

4

12.     KMC members were expected to follow orders issued by the National President, Regional Presidents, their own chapter Presidents, and other leaders within the KMC. These orders included committing acts of violence to include, assaulting rivals and non-compliant KMC members, shootings, and acts involving murder.

13.     KMC members were expected to attend mandatory parties and to visit other KMC chapters in New York, Pennsylvania, Florida, and Tennessee.

14.     KMC members were expected to follow club rules, enforce club rules, and to protect and defend the reputation of the KMC at all times.

15.     KMC chapter clubhouses were maintained by the KMC, and entry to and egress from each clubhouse was strictly controlled by the KMC.  Members of the public were permitted into the clubhouses only if they were with a KMC member or if they had a "courtesy card" from a KMC member.

16.     KMC chapter clubhouses maintained firearms and ammunition to defend the KMC against rival motorcycle gangs and to protect club proceeds.

17.     KMC chapter clubhouses maintained a supply of untaxed cigarettes, obtained from area Indian Reservations tax free, which were routinely sold for profit inside the KMC clubhouses.

18.     KMC chapter clubhouses permitted illicit drug use and distribution, including cocaine, marijuana, and other controlled substances, between club members, associates, friends, and supporters of the KMC.

19.     KMC clubhouses maintained a fully stocked bar, with a wide selection of beer and liquor, sales of which were utilized to generate income for the KMC.

20.     Certain KMC clubhouses maintained gambling devices and machines, such as slot and poker machines, as a means to generate income for the KMC.

21.     Individual KMC members and associates maintained access to firearms, including handguns, rifles, and shotguns.

22.     Girlfriends and wives of KMC members, referred to as "Old Ladies", were loyal to the club, followed club rules, and assisted KMC members in criminal and other activities.

23.     In 2013, certain KMC members sought to establish the KMC as a 1% club. The 1% notoriety referenced a view once articulated by a representative of the American Motorcycle Association that 99% of motorcyclists were law-abiding citizens with the remaining 1% engaged in certain activity such as drug trafficking, firearm trafficking, and acts of violence.

24.     Following the 2013 determination for KMC to became a 1% club, violence and other criminal activity occurred within and among KMC chapters and clubhouses involving those KMC members who wished to leave the KMC and join rival motorcycle organizations.


**The Enterprise**

25.     At all times relevant to this Second Superseding Indictment, there existed in the Western District of New York, and elsewhere, a criminal organization, namely the Kingsmen Motorcycle Club ("KMC"). The KMC, including its' leadership, members, and associates constituted an enterprise, as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, the activities of which affected interstate and foreign commerce, consisting of the defendants **DAVID PIRK, ANDRE JENKINS a/k/a Little Bear, TIMOTHY ENIX a/k/a Blaze, FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip, EMMETT GREEN, ROBERT OSBORNE, JR.**, **STANLEY OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a Snake, RYAN MYRTLE, THOMAS SCANLON a/k/a Tom, GLEN STACHARCZYCK a/k/a Turbo**, **SEAN MCINDOO a/k/a Professor,** and others, known and unknown.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

**Roles in KMC Enterprise**

26.     In addition to being KMC members and associates, the defendants served in various roles within the KMC enterprise, including the following:

a.      Defendant **DAVID PIRK** was a KMC National President.

b.      Defendant **ANDRE JENKINS** was a KMC member and Nomad.

c.      Defendant **TIMOTHY ENIX** was a KMC member and Florida/Tennessee Regional President.

d.      Defendant **FILIP CARUSO** was a KMC member and New York Northern Regional KMC President.

e.      Defendant **EDGAR DEKAY, II** was a KMC member, President of the North Tonawanda Chapter, and Nomad President.

f.      Defendant **JASON WILLIAMS** was a KMC member and Vice President of the North Tonawanda Chapter.

g.      Defendant **THOMAS KOSZUTA** was a KMC member and Nomad.

h.      Defendant **GREGORY WILLSON** was a KMC member and Nomad.

i.      Defendant **EMMETT GREEN** was a KMC member and Arcade/Delevan Chapter President, New York Southern Tier Regional President, and New York Regional President.

j.      Defendant **ROBERT OSBORNE, JR.** was a KMC member and Olean Chapter President

k.      Defendant **STANLEY OLEJNICZAK** was a KMC member.

l.      Defendant **JACK WOOD** was a KMC member and Sergeant at Arms of the Arcade Chapter.

m.      Defendant **RYAN MYRTLE** was a KMC member and North Tonawanda Chapter President.

n.      Defendant **THOMAS SCANLON** was a KMC member, Olean Chapter President, Nomad, and New York Regional President.

o.      Defendant **GLEN STACHARCZYCK** was a KMC member and North Tonawanda Chapter President.

8

p.       Defendant **SEAN MCINDOO** was a KMC member and Nomad.

## Purposes of the Enterprise

27.      The purposes of the KMC enterprise included the following:

a.       Promoting and enhancing the enterprise and its members and associates activities, including, but not limited to, distribution of controlled substances, maintaining premises for use and distribution of controlled substances, possession, use and sale of firearms, sale of untaxed cigarettes, and other criminal activities including promoting prostitution;

b.       Preserving and protecting the power, territory, and reputation of the enterprise and its' members through intimidation, violence, threats of violence, assaults, murder, and attempted murder;

c.       Placing victims, potential victims, potential witnesses, and others in fear of the enterprise, its members, and associates, through violence and threats of violence; and

d.       Generating and maximizing the profits, reputation, and membership of the enterprise from a variety of illegal activity including but not limited to drug trafficking, firearm sales, sale of untaxed cigarettes, sale of alcohol, gambling, robbery, and prostitution.

## The Racketeering Conspiracy

28.      Beginning on a date unknown, but starting no later than the year 2006, and continuing to the date of the return of this Second Superseding Indictment, in the Western District of New York, and elsewhere, the defendants, **DAVID PIRK, ANDRE JENKINS a/k/a Little Bear, TIMOTHY ENIX a/k/a Blaze, FILIP CARUSO a/k/a Filly,**

9

**EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip, EMMETT GREEN, ROBERT OSBORNE, JR.**, **STANLEY OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a Snake, RYAN MYRTLE, THOMAS SCANLON a/k/a Tom, GLEN STACHARCZYCK a/k/a Turbo, SEAN MCINDOO a/k/a Professor,** and others known and unknown, being persons employed by and associated with the KMC enterprise, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly, willfully, and unlawfully, combine, conspire, confederate, and agree, together and with others, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Section 1961(1) and (5), consisting of:

a.    Multiple threats and acts involving:

(1)    Murder, in violation of New York Penal Law Sections 125.27(1)(a)(viii), 125.25(1),100.10, 105.15, 110 and 20;

(2)    Murder, in violation of Florida Statutes Annotated Section 782.04(1)(a)(1), 782.04(1)(a)(2)(d)-(f), and 777.04(1)-(3);

(3)    Robbery, in violation of New York Penal Law Sections 160.15(1), 160.15(2), 160.15(3), 160.15(4), 160.10(1), 160.10(2),105.10, 105.13, 105.15, 110, and 20;

(4)    Robbery, in violation of Florida Statutes Annotated Sections 812.13(1), and 777.04(1)-(3);

(5)    Kidnapping, in violation of Florida Statutes Annotated Sections 787.01(1)(a)(1)-(3), and 777.04(1)-(3);

b.    Multiple offenses involving the manufacture, importation, receiving, concealment, selling, and distribution of controlled substances in violation of the following provisions of federal law:

(1)    Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute, and to Distribute, Controlled Substances);

(2)    Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute, and Distribution, of Controlled Substances);

(3)    Title 21, United States Code, Section 856(a)(1) (Maintaining Drug Involved Premises);

c.    Multiple acts indictable under the following provisions of federal law:

(1)    Title 18, United States Code, Section 1503 (Obstruction of Justice);

(2)    Title 18, United States Code, Section 1512(a) (Witness Tampering);

(3)    Title 18, United States Code, section 1951(a) (Hobbs Act Robbery);

(4)    Title 18, United States Code, Section 2342(a) (Trafficking of Contraband Cigarettes).

29.    It was part of the conspiracy that the defendants, **DAVID PIRK, ANDRE JENKINS a/k/a Little Bear, TIMOTHY ENIX a/k/a Blaze, FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop,  THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip, EMMETT GREEN, ROBERT OSBORNE, JR., STANLEY OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a Snake, RYAN MYRTLE, THOMAS SCANLON a/k/a Tom, GLEN STACHARCZYCK a/k/a Turbo, SEAN MCINDOO a/k/a Professor,** and others, known and unknown, agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

11

**Manner and Means**

30.     The manner and means by which the defendants and associates agreed to conduct and participate in the conduct of the KMC enterprise to further the goals of the enterprise and achieve its purposes included, but was not limited to, the following:

a.      Members of the enterprise were expected to learn and abide by the rules and code of conduct of the enterprise, including the written by-laws and unwritten rules, with violence meted out to members who broke these rules;

b.      Members of the enterprise agreed to make efforts to avoid detection by law enforcement, and to refuse to cooperate with law enforcement;

c.      Members of the enterprise held meetings, referred to as "church," in which they discussed, among other things, the structure and organization of the enterprise; the finances of the enterprise; threats posed by rival motorcycle gangs and the status of disputes with rival motorcycle gangs; actual or perceived law enforcement activity directed at the enterprise; the status of arrested and incarcerated members and associates of the enterprise; disciplinary measures to be taken against members of the enterprise who violated rules; collection of money used to aid other members; violent crimes to be committed by the members of the enterprise or acts of violence committed by rival motorcycle gangs or noncompliant members against the enterprise; ways to conceal criminal activity committed by the enterprise, its members, and associates; and reinforcement of KMC rules;

d.      Members and associates of the enterprise purchased, stored, maintained, and circulated firearms, and agreed that club members and clubhouses would possess and contain firearms, for use in criminal activity by members and associates, in order to defend

KMC members and associates, and to retaliate against rival motorcycle gangs and other rivals who pose a threat to the KMC;

e.      Members and associates of the enterprise agreed that the club and club members would maintain certain premises including but not limited to KMC clubhouses for the manufacture, importation, receiving, concealment, selling, and distribution of controlled substances;

f.      Members and associates of the enterprise agreed that the club and club members would maintain certain premises including but not limited to KMC clubhouses for the sale and distribution of various alcohol and tobacco products in violation of local, state and federal law;

g.      Members and associates of the enterprise committed, and agreed that other members would commit, certain acts of violence, including murder, attempted murder, assault with dangerous weapons, assault, kidnaping, and other acts of violence to protect, preserve, and expand the enterprise's reputation and criminal operations;

h.      Members and associates of the enterprise protected, and agreed to protect, higher ranking members of the enterprise;

i.      Members and associates of the enterprise protected, and agreed to protect, the enterprise by refusing to cooperate with law enforcement, members and associates of the enterprise committed, and agreed that any member or associate who cooperated with law enforcement would be subject assault, menacing and other acts of violence, as well as removal from the KMC enterprise;

j.      Members and associates of the enterprise promoted a climate of fear through violence and threats of violence;

k.      Members and associates of the enterprise protected, and agreed to protect, the enterprise by committing various acts of violence, including but not limited to assault, menacing, and robbery upon any other member, associate, or civilian who was either non-complaint or perceived to be non-complaint with the established rules and procedures of the enterprise;

l.      Members used private Facebook messages and cellular phones to communicate and conduct club business;

m.      Members recruited women to perform "strip" dances inside KMC clubhouses and to engage in sexual encounters with KMC members and associates in order to increase club profits and membership; and

n.      KMC members, including the defendant **DAVID PIRK** and other high-ranking KMC members, preserved and protected the power, territory, and reputation of the enterprise, and promoted and enhanced the enterprise and its members' and associates' activities by forcibly shutting down certain KMC chapters deemed non-compliant with KMC rules and directives, by expanding and seeking to expand the presence of the KMC into other chapters, cities, and states, and by retaliating against non-compliant members who "jump patch" (a term used for leaving the Kingsmen to join a rival motorcycle club) and provide information to rival motorcycle clubs.

