UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------
UNITED STATES OF AMERICA

    -vs-                                              MOTION FOR RELEASE
                                                    AND *DE NOVO* REVIEW PURSUANT
                                                      TO 18 U.S.C. § 3145(b)
                                                      Docket No.: 15-CR-142-EAW-MJR

TIMOTHY M. ENIX, et al.,

               Defendant.
-------------------------------------------------------

| | |
|---|---|
| **MOTION BY:** | Defendant TIMOTHY M. ENIX, by his attorneys, CONNORS LLP. |
| **DATE, TIME, AND PLACE OF MOTION:** | At the earliest date and time convenient for the Court (Rochester or Buffalo). |
| | **ORAL ARGUMENT AND LEAVE TO FILE REPLY PAPERS ARE REQUESTED. IF, HOWEVER, REPLY WOULD RESULT IN A RETURN DATE AFTER JULY 1, 2016, THE DEFENSE WOULD WAIVE A REPLY.** |
| **SUPPORTING PAPERS:** | Affirmation of Terrence M. Connors, Esq., with exhibits; exhibits and affidavits docketed at Docket Item 131-1, 131-2, 131-3, 131-4, 131-5, and 131-6; affidavit of David Enix; affidavit of Malinda Enix; supplemental affidavit of Malinda Enix; memorandum of law; and all prior pleadings and proceedings. |
| **RELIEF SOUGHT AND GROUNDS FOR RELIEF:** | An Order: |

1. Directing, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), that the government produce evidence that:

    a. Mr. Enix did not engage in any act of violence to obtain the return of

       "colors" as charged in overt Act 33;

   b. Mr. Enix never traveled to the Western District of New York to "maintain[ ] a drug premises" as charged in Overt Act 87; and

   c. Any other evidence in its possession that Mr. Enix is not a risk of danger or nonappearance or not guilty of the offenses charged in the Superseding Indictment;

   And

2. Revoking the detention order issued upon arrest in the Middle District of Florida, pursuant to 18 U.S.C. § 3145(b); or, in the alternative,

3. Granting Mr. Enix release because, under the particular circumstances, his continued detention would violate the Eighth Amendment and deny him due process of law under the Fifth Amendment of the Constitution of the United States.

DATED:    Buffalo, New York
                June 11, 2016

                                          /s/ Terrence M. Connors
                                        Terrence M. Connors, Esq.
                                        James W. Grable, Jr., Esq.
                                        CONNORS LLP
                                        Attorneys for Defendant
                                         Timothy Enix
                                        1000 Liberty Building
                                        Buffalo, New York  14202
                                        (716) 852-5533
                                        tmc@connorsllp.com
                                        jwg@connorsllp.com

TO:    (via cm/ecf)
         Joseph M. Tripi, Esq.
         Assistant United States Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
UNITED STATES

                                            **AFFIRMATION IN SUPPORT**

     -vs-                                          Docket No.: 15-CR-142-EAW-MJR

TIMOTHY ENIX, et al.,

            Defendant.
------------------------------------------------------
STATE OF NEW YORK   )
COUNTY OF ERIE        ) SS.:
CITY OF BUFFALO     )

      Terrence M. Connors, Esq., affirms under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

      1.     I am an attorney at law licensed to practice in the State of New York and admitted to the bar of this Court. I am a partner in the law firm, CONNORS LLP, attorneys for defendant, TIMOTHY ENIX, in the above-referenced matter.

### Timothy M. Enix

      2.     Tim Enix has been a reliable employee at Chrysler (now known as FCA US LLC) for 30 years. He began on the assembly line and rose to a management position.

      3.     Tim Enix has been a volunteer fireman and medic in his hometown of Toledo, Ohio.

4. Tim has been vetted for a real estate license and a license to sell securities.

5. Tim is now the Chief Operating Officer of a successful accounting firm run by his brother.

6. Tim uses neither drugs nor alcohol.

7. Tim and his wife, Mindi, have raised five boys after they combined families.

8. For 57 years, Tim has been all these things. The one thing he has never been is a criminal.

9. Tim has absolutely no criminal record, has entered a plea of "not guilty" to the charges against him and maintains total innocence.

