UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

TIMOTHY ENIX, a/k/a Blaze,

Defendant.

---

**DECISION AND ORDER**

1:15-CR-00142 EAW

## INTRODUCTION

Defendant Timothy Enix, a/k/a Blaze ("Defendant") is charged in four counts of a 46-count Second Superseding Indictment (Dkt. 33) ("Indictment") returned on March 16, 2016, alleging various crimes, including a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), in connection with the operation of the Kingsmen Motorcycle Club ("KMC"). Defendant moves *in limine* to exclude evidence that he relayed to KMC members that they should not speak to law enforcement if approached, or that he suggested that they should not speak to law enforcement. (Dkt. 881-1 at 4). For the following reasons, Defendant's motion is denied.

## BACKGROUND

Defendant filed the instant motion *in limine* on November 22, 2017, arguing, among other things, that the Court should exclude evidence that he told other KMC members that they should not speak to law enforcement. (Dkt. 881). The Government filed opposition papers on December 6, 2017. (Dkt. 920). On December 27, 2017, this Court heard oral

- 1 -

argument on this matter and invited supplemental submissions on the impact of two cases—*United States v. Salazar-Garcia*, 195 F. App'x 794 (10th Cir. 2006), and *United States v. Lopez-Lopez*, 282 F.3d 1 (1st Cir. 2002)—on the pending motion. On January 5, 2018, Defendant (Dkt. 974) and the Government (Dkt. 975) filed supplemental submissions.

The Indictment in this case alleges a racketeering enterprise where, among other things, KMC members followed orders issued by the National President and Regional Presidents such as Defendant (*see* Indictment, Count 1, at ¶ 12); KMC members were expected to follow club written and unwritten rules (*see id.*, Count 1, at ¶¶ 14 and 30(a)); Defendant was a Regional President (*see id.*, Count 1, at ¶ 26(c)); and members agreed to make efforts to avoid detection by law enforcement and to refuse to cooperate with law enforcement (*see id.*, Count 1, at ¶ 30(b)). The Government seeks to produce testimony that KMC rules prohibited cooperation with law enforcement and to introduce evidence, in the form of Defendant's Facebook posts, establishing that Defendant urged KMC members not to speak to law enforcement. (Dkt. 920 at 3-4).

For example, the Government seeks to introduce a Facebook message, allegedly written by Defendant, that states: "We have nothing to hide but do not talk to them they are trained to threaten you and try to get you to talk according to our club attorney. Our attorney said they [cannot] make you talk just get their name and [department] they are with and phone number and let them know you will give it to our attorney." (*Id.* at 4). Other messages reiterate the instruction that KMC members should not "talk any club business in public" or "to anyone other than a full patch and only in a place that is private."

(*Id.* at 4-5). The Government argues that those statements are "highly relevant and probative non-hearsay statements of a party opponent and co-conspirator statements, and relate to the enterprise, conspiracy, consciousness of guilt, and provide the context and framework for predicate racketeering activity alleged in the Indictment, including acts involving obstruction of justice." (*Id.* at 4).

Defendant opposes the introduction of those Facebook messages, arguing that their admission would infringe upon his and other KMC members' Fifth Amendment right to silence. (Dkt. 881-1 at 4-5). Defendant also contends that the messages are inadmissible under Federal Rule of Evidence 403 because asking jurors to draw a negative inference from the exercise of a fundamental constitutional right is misleading and unfairly prejudicial. (*Id.* at 8).

## DISCUSSION

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

> The privilege permits a person to refuse to answer questions, in formal or informal proceedings, where the answers might be used to incriminate him in future criminal proceedings. It also allows a person to express his desire to remain silent, or to remain silent until he has the assistance of an attorney.

*United States v. Okatan*, 728 F.3d 111, 116 (2d Cir. 2013) (internal quotation marks and citations omitted).

It is well established that a defendant's post-arrest silence, after *Miranda* warnings have been provided, is not admissible in the prosecution's case-in-chief or for impeachment

purposes. *See Griffin v. California*, 380 U.S. 609, 615 (1965) ("[T]he Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."); *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976) (holding use of a defendant's post-arrest silence, after *Miranda* warnings have been provided, to impeach the defendant violates due process).