## Overt Acts

In furtherance of the conspiracy, and to affect the object and purposes thereof, the defendants, and others known and unknown, committed various overt acts, including but not limited to the following:

(1)     On or about September 12, 2009, defendant **GREGORY WILLSON**, punched Victim A, a person known to the Grand Jury, in the face repeatedly while other KMC members watched because Victim A attempted to exit a KMC clubhouse in Meadville, Pennsylvania, in violation of KMC rules that only KMC members are able to let someone in or out of a clubhouse.

(2)     On or about September 12, 2009, defendant **GREGORY WILLSON** confiscated Victim A's cellular phone so that Victim A could not contact law enforcement or any other person.

(3)     On or about September 12, 2009, female associates of defendant **GREGORY WILLSON** and the KMC attempted to clean Victim A's face of blood in an effort to conceal the assault.

(4)     On or about September 12, 2009, a KMC member known to the Grand Jury provided a helmet and sunglasses to Victim A in order to conceal injuries to Victim A's face while defendant **GREGORY WILLSON** transported Victim A on his motorcycle from Pennsylvania to a residence in Olean, New York.

(5)     From on or about September 13, 2009, through and including September 15, 2009, defendant **GREGORY WILLSON** and other members and associates of the KMC, including members of his family, kept Victim A at a residence in Olean, New York against her will to conceal her facial injuries from the authorities or any other person.

(6)     From on or about September 13, 2009, through and including September 15, 2009, defendant **GREGORY WILLSON** and other members and associates of the Kingsmen provided Victim A with, and administered to her, controlled substances, including heroin.

(7)     From on or about September 12, 2009, through and including September 15, 2009, defendant **GREGORY WILLSON** and other members and associates of the Kingsmen repeatedly sexually assaulted Victim A.

(8)     From on or about September 15, 2009, until in or about early 2010, defendant **GREGORY WILLSON** intermittently conducted surveillance on Victim A in order to intimidate Victim A and dissuade Victim A from cooperating with authorities.

(9)     At various times during his association and membership in the KMC, defendant **GREGORY WILLSON** possessed with intent to distribute, and distributed, cocaine, marijuana, and heroin.

(10)    At various times during his association and membership in the KMC, defendant **GREGORY WILLSON** possessed various firearms, including handguns and long guns.

(11)    In or about March 2013, during the course of "Bike Week" in Daytona, Florida, defendants **DAVID PIRK** and **EDGAR DEKAY, II** and other KMC members discussed the KMC becoming a 1% biker club.

(12)    In or about 2013, the KMC members affiliated with defendant, **DAVID PIRK** began eliminating non-compliant members remaining loyal to a former KMC National President.

(13)    On or about June 7, 2013, defendants **THOMAS KOSZUTA**, **STANLEY OLEJNICZAK**, **GREGORY WILLSON**, and **THOMAS SCANLON**, and other KMC members traveled to the Kingsmen Springville clubhouse in Springville, New York, on orders from defendant **EDGAR DEKAY, II**, to forcibly shut down the chapter and strip

16

Springville KMC members of their colors because they were deemed to be non-compliant KMC members.

(14)    On or about June 7, 2013, defendants **THOMAS KOSZUTA, STANLEY OLEJNICZAK,** and **GREGORY WILLSON,** and others, some of whom possessed and brandished firearms, surrounded the KMC Springville members and demanded to speak with former Springville and Regional President Victim B, a person known to the Grand Jury, in the Springville Chapter church room.

(15)    On or about June 7, 2013, defendants **GREGORY WILLSON** and **THOMAS KOSZUTA,** and other KMC members forced Victim B into the church room and, defendant **THOMAS KOSZUTA** demanded Victim B's colors and struck him in the head with a blunt object when Victim B refused to comply.

(16)    On or about June 7, 2013, after defendant **THOMAS KOSZUTA** struck Victim B in the head with a blunt object, other KMC members, including defendants **GREGORY WILLSON**, **THOMAS KOSZUTA**, and **STANLEY OLEJNICZAK**, stole items from the Springville clubhouse, including but not limited to, United States currency, cases of untaxed cigarettes, bottles of beer including Bud, Bud Light, and Labatt Blue, bottles of liquor including bottles of Jose Cuervo and Jack Daniels, firearms, a flat screen television, KMC t-shirts, KMC vests with patches, Victim B's cell phone, Victim B's KMC ring, a KMC statue, and other items.

(17)    On or about June 7, 2013, after defendants **GREGORY WILLSON**, **THOMAS KOSZUTA,** and **STANLEY OLEJNICZAK,** and others stole items from the Springville clubhouse, Victim B's cellular phone and KMC vest were placed inside a burn barrel outside the clubhouse at which time they were burned and destroyed.

(18)     On or about June 7, 2013, after defendant **THOMAS KOSZUTA** struck Victim B in the head with a blunt object, other Kingsmen assisting defendant **THOMAS KOSZUTA** used bleach to clean areas where Victim B bled, and cut and removed portions of the rug which contained Victim B's blood.

(19)     As a result of the June 7, 2013 assault of Victim B and forcible removal of property from the Springville Chapter clubhouse, defendant **GREGORY WILLSON** was elevated to the position of Nomad within the KMC.

(20)     Sometime before July 25, 2013, defendant **EDGAR DEKAY, II** called Victim C, a former Kingsmen, and a person known to the Grand Jury, and demanded his KMC patches.   Later, that same day, four KMC members, including defendant **SEAN MCINDOO**, went to Victim C's house to demand his KMC patches.

(21)     On or about August 3, 2013, defendants **EDGAR DEKAY, II**, **GREGORY WILLSON**, **THOMAS KOSZUTA**, and **SEAN MCINDOO**, and others removed the seats to defendant **JACK WOOD's** van, loaded shotguns into the van, and drove to Springville, New York to confront dismissed KMC members who were believed to be loyal to a former KMC national president.

(22)     On or about August 3, 2013, defendants **EDGAR DEKAY, II**, **GREGORY WILLSON**, **THOMAS KOSZUTA,** and **SEAN MCINDOO,** and another person known to the Grand Jury drove to the vicinity of the former Springville Chapter clubhouse and fired a shotgun from the van at several former Springville KMC members and associates who were standing outside the former Springville Chapter clubhouse.

(23)     Sometime in 2013, defendant **RYAN MYRTLE** and another KMC member known to the Grand Jury, distributed a group photograph of former Springville KMC

members and gave orders to current Kingsmen members to "beat on sight" any former Springville KMC members.

(24)    At various times in or about 2013, defendant **JACK WOOD's** garage at his residence was utilized as the Delevan/Arcade KMC Chapter clubhouse, at which, defendant **JACK WOOD** stored and maintained various firearms, including shotguns, for availability and use by other KMC members fighting the former Springville members.

(25)    On various Friday evenings in or about 2013, defendant, **JACK WOOD**, used his garage to conduct church meetings for the Arcade/Delevan KMC Chapter.

(26)    On or about August 9, 2013, defendant **GREGORY WILLSON** possessed a loaded Taurus, Model 80, .38 caliber special revolver, thirty-four (34) rounds of .38 caliber ammunition, approximately 7.90 grams of cocaine, a KMC vest with a Nomad patch and the name "Flip," and other items at 57 Humphrey Road, Upper Apartment, Buffalo, New York.

(27)    On or about August 9, 2013, defendant **EDGAR DEKAY, II** made efforts to find out why the police were looking for defendant **GREGORY WILLSON**.

(28)    In or about Fall 2013, defendant **GREGORY WILLSON**, using a telephone, threatened Victim C, a person known to the Grand Jury, that he was going to be beaten or found in a creek.

(29)    On or about November 1, 2013, defendant **THOMAS KOSZUTA** and another Kingsmen member punched, threatened with a gun, and attempted to remove the vest of a former KMC member, Victim D, a person known to the Grand Jury, who wore a "Brotherhood and Loyalty" patch on his KMC vest and was believed by defendant **THOMAS KOSZUTA** to be loyal to a former Kingsmen National President.

(30)     On or about November 1, 2013, defendant **THOMAS KOSZUTA** and another KMC member, known to the Grand Jury, possessed a knife and a loaded Raven .25 caliber semi-automatic handgun, inside a vehicle in which defendant **THOMAS KOSZUTA** and another KMC member were traveling during the assault of Victim D.

(31)     In or about January 2014, defendant **FILIP CARUSO** and another KMC member traveled from New York to Florida on orders of defendant **DAVID PIRK** to assist in recovering KMC colors from a KMC Chapter in Hernando Valley, Florida who "jumped patch" from the KMC to the Pagans, a rival 1% motorcycle club.

(32)     In or about January 2014, defendant **FILIP CARUSO**, armed with a Smith and Wesson .32 caliber revolver and another KMC member travelled from New York to the Deland, Florida KMC Chapter Clubhouse where defendant **FILIP CARUSO**, and others, including defendant **ANDRE JENKINS**, loaded shotguns and rifles into a rental vehicle.

(33)     In or about January 2014, defendants **FILIP CARUSO** and **ANDRE JENKINS,** while armed with firearms travelled to a KMC Clubhouse in Leesburg, Florida, met with KMC National President defendant **DAVID PIRK,** KMC Florida/Tennessee Regional President defendant **TIMOTHY ENIX**, and others, and agreed that they would get their KMC colors back from the Pagans by any means necessary, including murdering Pagans and kidnapping Pagan Old Ladies.