### Kingsmen Motorcycle Club

10. Tim did not join the Kingsmen Motorcycle Club ("KMC") until 2012 - - six years after the latest date the RICO conspiracy allegedly began; three years after more than a dozen of the Overt Acts; three years after the latest date when he and numerous others are alleged to have begun maintaining a drug house in Buffalo; and six years after the date when he and numerous others are alleged to have possessed guns for use in crimes in Buffalo. He simply was not around for the majority of the allegations.

11. Not only did Tim not join the KMC until 2012, he was unable to even participate for several months from September 2012 until March or April 2013 because he was involved in a serious motor vehicle accident, which necessitated

airlifting him to a trauma center because of his injuries and significant head trauma.

## The Indictment

12. Tim is named in the fewest counts charged against any defendant in this case - - only four of forty-six counts - - and in the fewest Overt Acts - - only two of eighty-seven overt acts. Tim was not even named in the original indictment.

## The Florida Proceedings

13. Given Tim's limited involvement and history, it was only logical that Florida Senior United States Pre-Trial Services Officer Brian Coomer (under the supervision of Joseph M. Alfano, SUSPSO), after interviewing Tim and conducting an investigation into his background on March 22, 2016, concluded that Tim posed no risk of non-appearance and recommended his release. *See Exhibit A* (the Pretrial Services Report, which has been filed under seal pursuant to 18 U.S.C. § 3153(c)(1)) (this exhibit, and *Exhibit C*, and *Exhibit D* were previously filed in support of a motion to Magistrate Judge Roemer, *see* Docket Items 131-1; 131-3; and 131-4, and are incorporated by reference (*Exhibits A, C,* and *D* are under seal)). Although there was a rebuttable presumption of the risk of danger based on the allegations, Officer Coomer nevertheless concluded that Tim should be released under conditions that he: (a) report to Pre-Trial Services; (b) participate or continue in mental health treatment/counseling/evaluation/ medication as directed by Pre-Trial Services; and (c) not possess any weapons or firearms. *See Exhibit A* at 3-4.

14. On March 23, 2016, after meeting with his assigned attorney, detention proceedings were conducted before United States Magistrate Judge Philip R. Lammens. These proceedings took place simultaneously with a co-defendant who had been named in many more counts than Mr. Enix and was alleged by the government to be the individual who ordered the killing of two members of the KMC in Lockport, New York. No such charges have ever been alleged against Mr. Enix.

15. Both defendants were detained.

### *De Novo* Review

16. This affirmation and the accompanying memorandum of law and exhibits are provided in support of the motion for *de novo* review and revocation of the Order entered in the Middle District of Florida detaining Tim Enix. The evidence and information submitted in support of this motion is far more comprehensive than the evidence that was provided to the Magistrate Judge who opted for detention in Florida. This evidence supports revocation of that Order and release of Tim with appropriate conditions.

17. The evidence and information establishes that: (1) Tim Enix poses no danger and no risk of flight; (2) Tim's family is willing to post their homes and cash to secure his release; (3) there are conditions that can be easily implemented that will reasonably assure Tim's appearance as required as well as the safety of the community, so that his continued detention would violate the Bail Reform Act; and (4) Tim's history, characteristics, employment situation, medical, and family

circumstances make the lengthy pretrial detention he would suffer if detained until his trial "excessive bail" and "cruel and unusual punishment" in violation of the Eighth Amendment, and would deprive him of his liberty without due process of law in violation of the Fifth Amendment.

### Relevant Background

18. Tim was arrested on March 22, 2016, and has been in federal custody ever since. It is his first time in prison.

19. On the same day, Senior United States Pretrial Services Officer Coomer conducted a thorough interview of Tim and his family and examined the circumstances pertinent to his detention or release. Senior Pretrial Services Officer Coomer recommended that Mr. Enix be released. *See Exhibit A* (Docket Item 131-1).