However, courts view *pre*-arrest silence somewhat differently. The Supreme Court has held that the use of a defendant's pre-arrest silence to impeach his credibility does not violate the Fifth Amendment, *Jenkins v. Anderson*, 447 U.S. 231, 237 (1980), but left open the question whether pre-arrest silence can be used as substantive evidence of guilt in the government's case-in-chief, *id.* at 236 n.2; *Okatan*, 728 F.3d at 116. The United States Court of Appeals for the Second Circuit answered that question in *Okatan*, holding that "where . . . an individual is interrogated by an officer, even prior to arrest, his invocation of the privilege against self-incrimination and his subsequent silence cannot be used by the government in its case in chief as substantive evidence of guilt." 728 F.3d at 120. In reaching that conclusion, the Second Circuit joined the First, Sixth, Seventh, and Tenth Circuits. *Combs v. Coyle*, 205 F.3d 269, 286 (6th Cir. 2000) (holding use of a defendant's pre-arrest silence as substantive evidence of guilt violates Fifth Amendment privilege against self-incrimination); *United States v. Burson*, 952 F.2d 1196, 1200-01 (10th Cir. 1991) (same); *Coppola v. Powell*, 878 F.2d 1562, 1568 (1st Cir. 1989) (same); *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1017-18 (7th Cir. 1987) (same). *Cf. United States v. Oplinger*, 150 F.3d 1061, 1066-67 (9th Cir. 1998), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010) (holding use of a

defendant's pre-arrest silence as substantive evidence of guilt does not violate Fifth Amendment); *United States v. Zanabria*, 74 F.3d 590, 593 (5th Cir. 1996) (holding Fifth Amendment did not protect the defendant's pre-arrest silence because silence was not induced by the government); *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991) (stating government may comment on a defendant's silence if it occurs prior to time that defendant is arrested and *Mirandized*).

In this case, Defendant seeks to preclude, in sum and substance, the Government's use of his pre-arrest instructions to other KMC members to exercise their right to silence if questioned by law enforcement. The facts of this case are different than those presented in *Okatan*, as Defendant did not invoke his right to silence, or advise others to exercise that right, in the presence of law enforcement. *See Okatan*, 728 F.3d at 114 (defendant asserted, in response to police questioning, the desire for a lawyer and refused to answer questions). Even so, Defendant argues that the principle underlying *Okatan* is no less applicable when a defendant is not yet in custody or in contact with law enforcement. (Dkt. 881-1 at 6-7).

The Government correctly notes that the cases involving pre-arrest silence in the presence of law enforcement are distinguishable from the circumstances presented here. (Dkt. 920 at 3). Of the courts that have concluded that a defendant's pre-arrest silence is inadmissible in the government's case-in-chief, no court has precluded evidence concerning the invocation of the right to silence *outside* the presence of law enforcement. *See Okatan*, 728 F.3d at 114 (holding that "*where . . . an individual is interrogated by an officer,*" invocation of privilege against self-incrimination and subsequent silence cannot be used in government's case-in-chief (emphasis added)); *Combs*, 205 F.3d at 286 (where

defendant "clearly invoked the privilege against self-incrimination by telling the officer to talk to his attorney," comment on the defendant's pre-arrest silence in government's case-in-chief was impermissible); *Burson*, 952 F.2d at 1200-01 (government impermissibly introduced testimony that defendant had not responded to agents' questions); *Coppola*, 878 F.2d at 1568 (defendant's statement, in response to state trooper's questions, that he was not going to confess and would not answer questions without a lawyer present was inadmissible in prosecution's case-in-chief); *Lane*, 832 F.2d at 1017 (introduction of officer's testimony that defendant said "he didn't want to make any statements" violated the Fifth Amendment).