(34)     On or about February 24, 2014, defendant **FILIP CARUSO**, and others shut down the Attica Chapter KMC clubhouse on defendant **DAVID PIRK**'s orders.

(35)     On or about February 25, 2014, defendant **FILIP CARUSO** possessed a loaded Smith and Wesson .32 caliber revolver, in Buffalo, New York.

(36)   In or about the summer of 2014, defendant **FILIP CARUSO** supplied a Jennings 9mm, Model Bryco 59 firearm, to a KMC associate in order to satisfy a debt for cocaine previously provided to defendant **FILIP CARUSO**.

(37)   On or about August 3, 2014, Kingsmen members from the Northern Region of New York, including defendants **FILIP CARUSO, ED DEKAY, JASON WILLIAMS** and **GLEN STACHARCZYK,** and Paul Maue and others, obtained firearms from the North Tonawanda Chapter KMC clubhouse and went to the South Buffalo Chapter KMC clubhouse to confront defendant **DAVID PIRK** about KMC rule changes.   During the confrontation defendant **FILIP CARUSO** possessed a Kel-Tec firearm in his waistband and several armed KMC members, who were in town from Florida, arrived to support defendant **DAVID PIRK** during the confrontation.

(38)   On or about August 3, 2014, after the confrontation at the South Buffalo Chapter KMC clubhouse, KMC members from the Northern Region of New York, including defendant **FILIP CARUSO** and Paul Maue and other KMC members, had a meeting with defendant **DAVID PIRK** inside the South Buffalo Chapter clubhouse.

(39)   In or about August 2014, defendant **FILIP CARUSO** and another KMC member punched and struck fellow KMC member "Florida Joe" with a pool cue and a mag light inside the Niagara Falls Chapter clubhouse.

(40)   In or about August 2014, upon orders from defendant **FILIP CARUSO**, KMC member Daniel "DJ" Szymanski struck KMC member Victim E, a person known to the Grand Jury, with a two-by-four piece of wood because Victim E did not attend a mandatory meeting in Jamestown, New York when a rival motorcycle club, known as the Pagans, were in Jamestown, New York.

(41)     On or about September 1, 2014, defendants **ANDRE JENKINS** and **DAVID PIRK** communicated via cellular telephone.

(42)     On or about September 2, 2014, defendants **ANDRE JENKINS** and **DAVID PIRK** communicated via cellular telephone.

(43)     On or about September 2, 2014, defendant **DAVID PIRK** communicated via cellular telephone with a KMC member of the Olean, New York KMC Chapter.

(44)     In or about early September 2014, defendant **ANDRE JENKINS** borrowed a Harley Davidson bagger-style motorcycle bearing Tennessee license plates from a KMC member in Tennessee in order to travel to New York.

(45)     On or about and between September 2, 2014, and September 3, 2014, defendant **ANDRE JENKINS** traveled from Tennessee to the Olean, New York Chapter clubhouse.

(46)     On or about September 3, 2014, defendants **ANDRE JENKINS** and **DAVID PIRK**, and another KMC member, known by the nickname, "Drifter" arrived in Olean, New York at the Olean Chapter clubhouse.

(47)     On or about September 3, 2014, KMC Olean Chapter President defendant **ROBERT OSBORNE, JR.** and defendants **DAVID PIRK** and **ANDRE JENKINS**, and another KMC member, had a closed door meeting inside the Olean Chapter clubhouse.

(48)     On or about September 3-4, 2014, defendant **ANDRE JENKINS** possessed a handgun inside the Olean Chapter clubhouse.

(49)     On or about September 3-4, 2014, defendant **ANDRE JENKINS** had a conversation with another KMC member about a female associate of the KMC member

accompanying **JENKINS** to travel to Niagara Falls to obtain information from the Nickel City Nomads.

(50)    On or about September 4, 2014, defendant **ANDRE JENKINS** traveled to Niagara Falls, New York, with a person known to the Grand Jury.

(51)    On or about September 4, 2014, defendant **ANDRE JENKINS** told the person known to the Grand Jury that they were going to attempt to collect information from members of the Outlaws and the Nickel City Nomads, to pretend the person known to the Grand Jury was from Tennessee, and to pretend that defendant **ANDRE JENKINS** was no longer with the KMC.

(52)    On or about September 4, 2014, defendant **ANDRE JENKINS** and the person known to the Grand Jury met with several members of the Nickel City Nomads who previously "jumped patch" from the KMC to the Nickel City Nomads.

(53)    On or about September 4, 2014, defendant **ANDRE JENKINS** had two cellular telephones and handed a pay as you go phone ("burner phone") to the person known to the Grand Jury and told that person, if anything happens to call "Pirk" using the number stored in the phone.

(54)    On or about September 5, 2014, after leaving a bar in North Tonawanda attended by several members of the Nickel City Nomads, defendant **ANDRE JENKINS** and the person known to the Grand Jury met with defendant **DAVID PIRK** and another KMC member traveling with him.

(55)    At all times on or about and between September 4, 2014, and September 6, 2014, defendant **ANDRE JENKINS** possessed a firearm.

(56)     On or about September 5, 2014, defendant **ANDRE JENKINS** discussed the change in demeanor of the Nickel City Nomads towards him and stated that KMC members Paul Maue and Daniel "DJ" Szymanski were the only ones who knew what he was doing there.

(57)     Sometime on or about and between September 4, 2014 and September 6, 2014, defendant **DAVID PIRK** told defendant **ANDRE JENKINS** to "take care of it" in reference to killing Paul Maue and Daniel "DJ" Szymanski.

(58)     On or about September 6, 2014, at approximately 2:42 a.m., defendant **DAVID PIRK** called Paul Maue via cellular telephone after which Paul Maue and Daniel "DJ" Szymanski exited out the North Tonawanda KMC Chapter clubhouse located at 322 Oliver Street, North Tonawanda, New York.

(59)     On or about September 6, 2014, defendant **ANDRE JENKINS** shot and killed Paul Maue and Daniel "DJ" Szymanski behind the North Tonawanda KMC Chapter clubhouse.

(60)     On or about September 6, 2014, defendant **ANDRE JENKINS** drove to the Olean Chapter KMC clubhouse during which time he threw away the firearm used to kill Paul Maue and Daniel "DJ" Szymanski while traveling on Route 219.

(61)     On or about September 6, 2014, after defendant **ANDRE JENKINS** arrived at the Olean Chapter clubhouse, another KMC member burned the clothing that defendant **ANDRE JENKINS** was wearing when he shot and killed Paul Maue and Daniel "DJ" Szymanski.

(62)     At some point following the murders of Paul Maue and Daniel "DJ" Szymanski on September 6, 2014, Olean Chapter President defendant **ROBERT**

**OSBORNE, JR.** ordered the clubhouse video deleted to destroy evidence that defendant **ANDRE JENKINS** and defendant **DAVID PIRK** were in the Olean clubhouse.

(63)   On or about September 6-7, 2014, defendant **ANDRE JENKINS** traveled from New York to Tennessee.

(64)   At various times between September 5, 2014, and August 29, 2015, defendant **THOMAS SCANLON** used a cellular telephone to communicate with defendant **DAVID PIRK**.

(65)   On or about September 6, 2014, defendant **THOMAS SCANLON** met with defendant **DAVID PIRK**.

(66)   On September 26, 2014, at 8:06 p.m., defendant **ANDRE JENKINS** called defendant **DAVID PIRK** via cellular telephone.

(67)   On November 10, 2014, defendant **ANDRE JENKINS** possessed a loaded Bersa .380 caliber pistol in Darien, Georgia.

(68)   In or about December 2014, defendants **EMMETT GREEN** and **ROBERT OSBORNE, JR.**, and other Olean Chapter Kingsmen members assaulted Victim F, a person known to the Grand Jury.

(69)   On or about July 31, 2015, defendant **GREGORY WILLSON** possessed a Hi Point, Model JHP, .45 caliber handgun, twenty (20) rounds of .45 caliber ammunition, ten (10) rounds of 7.62 caliber ammunition, one (1) round of .22 caliber ammunition, one (1) round of .308 caliber ammunition, one (1) round of .38 caliber ammunition, a loaded .45 caliber magazine, and unloaded .45 caliber magazine, a loaded AK-47 magazine, an unloaded AK-47 magazine, a fired .40 caliber shell case, marijuana, a full patch KMC

Nomad vest, KMC by-laws, and other documents and items related to the KMC at 2936 Five Mile Road, Allegany, New York.

(70)    On or about August 1, 2015, defendant **GREGORY WILLSON**, during a telephone call from jail, requested a person known to the Grand Jury go to the Olean Chapter clubhouse to inform chapter members about **WILLSON**'s arrest because his cellular telephone, which was seized by law enforcement, contained phone numbers of his fellow KMC members.

(71)    On or about August 2, 2015, defendant **GREGORY WILLSON**, during a telephone call from jail, requested a person known to the Grand Jury go to the Olean Chapter KMC clubhouse to inform chapter members about **WILLSON**'s arrest because his cellular telephone, which was seized by law enforcement, contained phone numbers of his fellow KMC members.

(72)    On or about August 26, 2015, defendant **JACK WOOD** possessed a hatchet with a wooden handle, a Tasco sight scope, several knives, a Sears, Model M-300, 12 gauge semi-automatic shotgun, a Marlin, Model 336W, .30-30 caliber lever-action rifle, pellet guns, twenty-one (21) rounds of 7.62 x 39mm ammunition, three (3) boxes of .33 caliber ammunition, four (4) rounds of 12 gauge shotgun ammunition, a musket, marijuana, a marijuana bong, a marijuana pipe, and KMC meeting minutes at 2717 California Hill Road, Delevan, New York.

(73)    At various times between in or about 2010 and in or about 2014, defendants **FILIP CARUSO** and **JASON WILLIAMS**, and others, maintained the premises known as the Westside KMC Chapter clubhouse, located at 66 Peoria Street, Buffalo, New York, to use, maintain, and distribute controlled substances, including cocaine and marijuana.

(74)     At various times between in or about 2010 and in or about 2014, defendants **FILIP CARUSO** and **JASON WILLIAMS**, and others, stored firearms inside the premises known as the Westside KMC Chapter clubhouse, located at 66 Peoria Street, Buffalo, New York.

(75)     At various times between in or about 2013 and in or about 2014, defendant **JASON WILLIAMS** sold and distributed cocaine and marijuana inside the North Tonawanda Chapter KMC clubhouse located at 322 Oliver Street, North Tonawanda, New York.