20. With only a brief meeting with his assigned Florida attorney, detention proceedings took place before United States Magistrate Judge Philip R. Lammens. Detention proceedings took place simultaneously with a co-defendant who was named in many more counts than Tim and who allegedly ordered the killing of two Kingsmen. *See Exhibit B* (transcript of the Florida proceedings); Docket Item 33 (the Second Superseding Indictment).

21. The government argued that the nature of the allegations against the two men warranted their pretrial detention, and the magistrate judge agreed, citing the nature of the allegations in the indictment – most of which pertained to Tim's co-defendant and the KMC ("KMC"). *See id.* The magistrate judge

concluded the detention proceedings by telling Tim and his co-defendant in a joint ruling, "You'll be transported in due course to the Western District of New York where your proceedings will continue. It's likely when you get there you'll be appointed a different lawyer to represent you." *See Exhibit B* at 55.

22. The evidence proffered with this affirmation and in support of this motion establishes that detention of Tim Enix is unwarranted under 18 U.S.C. § 3142(f) and (g), and unconstitutional for the reasons set forth in the accompanying memorandum of law.

## Release Criteria

23. In particular, Tim has almost no connection to Western New York and appears to have been charged because he was a Florida regional president of a motorcycle club, some of whose members are charged with committing crimes here in the Western District of New York.

24. Tim barely appears in the superseding indictment – in fact, he appears in the fewest counts and is scarcely mentioned in the Overt Acts set forth in Count 1 of the superseding indictment.

25. At 57 years old, he has absolutely no criminal record.

26. When Tim became aware of this investigation in 2014, he voluntarily met with FBI agents; he did not run or hide. In the many months after he was interviewed by law enforcement, he did not flee, evade authorities, obstruct any investigation, destroy evidence, tamper with witnesses, or engage in any conduct

that would suggest he is a risk of flight or a danger to his community. He simply went about his law abiding life.

27. Indeed, his entire history suggests he is a stable and productive member of his community. He is a devoted family man with substantial ties to his community, where he is gainfully employed at an accounting firm just minutes from his home and serves as its Chief Operating Officer.

28. He previously worked steadily for 30 years on the assembly line at a Chrysler factory, advancing to a management position. In fact, he has been gainfully employed his entire adult life save for a span when he was hospitalized and recovering from serious injuries sustained in a motorcycle accident (when he could not get out of bed, much less commit any crimes).

29. Tim has significant medical issues, including diabetes, the after-effects of a serious motorcycle accident, a prior stroke, neuropathy, sleep apnea, and depression that cannot be adequately managed in prison. His medical issues make pretrial detention punishment.

30. His wife also has significant medical issues, including lupus and fibromyalgia, and she relies upon her husband to assist her daily tasks. She has submitted a separate affidavit which provides additional material information.

31. Tim's employment history, including his stable white-collar employment at the time of his arrest and 30-year employment at Chrysler, establishes that he is a reliable man who does not run from responsibilities and

who takes his duties to his family and his community very seriously. For 13 years, he served as a volunteer fireman and medic in his home town of Toledo, Ohio.

32. Tim uses neither drugs nor alcohol. Abstinence from alcohol helps him manage his diabetes and medical issues while reducing the risk that he will suffer a second stroke similar to the one he suffered in 2010. A urine sample was taken from Tim when he was arrested in Florida and was negative for all controlled substances.

33. In addition to Florida Senior Probation Officer Coomer's Pretrial Services Report (attached as *Exhibit A*), retired Western District of New York Senior United States Probation Officer Colleen Rahill-Bueller conducted an extensive pretrial services investigation and agrees with Officer Coomer that Tim should be released with appropriate conditions. *See Exhibit C* (Docket Item 131-3).

34. Former Senior Probation Officer Rahill-Beuller concludes that Tim poses no risk of flight and no danger to the community and should be released.