Even assuming, for the sake of argument, that a defendant's pre-arrest silence outside the presence of law enforcement is inadmissible, that is plainly not the situation presented by the Facebook posts. Rather, Defendant affirmatively *made statements* to other alleged co-conspirators *about* their ability to remain silent when questioned by law enforcement. These affirmative statements are not protected by the Fifth Amendment. The Court is persuaded by the First Circuit's decision in *Lopez-Lopez*, in which the court held that the defendant's *post*-arrest instructions to a co-defendant to remain silent were admissible as substantive evidence of guilt. 282 F.3d at 12. In that case, Lopez-Lopez argued that evidence that he instructed his co-defendant, Luciano, "don't answer" when Luciano was questioned by an officer at the police station, violated both defendants' Fifth Amendment rights. *Id.* The defendants relied on *Doyle*, characterizing Lopez-Lopez's direction to Luciano as a reminder of Luciano's legal right to remain silent and arguing that the reminder, as well as Luciano's exercise of the right to remain silent, were used

against them at trial. *Id.* The First Circuit disagreed. The court reasoned that Luciano's post-*Miranda* silence was not used against the defendants at trial because the officer testified about what Lopez-Lopez said, not as to the silence of either defendant. *Id.*

> That what Lopez-Lopez said involved a statement about not saying anything does not put the statement into the category of post-*Miranda* silence upon which comment is impermissible. When an accused is given his *Miranda* rights, and then waives those rights by voluntarily making statements, he may not rely on *Doyle* to object to the admission of those statements simply because the statements refer to the act of keeping silent.

*Id.*

Defendant argues that this situation is distinguishable from *Lopez-Lopez* because Defendant simply "relayed sound legal advice from an attorney" and did not instruct a fellow arrestee not to answer when both were being questioned at the police station. (Dkt. 974 at 3). The Court disagrees. The First Circuit's reasoning is equally applicable in this circumstance. If the Government were to introduce testimony about Defendant's communications with other KMC members suggesting that they avoid talking to law enforcement, that testimony would be about what Defendant said and would not constitute a comment on his, or any other KMC member's, silence. If anything, the situation at hand is more removed from the Fifth Amendment than the factual circumstances of *Lopez-Lopez* because in this case, Defendant was not in custody and had not been read his *Miranda* rights. Moreover, "[a] Fifth Amendment right is . . . personal and may not be asserted vicariously." *In re Shopping Carts Antitrust Litig.*, 95 F.R.D. 299, 308 (S.D.N.Y. 1982). A defendant may not invoke the privilege against self-incrimination on behalf of others. *See Couch v. United States*, 409 U.S. 322, 327 (1973) ("By its very nature, the privilege

[against self-incrimination] is an intimate and personal one. It respects a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation."); *United States v. Passman*, 465 F. Supp. 736, 743 (W.D. La. 1979) (same).

The Court is also persuaded by the Tenth Circuit's holding in *Salazar-Garcia*, a case with a fact pattern similar to *Lopez-Lopez*. 195 F. App'x at 794 (10th Cir. 2006). In that case, Salazar-Garcia and Barragan-Cerna were arrested and advised of their rights. *Id.* at 796. As Barragan-Cerna was escorted from her holding cell to be interviewed by federal agents, Salazar-Garcia shouted to her, in Spanish, "not to say anything." *Id.* Later, prior to trial, Salazar-Garcia objected to the government's plan to introduce his comment to Barragan-Cerna as evidence of his guilt. *Id.* However, unlike the defendant in *Lopez-Lopez*, Salazar-Garcia relied on Federal Rule of Evidence 403 in arguing that his comment should have been excluded.

Rule 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The defendant in *Salazar-Garcia* reasoned, relying on *Doyle*, that statements about a defendant's right to silence are "inherently ambiguous and therefore not sufficiently probative to outweigh their prejudicial effect." *Id.* at 796-97. Although his argument was framed as a Rule 403 argument, the court reached substantively the same conclusion as the court in *Lopez-Lopez*, rejecting Salazar-Garcia's "attempt[] to extend the reasoning of *Doyle* to cases where a

defendant comments on his, or another's, right to silence." *Id.* at 797. The court explained that a "command to a co-defendant 'not to say anything' . . . clearly allows for the possibility that the defendant is urging a co-conspirator not to reveal incriminating information." *Id.* at 798. Thus, the court reasoned, "a jury is free to infer a guilty mind from a statement by one defendant to another to not say anything to the police." *Id.*

Here, Defendant also makes a Rule 403 argument, contending that the probative value of the evidence that the Government seeks to introduce is substantially outweighed by a danger of unfair prejudice, misleading the jury, and confusing the issues because there is a substantial danger that jurors will erroneously conclude that no innocent person would be concerned about talking to the police, or be misled into thinking that Defendant was telling his fellow club members to do something illegal or improper. (Dkt. 881-1 at 4-5; Dkt. 974 at 6).