(76)     At various times between in or about 2008 and in or about 2014, defendants **EDGAR DEKAY, II, FILIP CARUSO**, **JASON WILLIAMS**, **GLEN STACHARCZYK** and **RYAN MYRTLE,** and others, maintained the premises known as the North Tonawanda Chapter Kingsmen clubhouse located at 322 Oliver Street, North Tonawanda, New York, to use, maintain, and distribute controlled substances, including cocaine and marijuana.

(77)     At various times between in or about 2008 and in or about 2014, defendants **EDGAR DEKAY, II, FILIP CARUSO**, **JASON WILLIAMS**, **GLEN STACHARCZYK** and **RYAN MYRTLE,** and others, stored firearms inside the premises known as the North Tonawanda Chapter Kingsmen clubhouse located at 322 Oliver Street, North Tonawanda, New York.

(78)     At various times between in or about 2011 and in or about August 2015, defendants **ROBERT OSBORNE, JR.** and **THOMAS SCALON**, and others, maintained the premises known as the Olean Kingsmen Chapter clubhouse, located at 122 East Pine

Street, Olean, New York, to use, maintain, and distribute controlled substances, including cocaine and marijuana.

(79)    At various times between in or about 2013 and in or about August 2015, defendant **EMMETT GREEN**, and others, maintained the premises known as the Delevan/Arcade Kingsmen Chapter clubhouse, located at 63 Main Street, Delevan, New York, to use, maintain, and distribute controlled substances, including cocaine and marijuana.

(80)    In or about 2013, defendant **EDGAR DEKAY, II** purchased handguns inside the North Tonawanda Chapter Kingsmen clubhouse located at 322 Oliver Street, North Tonawanda, New York.

(81)    At various times between in or about 2008 and in or about 2013, defendant **EDGAR DEKAY, II** distributed cocaine inside the North Tonawanda Chapter Kingsmen clubhouse located at 322 Oliver Street, North Tonawanda, New York.

(82)    At various times between in or about 2009 and in or about 2014, defendant **FILIP CARUSO** distributed cocaine and marijuana inside various Kingsmen Chapter clubhouses.

(83)    At various times between in or about 2013 and in or about 2015, defendant **EMMETT GREEN,** and others, stored firearms inside the premises known as the Delevan/Arcade Kingsmen Chapter clubhouse.

(84)    At various times between in or about 2009 and in or about 2014, defendant **FILIP CARUSO** possessed and sold firearms.

(85)    At various times between in or about 2006 and in or about 2015, defendant **GREGORY WILLSON** distributed cocaine, marijuana, and heroin.

28

(86)    At various times between in or about 2006 and in or about 2015, defendant **GREGORY WILLSON** possessed and sold firearms.

(87)    Beginning on a date unknown, but starting no later than the year 2006, and continuing to the date of the return of this Second Superseding Indictment, defendants **DAVID PIRK, ANDRE JENKINS, TIMOTHY ENIX, FILIP CARUSO, EDGAR DEKAY, II, JASON WILLIAMS, THOMAS KOSZUTA, GREGORY WILLSON, EMMETT GREEN, ROBERT OSBORNE, JR.**, **STANLEY OLEJNICZAK, JACK WOOD, RYAN MYRTLE, THOMAS SCANLON, GLEN STACHARCZYCK**, and **SEAN MCINDOO**, and others, maintained the premises known as the South Buffalo Chapter Kingsmen clubhouse located at 846/850 East Eagle Street, Buffalo, New York, to use, maintain, and distribute controlled substances, including cocaine and marijuana.

### Notice of Special Sentencing Factors With Respect to Count 1

1.    On or about September 6, 2014, in the Western District of New York, defendants **DAVID PIRK** and **ANDRE JENKINS**, with intent to cause the death of another person, did knowingly, intentionally, and unlawfully cause the death of Paul Maue in violation of New York Penal Law Sections 125.25(1) and 20.

2.    On or about September 6, 2014, in the Western District of New York, defendants **DAVID PIRK** and **ANDRE JENKINS**, with intent to cause the death of another person, did knowingly, intentionally, and unlawfully cause the death of Daniel "DJ" Szymanski in violation of New York Penal Law Sections 125.25(1) and 20.

**All in violation of Title 18, United States Code, Section 1962(d).**

## COUNT 2

### (Possession of Firearms in Furtherance of Crime of Violence)

### The Grand Jury Further Charges That:

Beginning in or before 2006, and continuing until on or about the date of the  return of this Second Superseding Indictment, the defendants, **DAVID PIRK, ANDRE JENKINS a/k/a Little Bear, TIMOTHY ENIX a/k/a Blaze, FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip, EMMETT GREEN, ROBERT OSBORNE, JR.**, **STANLEY OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a Snake, RYAN MYRTLE, THOMAS SCANLON a/k/a Tom, GLEN STACHARCZYCK a/k/a Turbo**, and **SEAN MCINDOO a/k/a Professor**, in furtherance of a crime of violence for which they may be prosecuted in a court of the United States, that is, a violation of Title 18, United States Code, Sections 1962(d), committed in the manner set forth in Count 1 of this Second Superseding Indictment the allegations of which are incorporated herein by reference,  did knowingly and unlawfully possess firearms.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.**

## COUNT 3

### (Conspiracy to Distribute Cocaine)

### The Grand Further Jury Further Charges That:

Between in or about 2010, the exact date being unknown, and on or about August 9, 2013, in the Western District of New York, and elsewhere, the defendant, **GREGORY**

**WILLSON a/k/a Flip**, did knowingly, willfully and unlawfully combine, conspire and agree with others, known and unknown to the Grand Jury, to commit the following offenses, that is, to possess with intent to distribute, and to distribute, a quantity of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

**All in violation of Title 21, United States Code, Section 846.**


## COUNT 4

**(Possession with Intent to Distribute Cocaine)**

**The Grand Jury Further Charges That:**

On or about August 9, 2013, in the Western District of New York, the defendant, **GREGORY WILLSON a/k/a Flip**, did knowingly, intentionally and unlawfully possess with the intent to distribute a quantity of cocaine, a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.**


## COUNT 5

**(Using and Maintaining Premises for Drug Dealing)**

**The Grand Jury Further Charges That:**

Beginning in or about October 2012 and continuing to on or about August 9, 2013, in the Western District of New York, the defendant, **GREGORY WILLSON a/k/a Flip**, did knowingly, intentionally and unlawfully use and maintain a place, that is, the premises

at 57 Humphrey Road, upper apartment, Buffalo, New York, for the purpose of manufacturing, distributing and using cocaine, a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.**

## COUNT 6

**(Distribution of Marijuana)**

**The Grand Jury Further Charges That:**

Beginning in or before 2009 and continuing until on or about July 31, 2015, in the Western District of New York, the defendant, **GREGORY WILLSON a/k/a Flip**, did knowingly, intentionally and unlawfully possess with the intent to distribute, and distribute, a quantity of marijuana, a Schedule I controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D), and Title 18, United States Code, Section 2.**

## COUNT 7

**(Possession of Firearms in Furtherance of Drug Trafficking Crimes)**

**The Grand Jury Further Charges That:**

Beginning in or before 2009 and continuing until on or about July 31, 2015, in the Western District of New York, the defendant, **GREGORY WILLSON a/k/a Flip**, in furtherance of drug trafficking crimes for which he may be prosecuted in a court of the United States, that is, violations of Title 21, United States Code, Sections 846, 841(a)(1), and 856(a)(1), committed in the manner set forth in Counts 3, 4, 5, and 6 of this Second

Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.**

## COUNT 8

**(Felon in Possession of Firearm)**

**The Grand Jury Further Charges That:**

On or about August 9, 2013, in the Western District of New York, the defendant, **GREGORY WILLSON a/k/a Flip**, having been convicted on or about May 8, 2002, in the United States District Court for the Western District of New York, and on or about October 12, 1993; on or about January 11, 1994; and on or about February 3, 1999, in County Court, Cattaraugus County, New York, of crimes punishable by imprisonment for a term exceeding one year, unlawfully did knowingly possess, in and affecting commerce, a firearm, namely, a Taurus, Model 80, .38 caliber Special revolver, bearing serial number 708150.

**All in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 2.**

## COUNT 9

**(Felon in Possession of Firearm and Ammunition)**

**The Grand Jury Further Charges That:**

On or about July 31, 2015, in the Western District of New York, the defendant, **GREGORY WILLSON a/k/a Flip**, having been convicted on or about May 8, 2002, in

33

the United States District Court for the Western District of New York, and on or about October 12, 1993; on or about January 11, 1994; and on or about February 3, 1999, in County Court, Cattaraugus County, New York, of crimes punishable by imprisonment for a term exceeding one year, unlawfully did knowingly possess, in and affecting commerce, a firearm, namely, a Hi Point, Model JHP, .45 caliber semi-automatic handgun, bearing serial number X491425, and ammunition, namely, sixteen (16) rounds of Federal .45 caliber ammunition; two (2) rounds of CCI .45 caliber ammunition; one (1) round of REM-UMC .45 caliber ammunition; one (1) round of R-P .45 caliber ammunition; one (1) round of R-P .22 caliber ammunition; one round of R-P .38 caliber ammunition; one (1) round of PS over 1950 .303 caliber ammunition; and ten (10) rounds of 3 over 96 7.62 mm ammunition.

**All in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 2.**

## COUNT 10

**(Hobbs Act Conspiracy)**

**The Grand Jury Further Charges That:**

Beginning in or about June 2013, the exact date being unknown to the Grand Jury, and continuing to on or about June 7, 2013, in the Western District of New York, and elsewhere, the defendants, **EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed**, **THOMAS KOSZUTA a/k/a Kazoo**, **GREGORY WILLSON a/k/a Flip**, and **STANLEY OLEJNICZAK**, did knowingly, willfully and unlawfully combine, conspire and agree with others known and unknown, to obstruct, delay and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and

commodities in commerce by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in particular, the robbery and extortion of assets, including a mobile telephone, firearms, a flat screen television, bottles of liquor, cases of beer, Kingsmen Motorcycle Club t-shirts, Kingsmen Motorcycle Club vests, Kingsmen Motorcycle Club patches, a Kingsmen Motorcycle Club ring, and cigarettes, from Victim B, a person known to the Grand Jury, and other members and associates of the Springville Kingsmen Clubhouse located at 7935 Route 39, Springville, New York.