35. Due to time constraints, United States Probation Officer Dwayne Palmer prepared only a one-page cover sheet to Senior Officer Coomer's report when Tim was transferred to this district. *See Exhibit D* (Docket Item 131-4)).

36. Unlike Senior Probation Officer Coomer and retired Senior Probation Officer Rahill-Bueller, Officer Palmer did not have adequate time to interview Tim and did no investigation other than reviewing Senior Officer Coomer's report and the superseding indictment. *See id.* Officer Palmer nevertheless "strongly

disagrees" with Senior Officer Coomer and recommends detention simply on the basis of the allegations in the indictment. *See id.*

37. Upon information and belief, the United States Probation and Pretrial Services Office in the Western District of New York is recommending detention of every single defendant in this case because of the nature of the allegations set forth in the indictment – including detention of several co-defendants who have already been released on conditions.

38. This "one size fits all" approach to detention is contrary to the legislative history of the Bail Reform Act and the statute itself. It is respectfully submitted that two Senior Pretrial Services Officers who actually investigated the facts and circumstances and applied them to the pertinent statutory factors are more qualified and in a better position to recommend whether release is appropriate than an officer who only had time to review someone else's report and the indictment.

## The Charges Against Tim

39. In any event, Tim Enix is named in the fewest counts of any defendant in this case – only 4 of 46 – and in the fewest Overt Acts – only 2 of 87. *See* Docket Item 33. Four co-defendants who have been released thus far are charged in more counts, more overt acts, and are accused of violence or drug trafficking here in the Western District of New York. No Overt Act accuses Tim of engaging in violence in the Western District of New York or anywhere else. Indeed, the indictment does not even accuse Tim of ever setting foot in the Western District of New York.

40. Indeed, upon information and belief, the government possesses evidence that Tim never engaged in any violence to obtain the return of "colors" as set forth in Overt Act 33, and never came to the Western District of New York to maintain a drug premises or engage in any other criminal activity. The government should be directed to produce any such evidence in its possession pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), for the reasons set forth in the accompanying memorandum of law.

41. The allegations against Tim are sparse, vague, and lack any specific allegation that he ever engaged in violence in this district or any other district. Presumably, this is a reflection of the absence of any evidence to support the allegations that Tim engaged in violence, drug activity, or criminal activity in the Western District of New York or anywhere else.

42. The additional accompanying affidavits and attached exhibits provide substantial evidence – much of it never presented to the Florida Magistrate Judge who ordered Tim detained – that Tim is not a risk of flight nor a danger.

43. Those who know Tim Enix best are willing to stake their futures on it. Various family members have come forward to offer their property and money to assure Tim's appearance at all future proceedings. These include:

- David Enix (Tim's brother), who offers his home: approximately $220,000 in equity;

- Ralph Enix (Tim's father), who offers his home and a second home in which his grandson resides: approximately $225,000 in total equity;

- Malinda Enix (her and Tim's marital residence): approximately $197,000 in equity (purchase price $275,000, mortgage $78,000, but real estate values have dropped);

    o **Total Equity: $642,000**

44. In addition, David Enix, Tim's brother who runs a successful accounting firm, has offered to serve as a designated person who will assume supervision of Tim and assist Pretrial Services by reporting any violation of a release condition to the Court. *See* 18 U.S.C. § 3142(c)(1)(B)(i).

45. Tim's history and circumstances prove that he will observe any conditions this Court deems appropriate.

46. Under the circumstances, detaining Tim pending his trial would be entirely unnecessary. More importantly, it would violate the Bail Reform Act and the Eighth and Fifth Amendments. There are easily imposed conditions that will reasonably assure his appearance and the safety of his community.

47. For the reasons set forth in the accompanying memorandum of law and the cumulative evidence before this Court, Tim Enix should be released with appropriate conditions, to return to his family pending the trial of this case.

48. I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   June 11, 2016
               Buffalo, New York

                                          _____Terrence M. Connors_____
                                          Terrence M. Connors, Esq.