Under some circumstances, the introduction of evidence that a defendant exercised his constitutional rights as substantive evidence of guilt may implicate Rule 403 concerns. In *Combs*, the Sixth Circuit held that a reasonable defense attorney would have objected to the introduction of the defendant's statement—"talk to my lawyer"—on the basis of the Ohio equivalent to Rule 403. 205 F.3d at 286. There, law enforcement officers arrived at the scene of the crime to find the defendant sitting on the ground and holding a shotgun. *Id.* at 278. When an officer asked the defendant what had happened, the defendant told him to talk to his lawyer. *Id.* at 279. At trial, defense counsel failed to "realize that use of the 'talk to my lawyer' statement as substantive evidence of guilt" might violate the Fifth Amendment. *Id.* at 286. The Sixth Circuit determined that, despite that oversight, defense

counsel should have, at the very least, objected on evidentiary grounds. *Id.* The court quoted the Ohio Supreme Court's opinion, in which the lower court reasoned that "the 'talk to my lawyer' evidence does not relate to or tend to prove prior calculation and design or purposefulness. Combs' comment simply meant that he was exercising his right to counsel and nothing more." *Id.* (quoting *State v. Combs*, 581 N.E.2d 1071, 1076 (Ohio 1991)).

Taken together, *Salazar-Garcia* and *Combs* illustrate that arguments based on the Fifth Amendment and Rule 403 are two sides of the same coin. As the Sixth Circuit recognized in *Combs*, the introduction of evidence that violates the Fifth Amendment will also violate Rule 403; the use of a defendant's invocation of the privilege against self-incrimination as substantive evidence of guilt asks jurors to infer guilt from a legally neutral action. However, as the court recognized in *Salazar-Garcia*, when a statement does not implicate the privilege against self-incrimination, that statement is unlikely to violate Rule 403—at least not because it infringes on the defendant's Fifth Amendment rights.

This case is more similar to *Salazar-Garcia* than to *Combs*. In *Combs*, the defendant's statement to the officer was a clear invocation of his Fifth Amendment rights and contained no substantive information beyond the fact that the defendant did not want to answer the officer's questions. Admission of the statement would have suggested that the jury should infer guilt from the exercise of a constitutional right. Here, as in *Salazar-Garcia*, Defendant offered advice or instructions to others regarding their Fifth Amendment rights but did not personally invoke any rights. *See Salazar-Garcia*, 195 F. App'x at 796; *see also In re Shopping Carts Antitrust Litig.*, 95 F.R.D. at 308. Given the factual circumstances and the case law, the Court concludes that the admission of the

Facebook communications would not pose a risk that the jury would infer guilt from an "insolubly ambiguous" statement. *Doyle*, 426 U.S. at 617. The Court agrees with the Government that the evidence in question is probative of the KMC's culture of noncooperation with law enforcement, as well as Defendant's consciousness of guilt (Dkt. 975 at 2), and the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, misleading the jury, or confusing the issues, Fed. R. Evid. 403. Thus, the evidence is not precluded under Federal Rule of Evidence 403. The "jury is free to infer a guilty mind from a statement by one defendant to another to not say anything to the police." *Salazar-Garcia*, 195 F. App'x at 798.

Accordingly, the Court concludes that the introduction of Defendant's Facebook messages would not violate the Fifth Amendment, and that they should not otherwise be precluded by Rule 403. However, the Court's decision does not foreclose a future argument by Defendant based on attorney-client privilege, or a request for a limiting instruction regarding the right to silence and the privilege against self-incrimination. Similarly, if there are specific Facebook posts that Defendant contends implicate Rule 403 concerns, this decision shall not preclude Defendant from raising those issues.

## CONCLUSION

For the foregoing reasons, Defendant's motion to exclude evidence that he relayed to KMC members that they should not speak to law enforcement if approached, or that he suggested that they should not speak to law enforcement (Dkt. 881-1 at 4), is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: February 12, 2018
       Rochester, New York