**All in violation of Title 18, United States Code, Section 1951(a).**

## COUNT 11

**(Hobbs Act Robbery)**

**The Grand Jury Further Charges That:**

On or about June 7, 2013, in the Western District of New York, and elsewhere, the defendants, **EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed**, **THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip,** and **STANLEY OLEJNICZAK,** and others, did unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect, commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the defendants, **ED DEKAY, II a/k/a Ed a/k/a Special Ed, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip,** and **STANLEY OLEJNICZAK,** and others, did unlawfully take and obtain personal property, consisting of a mobile telephone, firearms, a

flat screen television, bottles of liquor, cases of beer, Kingsmen Motorcycle Club t-shirts, Kingsmen Motorcycle Club vests, Kingsmen Motorcycle Club patches, a Kingsmen Motorcycle Club ring, and cigarettes, from the person of and in the presence of Victim B, a person known to the Grand Jury, and other members and associates of the Springville Kingsmen Clubhouse located at 7935 Route 39, Springville, New York, against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to Victim B and other members and associates of the Springville Kingsmen Clubhouse located at 7935 Route 39, Springville, New York, that is, by striking Victim B in the head with a blunt object causing injury and by outnumbering the other members and associates of the Springville Kingsmen Clubhouse while armed with firearms.

**All in violation of Title 18, United States Code, Sections 1951(a) and 2.**

## COUNT 12

**(Assault with a Dangerous Weapon in Aid of Racketeering)**

**The Grand Jury Further Charges That:**

1.     At all times relevant to this Second Superseding Indictment, there existed an enterprise, the Kingsmen Motorcycle Club enterprise, as more fully described in Paragraphs 1 through 27 and 30 of Count 1 of this Second Superseding Indictment, which are realleged and incorporated by reference as though set forth fully herein.   The KMC including its leadership, members and associates constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce.   The

enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.      At all times relevant to this Second Superseding Indictment, the above-described enterprise, the Kingsmen Motorcycle Club, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely,

a.      Multiple threats and acts involving:

(1)      Murder, in violation of New York Penal Law Sections 125.27(1)(a)(viii), 125.25(1),100.10, 105.15, 110 and 20;

(2)      Murder, in violation of Florida Statutes Annotated Section 782.04(1)(a)(1), 782.04(1)(a)(2)(d)-(f), and 777.04(1)-(3);

(3)      Robbery, in violation of New York Penal Law Sections 160.15(1), 160.15(2), 160.15(3), 160.15(4), 160.10(1), 160.10(2),105.10, 105.13, 105.15, 110, and 20;

(4)      Robbery, in violation of Florida Statutes Annotated Sections 812.13(1), and 777.04(1)-(3), and

(5)      Kidnapping, in violation of Florida Statutes Annotated Sections 787.01(1)(a)(1)-(3), and 777.04(1)-(3).

b.      Multiple offenses involving the manufacture, importation, receiving, concealment, selling, and distribution of controlled substances in violation of the following provisions of federal law:

(1)      Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute, and to Distribute, Controlled Substances);

(2)      Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute, and Distribution, of Controlled Substances); and

(3)      Title 21, United States Code, Section 856(a)(1) (Maintaining Drug Involved Premises).

c.      Multiple acts indictable under the following provisions of federal law:

(1)     Title 18, United States Code, Section 1503 (Obstruction of Justice);

(2)     Title 18, United States Code, Section 1512(a) (Witness Tampering);

(3)     Title 18, United States Code, section 1951(a) (Hobbs Act Robbery); and

(4)     Title 18, United States Code, Section 2342(a) (Trafficking of Contraband Cigarettes).

3.      On or about June 7, 2013, in the Western District of New York, the defendants, **EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip,** and **STANLEY OLEJNICZAK**, together with others, known and unknown, for the purpose of maintaining and increasing position within the KMC enterprise, an enterprise engaged in racketeering activity, did knowingly and unlawfully assault Victim B, a person known to the Grand Jury, with a dangerous weapon, in violation of New York Penal Law Sections 120.05(1), 120.05(2), 110 and 20.

**All in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.**

## COUNT 13

**(Use of a Firearm During and in Relation to Crimes of Violence)**

**The Grand Jury Further Charges That:**

On or about June 7, 2013, in the Western District of New York, the defendants, **EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed**, **THOMAS KOSZUTA a/k/a Kazoo**, **GREGORY WILLSON a/k/a Flip**, and **STANLEY OLEJNICZAK**, during and in relation to crimes of violence for which they may be prosecuted in a court of the United

States, that is, violations of Title 18, United States Code, Sections 1951(a) and 1959(a)(3), committed in the manner as set forth in Counts 10, 11, and 12 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully use, carry, and brandish, and in furtherance of such crimes, did knowingly and unlawfully possess and brandish, firearms.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2.**

## COUNT 14

**(Attempted Murder in Aid of Racketeering)**

**The Grand Jury Further Charges That:**

1.      Paragraphs 1 and 2 of Count 12 of this Second Superseding Indictment are realleged and incorporated by reference as though set forth fully herein.


2.      On or about August 3, 2013, in the Western District of New York, the defendants, **EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed**, **THOMAS KOSZUTA a/k/a Kazoo**, **GREGORY WILLSON a/k/a Flip**, and **SEAN MCINDOO a/k/a Professor**, together with others, for the purpose of maintaining and increasing position within the KMC enterprise, an enterprise engaged in racketeering activity, did unlawfully attempt to murder former Kingsmen Springville Chapter members and associates, in violation of New York Penal Law Sections 125.25(1), 110 and 20.

**All in violation of Title 18, United States Code, Sections 1959(a)(5) and 2.**

39

## COUNT 15

### (Assault with a Dangerous Weapon in Aid of Racketeering)

### The Grand Jury Further Charges That:

1.      Paragraphs 1 and 2 of Count 12 of this Second Superseding Indictment are realleged and incorporated by reference as though set forth fully herein.


2.      On or about August 3, 2013, in the Western District of New York, the defendants, **EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip,** and **SEAN MCINDOO a/k/a Professor**, together with others, for the purpose of maintaining and increasing position within the KMC enterprise, an enterprise engaged in racketeering activity, did unlawfully assault and attempt to assault former Kingsmen Springville Chapter members and associates with a dangerous weapon, in violation of New York Penal Law Sections 120.00, 120.05(1)-(2), 120.14, 120.15, 110 and 20.

**All in violation of Title 18, United States Code, Sections 1959(a)(3) and 1959(a)(6) and 2.**


## COUNT 16

### (Use and Discharge of a Firearm During and in Relation to Crimes of Violence)

### The Grand Jury Further Charges That:

On or about August 3, 2013, in the Western District of New York, the defendants, **EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip,** and **SEAN MCINDOO a/k/a Professor,** together

40

with others, during and in relation to crimes of violence for which they may be prosecuted in a court of the United States, that is, violations of Title 18, United States Code, Sections 1959(a)(5), 1959(a)(3) and 1959(a)(6), committed in the manner as set forth in Counts 14 and 15 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully use, carry, brandish, and discharge, and in furtherance of such crimes, did knowingly and unlawfully possess, brandish, and discharge a firearm.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.**


## COUNT 17

**(Assault with a Dangerous Weapon in Aid of Racketeering)**

**The Grand Jury Further Charges That:**

1.      Paragraphs 1 and 2 of Count 12 of this Second Superseding Indictment are realleged and incorporated by reference as though set forth fully herein.


2.      On or about November 1, 2013, in the Western District of New York, the defendant, **THOMAS KOSZUTA a/k/a Kazoo**, for the purpose of maintaining and increasing position within the KMC enterprise, an enterprise engaged in racketeering activity, did knowingly and unlawfully assault and attempt to assault Victim D, a person known to the Grand Jury, with a dangerous weapon, in violation of New York Penal Law Sections 120.05(1)-(2), 120.14, 120.15, 110 and 20.

**All in violation of Title 18, United States Code, Sections 1959(a)(3), 1959(a)(6) and 2.**

## COUNT 18

**(Use of a Firearm During and in Relation to a Crime of Violence)**

**The Grand Jury Further Charges That:**

On or about November 1, 2013, in the Western District of New York, the defendant, **THOMAS KOSZUTA a/k/a Kazoo**, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, a violation of Title 18, United States Code, Sections 1959(a)(3) and 1959(a)(6), committed in the manner as set forth in Count 17 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully use, carry, and brandish, and in furtherance of such crime, did knowingly and unlawfully possess and brandish, a firearm, namely a Raven Arms, Model P-25, .25 caliber semi-automatic pistol, bearing serial number 598480.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2.**


## COUNT 19

**(Murder in Aid of Racketeering)**

**The Grand Jury Further Charges That:**

1.     Paragraphs 1 and 2 of Count 12 of this Second Superseding Indictment are realleged and incorporated by reference as though set forth fully herein.


2.     On or about September 6, 2014, in the Western District of New York, defendants, **DAVID PIRK** and **ANDRE JENKINS a/k/a Little Bear**, for the purpose of maintaining and increasing position within the KMC enterprise, an enterprise engaged in

racketeering activity, did knowingly and unlawfully murder Paul Maue, in violation of New York Penal Law Sections 125.25(1) and 20.

**All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.**


## COUNT 20

**(Murder in Aid of Racketeering)**

**The Grand Jury Further Charges That:**

1.      Paragraphs 1 and 2 of Count 12 of this Second Superseding Indictment are realleged and incorporated by reference as though set forth fully herein.


2.      On or about September 6, 2014, in the Western District of New York, defendants, **DAVID PIRK** and **ANDRE JENKINS a/k/a Little Bear**, for the purpose of maintaining and increasing position within the KMC enterprise, an enterprise engaged in racketeering activity, did knowingly and unlawfully murder Daniel "DJ" Szymanski, in violation of New York Penal Law Sections 125.25(1) and 20.

**All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.**


## COUNT 21

**(Possession and Discharge of Firearm in
Furtherance of Crime of Violence)**

**The Grand Jury Further Charges That:**

On or about September 6, 2014, in the Western District of New York, the defendants, **DAVID PIRK** and **ANDRE JENKINS a/k/a Little Bear**, during and in relation to a crime of violence for which they may be prosecuted in a court of the United

States, that is, a violation of Title 18, United States Code, Section 1959(a)(1), committed in the manner set forth in Count 19 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully use, carry and discharge, and in furtherance of such crime, did knowingly and unlawfully possess and discharge, a firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), and that in the course of this violation, the defendants, **DAVID PIRK** and **ANDRE JENKINS a/k/a Little Bear**, caused the death of a person through the use of a firearm, which killing was a murder as defined in Title 18, United States Code, Section 1111, in that the defendants, with malice aforethought, did willfully, deliberately, maliciously, and with premeditation kill Paul Maue, by shooting him with a firearm.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), 924(j) and 2.**

## COUNT 22

**(Possession and Discharge of Firearm in Furtherance of Crime of Violence)**

**The Grand Jury Further Charges That:**

On or about September 6, 2014, in the Western District of New York, the defendants, **DAVID PIRK** and **ANDRE JENKINS a/k/a Little Bear**, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, a violation of Title 18, United States Code, Section 1959(a)(1), committed in the manner set forth in Count 20 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully use, carry and discharge, and in furtherance of such crime, did knowingly and unlawfully possess and

discharge, a firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), and that in the course of this violation, the defendants, **DAVID PIRK** and **ANDRE JENKINS a/k/a Little Bear**, caused the death of a person through the use of a firearm, which killing was a murder as defined in Title 18, United States Code, Section 1111, in that the defendants, with malice aforethought, did willfully, deliberately, maliciously, and with premeditation kill Daniel "DJ" Szymanski, by shooting him with a firearm.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), 924(j) and 2.**

## COUNT 23

**(Felon in Possession of a Firearm)**

**The Grand Jury Further Charges That:**

Between on or about September 4, 2014, and on or about September 6, 2014, in the Western District of New York, the defendant, **ANDRE JENKINS a/k/a Little Bear**, having previously been convicted on or about June 2, 1998, and on or about September 8, 2010, in Circuit Court, Second Judicial Circuit, County of Minnehaha, South Dakota, of crimes punishable by imprisonment for a term exceeding one year, unlawfully did knowingly possess, in and affecting commerce, a firearm, namely, a Glock, Model 19, 9mm semi-automatic handgun, bearing serial number PWT451.

**All in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).**

## COUNT 24

### (Accessory After the Fact)

### The Grand Jury Further Charges That:

Beginning in or about September 2014 and continuing until on or about July 15, 2015, in the Western District of New York, the defendant, **ROBERT OSBORNE, JR.**, knowing that an offense against the United States has been committed, that is, murder in aid of racketeering by David Pirk and Andre Jenkins a/k/a Little Bear, in violation of Title 18, United States Code, Section 1959(a)(1), committed in the manner set forth in Counts 19 and 20 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did receive, relieve, comfort, and assist the offenders, David Pirk and Andre Jenkins a/k/a Little Bear, in order to hinder and prevent their apprehension, trial, and punishment.

**All in violation of Title 18, United States Code, Section 3.**

## COUNT 25

### (Obstruction of Justice)

### The Grand Jury Further Charges That:

On or about July 15, 2015, in the Western District of New York, the defendant, **ROBERT OSBORNE, JR.**, did corruptly obstruct, influence, and impede, and attempt to corruptly obstruct, influence, and impede, an official proceeding, that is, a Grand Jury investigation of RICO Conspiracy and Murder in Aid of Racketeering,  in violation of Title 18, United States Code, Sections 1962(d) and 1959(a)(1), committed in the manner set forth in Counts 1, 19, and 20 of this Second Superseding Indictment, the allegations of which are

incorporated herein by reference, by testifying falsely as to whether David Pirk was in Olean, New York, in September 2014, and by further testifying falsely about whether the defendant had a meeting with David Pirk, Andre Jenkins a/k/a Little Bear, and another Kingsmen member inside the Olean Kingsmen Chapter Clubhouse in early September 2014.

**All in violation of Title 18, United States Code, Section 1512(c)(2).**


## COUNT 26

**(Obstruction of Justice)**

**The Grand Jury Further Charges That:**

On or about July 15, 2015, in the Western District of New York, the defendant, **ROBERT OSBORNE, JR.**, did corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede the due administration of justice in investigations being conducted by a Grand Jury and the Federal Bureau of Investigation in the Western District of New York, by testifying falsely and evasively as to whether David Pirk was in Olean, New York, in September 2014, and by further testifying falsely about whether he had a meeting with David Pirk, Andre Jenkins a/k/a Little Bear, and another Kingsmen member inside the Olean Kingsmen Chapter Clubhouse in early September 2014.

**All in violation of Title 18, United States Code, Section 1503.**

## COUNT 27

### (Obstruction of Justice)

### The Grand Jury Further Charges That:

Between on or about July 15, 2015, and on or about September 16, 2015, in the Western District of New York, the defendant, **THOMAS SCANLON a/k/a Tom**, did corruptly obstruct, influence, and impede, and attempt to corruptly obstruct, influence, and impede, an official proceeding, that is, a Grand Jury investigation of RICO Conspiracy, Hobbs Act Robbery, Assault with a Dangerous Weapon in Aid of Racketeering, and Murder in Aid of Racketeering,  in violation of Title 18, United States Code, Sections 1962(d), 1951(a),  1959(a)(3), and 1959(a)(1), committed in the manner set forth in Counts 1, 10, 11, 12, 19, and 20 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, by testifying falsely regarding (i) his knowledge of the Kingsmen Motorcycle Club; (ii) his relationship with David Pirk; (iii) the amount of communication he had and maintained with David Pirk; (iv) his telephone contact with David Pirk on September 6, 2014; (v) his meeting with David Pirk on September 6, 2014, in Delevan, New York; (vi)  the role of the Kingsmen Nomads; (vii) his knowledge of the shutdown of the Springville Chapter Kingsmen clubhouse on June 7, 2013; (viii) the assault of Victim B, a person known to the Grand Jury and robbery at the Springville Chapter Kingsmen clubhouse on June 7, 2013;  (ix) the purpose and substance of his meeting with the Outlaws in Olean, New York, in the summer of 2014; and (x) his role in the Kingsmen Motorcycle Club.

All in violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT 28

**(Obstruction of Justice)**

**The Grand Jury Further Charges That:**

Between on or about July 15, 2015, and on or about September 16, 2015, in the Western District of New York, the defendant, **THOMAS SCANLON a/k/a Tom**, did corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede the due administration of justice in investigations being conducted by a Grand Jury and the Federal Bureau of Investigation in the Western District of New York, by testifying falsely and evasively regarding (i) his knowledge of the Kingsmen Motorcycle Club; (ii) his relationship with David Pirk; (iii) the amount of communication he had and maintained with David Pirk; (iv) his telephone contact with David Pirk on September 6, 2014; (v) his meeting with David Pirk on September 6, 2014, in Delevan, New York; (vi)  the role of the Kingsmen Nomads; (vii) his knowledge of the shutdown of the Springville Chapter Kingsmen clubhouse on June 7, 2013; (viii) the assault of Victim B, a person known to the Grand Jury and robbery at the Springville Chapter Kingsmen clubhouse on June 7, 2013; (ix) the purpose and substance of his meeting with the Outlaws in Olean, New York, in the summer of 2014; and (x) his role in the Kingsmen Motorcycle Club.

**All in violation of Title 18, United States Code, Section 1503.**

## COUNT 29

**(False Statements Before Grand Jury- Irreconcilable Statements)**

**The Grand Jury Further Charges That:**

1.     On or about September 16, 2015, in the Western District of New York, the defendant, **THOMAS SCANLON a/k/a Tom**, while testifying under oath in a proceeding before a duly empaneled and sworn Grand Jury for the United States District Court in the Western District of New York, knowingly made a material declaration which was inconsistent with a prior material declaration made by the defendant **THOMAS SCANLON a/k/a Tom** while testifying under oath in a proceeding before a duly empaneled and sworn Grand Jury for the United States District Court of the Western District of New York on or about July 15, 2015, such material declarations being inconsistent to the degree that one of them was necessarily false.

2.     It was material to each of the proceedings described in paragraph 1 to determine whether the defendant **THOMAS SCANLON a/k/a Tom** had seen David Pirk at any time during the week following the murders of Paul Maue and Daniel "DJ" Szymanski on September 6, 2014.

3.     The defendant **THOMAS SCANLON a/k/a Tom**, on or about July 15, 2015, while testifying under oath in a proceeding before a duly empaneled and sworn Grand Jury for the United States District Court of the Western District of New York, knowingly testified with respect to a material matter as follows:

Q:     Okay.  Was there on September 6th again, those shootings were in the very early morning hours of September 6, 2014.  Was there a party later that day?

A:     Where?

Q:     Out in Springville on California Road.

A:     Honestly, I don't know.

Q:     But you didn't attend any functions, any Kingsmen functions?

A:     That whole week I was home with my wife and my family.


4.     The defendant **THOMAS SCANLON a/k/a Tom**, on or about September 16, 2015, while testifying under oath in a proceeding before a duly empaneled and sworn Grand Jury for the United States District Court of the Western District of New York, knowingly testified with respect to a material matter as follows:

Q:     Okay. How long had it been since you personally saw or met with Pirk to that time?

A:     I've seen him briefly.

Q:     At what point?

A:     It was at a party that took place in De1evan. He was in a vehicle leaving. I was coming to the party. That was the only time that I'd seen him.

Q:     This would have been after the murders, correct?

A:     Yes.

Q:     Later that same day, there was a party in Delevan?

A:     I don't know if it was the same day, but I know there was a party in Delevan. I don't know exactly. I want to say it was a Saturday maybe.

Q:     So the party is close in time to the murders, but after the murders, whether it was the same day or the next?

51

A:     Yes, it was a prescheduled party that was would have been taken place after the deaths of my brothers.

                                        ***

Q:     But you didn't stop and talk or anything like that?

A:     I think I shook his hand and he was saying he was leaving and that was really about it.  It wasn't like, you know, he was in a vehicle.

                                        ***

Q:     Now, that party you attended later that evening, that was at Snake's house in Delevan?

A:     Yes.

Q:     And for a time his garage was sort of a makeshift clubhouse in Delevan?

A:     Temporarily.  Yes.

Q:     And his house is on California Hill Road, correct?

A:     Yes.


5.     The material declarations of defendant **THOMAS SCANLON a/k/a Tom** quoted in paragraphs 3 and 4 herein were irreconcilably contradictory and were material to the point in question in each of the proceedings before which such declarations were made.

   **All in violation of Title 18, United States Code, Section 1623(c).**

## COUNT 30

**(False Statements Before Grand Jury- Irreconcilable Statements)**

**The Grand Jury Further Charges That:**

1.      On or about September 16, 2015, in the Western District of New York, the defendant, **THOMAS SCANLON a/k/a Tom**, while testifying under oath in a proceeding before a duly empaneled and sworn Grand Jury for the United States District Court in the Western District of New York, knowingly made a material declaration which was inconsistent with a prior material declaration made by the defendant **THOMAS SCANLON a/k/a Tom** while testifying under oath in a proceeding before a duly empaneled and sworn Grand Jury for the United States District Court of the Western District of New York on or about July 15, 2015, such material declarations being inconsistent to the degree that one of them was necessarily false.

2.      It was material to each of the proceedings described in paragraph 1 to determine whether defendant **THOMAS SCANLON a/k/a Tom** had any information about the shutdown of the Springville Kingsmen Chapter clubhouse on or about June 7, 2013.

3.      The defendant **THOMAS SCANLON a/k/a Tom**, on or about July 15, 2015, while testifying under oath in a proceeding before a duly empaneled and sworn Grand Jury for the United States District Court of the Western District of New York, knowingly testified with respect to a material matter as follows:

Q:      Now, in the summer of 2013 there was a chapter in Springville?

A:      Yes. The chapter was from my understanding closed.

Q:      Did you hear anything about the details of how the club was shut
        down? Was there any violence involved?

A:      I don't know any details, I wasn't there.


4.      The defendant **THOMAS SCANLON a/k/a Tom**, on or about September

16, 2015, while testifying under oath in a proceeding before a duly empaneled and sworn

Grand Jury for the United States District Court of the Western District of New York,

knowingly testified with respect to a material matter as follows:

Q:      I'd like to bounce back, and I apologize, but to the incident in
        Springville with Tirk *(sic)*.  We alluded to it last time.  You're aware he
        had gotten beat up in Springville and essentially he was out of the club,
        correct?

A:      That's correct.

Q:      Now, regarding that incident I just want to follow-up, who told you
        about that occurring?

A:      Well, I can give you my side of things.

Q:      Were you there or did someone tell you? And we'll go from there.

A:      I showed up to Springville.

Q:      Okay, explain what happened?

A:      And then when I pulled up off the street, I seen that there were
        vehicles already there.  I seen you know, it's about 150-200 feet, 200
        feet from the actual road.  So I pulled up and I seen people scattering
        around the property like ants, fire ants.  I don't remember specifically
        the individuals there.   I want to say that well, Springville was
        obviously there, and I seen the Springville insignia sign was taken off
        the building.  I realized what the hell just happened that the chapter
        was essentially shutdown.

5.     The material declarations of **THOMAS SCANLON a/k/a Tom** quoted in paragraphs 3 and 4 herein were irreconcilably contradictory and were material to the point in question in each of the proceedings before which such declarations were made.

**All in violation of Title 18, United States Code, Section 1623(c).**

## COUNT 31

**(User of Controlled Substance in Possession of Firearms)**

**The Grand Jury Further Charges That:**

On or about August 26, 2015, in the Western District of New York, the defendant, **JACK WOOD a/k/a Jake a/k/a Snake**, then being an unlawful user of a controlled substance as defined in Title 21, United States Code, Section 802, namely marijuana, a Schedule I controlled substance, unlawfully did knowingly possess, in and affecting commerce, firearms, namely, a Sears, Model M-300, 12 gauge semi-automatic shotgun, bearing serial number Q119758, and a Marlin, Model 336W, .30-30 caliber lever-action rifle, bearing serial number MR97219C.

**All in violation of Title 18, United States Code, Sections 922(g)(3), 924(a)(2), and 2.**

## COUNT 32

**(Using and Maintaining Premises for Drug Dealing)**

**The Grand Jury Further Charges That:**

Beginning in or about 2013 and continuing to on or about August 26, 2015, in the Western District of New York, the defendant, **JACK WOOD a/k/a Jake a/k/a Snake**,

did knowingly, intentionally and unlawfully use and maintain a place, that is, the premises at 2717 California Hill Road, Delevan, New York, for the purpose of manufacturing, distributing and using marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.**

## COUNT 33

**(Possession of Firearms in Furtherance of Drug Trafficking Crime)**

**The Grand Jury Further Charges That:**

Beginning in or about 2013 and continuing until on or about August 26, 2015, in the Western District of New York, the defendant, **JACK WOOD a/k/a Jake a/k/a Snake**, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, a violation of Title 21, United States Code, Section 856(a)(1), committed in the manner set forth in Count 32 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.**

## COUNT 34

### (Distribution of Cocaine)

### The Grand Jury Further Charges That:

Beginning in or before 2010 and continuing until in or about September 2014, the exact dates being unknown, in the Western District of New York, the defendant, **FILIP CARUSO a/k/a Filly**, did knowingly, intentionally and unlawfully possess with the intent to distribute, and distribute, a quantity of cocaine, a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.**


## COUNT 35

### (Distribution of Marijuana)

### The Grand Jury Further Charges That:

Beginning in or before 2010 and continuing until in or about September 2014, the exact dates being unknown, in the Western District of New York, the defendant, **FILIP CARUSO a/k/a Filly**, did knowingly, intentionally and unlawfully possess with the intent to distribute, and distribute, a quantity of marijuana, a Schedule I controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D), and Title 18, United States Code, Section 2.**

## COUNT 36

**(Possession of Firearms in Furtherance of Drug Trafficking Crimes)**

**The Grand Jury Further Charges That:**

Beginning in or before 2010 and continuing until in or about September 2014, the exact dates being unknown, in the Western District of New York, the defendant, **FILIP CARUSO a/k/a Filly**, in furtherance of drug trafficking crimes for which he may be prosecuted in a court of the United States, that is, violations of Title 21, United States Code, Section 841(a)(1), committed in the manner set forth in Counts 34 and 35 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.**

## COUNT 37

**(Using and Maintaining Premises for Drug Dealing)**

**The Grand Jury Further Charges That:**

Beginning in or before 2010 and continuing to in or about 2014, the exact dates being unknown, in the Western District of New York, the defendants, **FILIP CARUSO a/k/a Filly** and **JASON WILLIAMS a/k/a Toop**, did knowingly, intentionally and unlawfully use and maintain a place, that is, the premises known as the West Side Kingsmen Chapter Clubhouse, located at 66 Peoria Street, Buffalo, New York, for the purpose of manufacturing, distributing and using marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.

## COUNT 38

**(Possession of Firearms in Furtherance of Drug Trafficking Crime)**

**The Grand Jury Further Charges That:**

Beginning in or before 2010 and continuing to in or about 2014, the exact dates being unknown, in the Western District of New York, the defendants, **FILIP CARUSO a/k/a Filly** and **JASON WILLIAMS a/k/a Toop**, in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, a violation of Title 21, United States Code, Section 856(a)(1), committed in the manner set forth in Count 37 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2**

## COUNT 39

**(Using and Maintaining Premises for Drug Dealing)**

**The Grand Jury Further Charges That:**

Beginning in or before 2008 and continuing to in or about 2014, the exact dates being unknown, in the Western District of New York, the defendants, **FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop, RYAN MYRTLE**, and **GLEN STACHARCZYK a/k/a Turbo,** did knowingly, intentionally and unlawfully use and maintain a place, that is, the premises known as the

North Tonawanda Kingsmen Chapter Clubhouse, located at 322 Oliver Street, North Tonawanda, New York, for the purpose of manufacturing, distributing and using marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.**

## COUNT 40

**(Possession of Firearms in Furtherance of Drug Trafficking Crime)**

**The Grand Jury Further Charges That:**

Beginning in or about 2008 and continuing until in or about 2014, in the Western District of New York, the defendants, **FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop, RYAN MYRTLE**, and **GLEN STACHARCZYK a/k/a Turbo,** in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, a violations of Title 21, United States Code, Section 856(a)(1), committed in the manner set forth in Count 39 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.**

## COUNT 41

**(Using and Maintaining Premises for Drug Dealing)**

**The Grand Jury Further Charges That:**

Beginning in or before 2011 and continuing to in or about August 2015, the exact dates being unknown, in the Western District of New York, the defendants, **ROBERT OSBORNE, JR.** and **THOMAS SCANLON a/k/a Tom**, did knowingly, intentionally and unlawfully use and maintain a place, that is, the premises known as the Olean Kingsmen Chapter Clubhouse, located at 122 East Pine Street, Olean, New York, for the purpose of manufacturing, distributing and using marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.**

## COUNT 42

**(Possession of Firearms in Furtherance of Drug Trafficking Crime)**

**The Grand Jury Further Charges That:**

Beginning in or before 2011 and continuing until on or about August 26, 2015, the exact dates being unknown, in the Western District of New York, the defendants, **ROBERT OSBORNE, JR.** and **THOMAS SCANLON a/k/a Tom**, in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, a violation of Title 21, United States Code, Section 856(a)(1), committed in the manner set forth in Count 41 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms.

61

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.**


## COUNT 43

**(Using and Maintaining Premises for Drug Dealing)**

**The Grand Jury Further Charges That:**

Beginning in or before 2013 and continuing to in or about August 2015, the exact dates being unknown, in the Western District of New York, the defendant, **EMMETT GREEN**, did knowingly, intentionally and unlawfully use and maintain a place, that is, the premises known as the Delevan/Arcade Kingsmen Chapter Clubhouse, located at 63 Main Street, Delevan, New York, for the purpose of manufacturing, distributing and using marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.**


## COUNT 44

**(Possession of Firearms in Furtherance of Drug Trafficking Crime)**

**The Grand Jury Further Charges That:**

Beginning in or before 2010 and continuing until in or about September 2014, in the Western District of New York, the defendant, **EMMETT GREEN**, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, a violation of Title 21, United States Code, Sections 856(a)(1), committed in the manner set

forth in Count 43 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.**


## COUNT 45

### (Using and Maintaining Premises for Drug Dealing)

### The Grand Jury Further Charges That:

Beginning on a date unknown, but starting no later than the year 2006, and continuing to the date of the return of this Second Superseding Indictment, the defendants, **DAVID PIRK, ANDRE JENKINS a/k/a Little Bear, TIMOTHY ENIX a/k/a Blaze, FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip, EMMETT GREEN, ROBERT OSBORNE, JR., STANLEY OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a Snake, RYAN MYRTLE, THOMAS SCANLON a/k/a Tom, GLEN STACHARCZYCK a/k/a Turbo**, and **SEAN MCINDOO a/k/a Professor**, and others, known and unknown, did knowingly, intentionally, and unlawfully use and maintain a place, that is, the premises known as the South Buffalo Chapter Kingsmen clubhouse located at 846/850 East Eagle Street, Buffalo, New York, for the purpose of manufacturing, distributing, and using cocaine, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance.

**All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.**

## COUNT 46

**(Possession of Firearms in Furtherance of Drug Trafficking Crime)**

**The Grand Jury Further Charges That:**

Beginning on a date unknown, but starting no later than the year 2006, and continuing to the date of the return of this Second Superseding Indictment, the defendants, **DAVID PIRK, ANDRE JENKINS a/k/a Little Bear, TIMOTHY ENIX a/k/a Blaze, FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip, EMMETT GREEN, ROBERT OSBORNE, JR., STANLEY OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a Snake, RYAN MYRTLE, THOMAS SCANLON a/k/a Tom, GLEN STACHARCZYCK a/k/a Turbo, and SEAN MCINDOO a/k/a Professor**, and others, known and unknown, in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, a violation of Title 21, United States Code, Section 856(a)(1), committed in the manner set forth in Count 45 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.**

## FIRST FORFEITURE ALLEGATION

**(Rico Forfeiture)**

**The Grand Jury Alleges That:**

Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, in the event of any defendants' conviction under

Count 1 of this Second Superseding Indictment, in that defendants, **DAVID PIRK, ANDRE JENKINS a/k/a Little Bear, TIMOTHY ENIX a/k/a Blaze, FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a Special Ed, JASON WILLIAMS a/k/a Toop, THOMAS KOSZUTA a/k/a Kazoo, GREGORY WILLSON a/k/a Flip, EMMETT GREEN, ROBERT OSBORNE JR.**, **STANLEY OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a Snake, RYAN MYRTLE, THOMAS SCANLON a/k/a Tom, GLEN STACHARCZYCK a/k/a Turbo, and SEAN MCINDOO a/k/a Professor,**

a.      have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b.      have an interest in, security of, claims against and property and contractual rights of any kind that afford a source of influence over, the enterprise as described herein, which defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, therefore are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2), and

c.      have any property constituting, and derived from any proceeds which the person obtained, directly and indirectly, from racketeering activity in violation of section 1962 and therefore subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

This property includes, but is not limited, to the following:

## Firearms, Weapons, And Ammunition

a)   One (1) Winchester 30-30 round of ammunition recovered on or about August 26, 2015, from 122 E. Pine Street, Olean NY;

b)   One pistol grip, seized on or about August 26, 2015, from 846/850 East Eagle Street, Buffalo, New York;

c)   One (1) holster, .22 magazine with ammunition and miscellaneous ammunition, one (1) BB Bun, container of BBs and targets, recovered on or about August 26, 2015, from 322 Oliver Street, North Tonawanda, New York;

d)   Forty (40) Remington 12 gauge shotgun shells, one (1) Winchester 12gauge shotgun shell and one (1) Federal 20 gauge shotgun shell, one (1) Bandolier, one (1) 24" rifled barrel (from Mossberg 12 gauge), three (3) shotgun shells and one (1) holster recovered on or about August 26, 2015 from 63 North Main Street, Delevan, NY;

e)   One (1) AK-47 type magazines containing ten (10) 7.62X39 caliber cartridges and one (1) empty AK-47 type magazine, three (3) rounds of ammunition (.22/.38/.308), one rifle scope, twenty (20) .rounds 45 caliber ammunition, two (2) magazines, one Hi Point pistol, Model JHP, 45 ACP caliber, SN: X491425, and one (1) shell casing; recovered on or about July 31, 2015 from 2936 Five Mile Road, Lot No. 4, Allegany, New York.;

f)   One (1) Connecticut Valley Arms Rifle Make: Optimum Model: Magnum Caliber: .50 SN: 61-13-02-10-22-08 with attached one (1) Tasco 3-9 X 32 scope, Model: Silver Antler (no SN visible) recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

g)   One (1) Rifle Make: Marlin Model: 336w Caliber: 30/30win SN: MR97219c with attached one (1) scope x 40 magnification, (no SN visible) recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

h)   One (1) Rifle Make: Benjamin Model: Titan Caliber: .22 SN: N11XO3325 with attached Center Pointe 4 X 32 sight, SN: S111201 recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

i)   One Sears Roebuck and Co. Automatic Shotgun, Model: 300 Caliber: 12 Gauge SN: Q119758 with attached one (1) Tasco Pro Point Sight recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

j)      One (1) Tasco Sight Scope recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

k)      One (1) Musket, make: Pedersoli, Caliber: .50 – (No Model or Serial Number) recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

l)      Six (6) knives, one (1) hatchet, three (3) boxes of .33 caliber ammunition and four (4) rounds of 12 gauge ammunition recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

m)      One (1) 7.62 X 39 round of ammunition recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

n)      Twenty (20) rounds of Winchester 762 X 39 ammunition recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

o)      One pellet gun (no identifying information) recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

p)      One Taurus, Model 80, .38 caliber special revolver, SN: 708150, with six (6) rounds .38 caliber ammunition recovered from 57 Humphrey Road, Upper Apartment, Buffalo, New York on or about August 9, 2013, and previously in the custody of the Erie County Sheriff's Office;

q)      One (1) single shot pistol (with no identifiable make, model, serial or caliber) recovered from a Confidential Source on or about September 8, 2015;

r)      One (1) knife recovered from the person of GREGORY WILSON on or about October 1, 2013 in Orchard Park, New York, previously held by the Erie County Sheriff's Office; and

s)      One (1) Raven Arms, semi-automatic pistol, Model P-25, .25 caliber, SN: 598480 with ammunition and one (1) magazine.

**All pursuant to Title 18, United States Code, Sections 1963(a), 1963(m) and 3665, and Title 28, United States Code, Section 2461.**

## SECOND FORFEITURE ALLEGATION

### (Firearms/Ammunition)

### The Grand Jury Further Alleges That:

Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, of the following firearms and ammunition:

In the event of **JACK WOOD a/k/a Jake a/k/a Snake's** conviction under either or both of Counts 31 and 33 of this Second Superseding Indictment the defendant shall forfeit his right, title and interest to the United States of any firearms and ammunition involved or used in the commission of the offense, or found in the possession or under his immediate control at the time of arrest, including, but not limited to:

a) One (1) Connecticut Valley Arms Rifle Make: Optimum Model: Magnum Caliber: .50 SN: 61-13-02-10-22-08 with attached one (1) Tasco 3-9 X 32 scope, Model: Silver Antler (no SN visible) recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

b) One (1) Rifle Make: Marlin Model: 336w Caliber: 30/30 SN: MR97219C with attached one (1) scope x 40 magnification, (no visible serial number) recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

c) One (1) Rifle Make: Benjamin Model: Titan Caliber: .22 SN: N11xo3325 with attached Center Pointe 4 X 32 sight, SN: S111201 recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

d) One Automatic Shotgun Make: Sears Roebuck and Co. Model: 300 Caliber: 12 Gauge SN: Q119758 with attached one (1) Tasco Pro Point Sight;

e) Three (3) boxes of .33 caliber ammunition and four (4) rounds of 12 gauge recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015;

f)      One (1) 7.62 X 39 round of ammunition recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015; and

g)      Twenty (20) rounds of Winchester 762 X 39 ammunition recovered from 2717 California Hill Road, Delavan, New York on August 26, 2015.

**All pursuant to Title 18, Sections 924(d)(1) and 3665; and Title 28, United States Code, Section 2461.**

## THIRD FORFEITURE ALLEGATION

### (Firearm/Ammunition)

### The Grand Jury Further Alleges That:

In the event of **GREGORY WILLSON a/k/a Flip's** conviction under any or all of Counts 7, 8, and 9 of this Second Superseding Indictment the defendant shall forfeit his right, title and interest to the United States of any firearms and ammunition involved or used in the commission of the offense, or found in the possession or under his immediate control at the time of arrest, including, but not limited to:

a)      One Taurus, Model 80, 38 special revolver, caliber: .38, SN: 708150, with six (6) rounds .38 caliber ammunition recovered from 57 Humphrey Road, Upper Apartment, Buffalo, New York on or about August 9, 2013, and previously in the custody of Erie County Sheriff's Office.

b)      One (1) AK-47 type magazines containing ten (10) 7.62X39 caliber cartridges and one (1) empty AK-47 type magazine, three (3) rounds of ammunition (.22/.38/.308), one rifle scope, twenty (20) .rounds 45 caliber ammunition, two (2) magazines, one Hi Point pistol, Model JHP, 45 ACP caliber, SN: X491425, and one (1) shell casing; recovered on or about July 31, 2015 from 2936 Five Mile Road, Lot No. 4, Allegany, New York.

**All pursuant to Title 18, Sections 924(d)(1) and 3665; and Title 28, United States Code, Section 2461.**

## FOURTH FORFEITURE ALLEGATION

### (Firearm/Ammunition)

### The Grand Jury Further Alleges That:

In the event of **THOMAS KOSZUTA a/k/a Kazoo's** conviction under either or both of Counts 17 and 18 of this Second Superseding Indictment the defendant shall forfeit his right, title and interest to the United States of any firearms and ammunition involved or used in the commission of the offense, or found in the possession or under his immediate control at the time of arrest, including, but not limited to:

> One (1) Raven Arms, Model P-25, semi-automatic pistol, .25 caliber, SN: 598480 with ammunition and one (1) magazine.

**All pursuant to Title 18, Sections 924(d)(1) and 3665; and Title 28, United States Code, Section 2461.**

## NOTICE OF SPECIAL FINDINGS FOR DAVID PIRK
### (Count 19 through and including Count 22)

1)      The allegations of Counts 19 through and including Count 22 of this Second Superseding Indictment are hereby realleged as if fully set forth herein and incorporated by reference.

2)      As Count 19 through and including Count 22 of this Second Superseding Indictment, the defendant, **DAVID PIRK**:

a)      was 18 years of age or older at the time of the offense(s) (Title 18, United States Code, Section 3591(a));

b)      intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the

offense, and the victims, Paul Maue and Daniel Szymanski, died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C));

c)      intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offenses, such that participation in the act constituted a reckless disregard for human life and the victims, Paul Maue and Daniel Szymanski, died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(D)); and

d)      committed the offense after substantial planning and premeditation to cause the death of a person (Title 18, United States Code, Section 3592(c)(9)).

**Pursuant to Title 18, United States Code, Sections 3591 and 3592.**


## NOTICE OF SPECIAL FINDINGS FOR ANDRE JENKINS a/k/a Little Bear
### (Count 19 through and including Count 22)

1)      The allegations of Counts 19 through and including Count 22 of this Second Superseding Indictment are hereby realleged as if fully set forth herein and incorporated by reference.

2)      As Count 19 through and including Count 22 of this Second Superseding Indictment, the defendant, **ANDRE JENKINS a/k/a Little Bear**:

a)      was 18 years of age or older at the time of the offense(s) (Title 18, United States Code, Section 3591(a));

b)      intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victims, Paul Maue and Daniel Szymanski, died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C));

c)      intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of

the participants in the offenses, such that participation in the act constituted a reckless disregard for human life and the victims, Paul Maue and Daniel Szymanski, died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(D)); and

d)      committed the offense after substantial planning and premeditation to cause the death of a person (Title 18, United States Code, Section 3592(c)(9)).

**Pursuant to Title 18, United States Code, Sections 3591 and 3592.**

DATED:  Buffalo, New York, March 16, 2016.

WILLIAM J. HOCHUL, JR.
United States Attorney

BY:     S/JOSEPH M. TRIPI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716/843.5839
Joseph.Tripi@usdoj.gov

BY:     S/CALEB J. PETZOLDT
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716/843.5821
Caleb.Petzoldt@usdoj.gov

A TRUE BILL:

S/FOREPERSON