UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

TIMOTHY ENIX, ET AL.

Defendants.

Docket No.: 15-CR-142-EAW-MJR

## Memorandum of Law in Support of Post-Verdict Motions

CONNORS LLP
*Attorneys for Defendant Timothy Enix*
Terrence M. Connors
James W. Grable, Jr.
  of counsel

# TABLE OF CONTENTS

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................... 1

Rule 29 Judgment of Acquittal ......................................................... 2

    a)    Count 2 Must Be Set Aside Because the Statute (18 U.S.C. §
        924(c)(3)(B)) is Unconstitutionally Void for Vagueness, and
        Because Mr. Enix Did Not Agree that a Member of the
        Racketeering Conspiracy Would Attempt, Solicit, or Conspire
        to Engage in Murder in Violation of the Florida Statutes. ............. 2

        1)    18 U.S.C. § 924(c)(3)(B)(1) is Void for Vagueness and
             Mr. Enix Was Indicted and Charged with Violating an
             Unconstitutional Statute, Necessitating Setting Aside
             the Verdict. ............................................................... 3

        2)    In the Alternative, Mr. Enix Did Not Agree that a
             Member of the Racketeering Conspiracy Would
             Attempt, Solicit, or Conspire to Engage in Murder in
             Violation of the Florida Statutes. .......................................... 18

        3)    In the Alternative, Count 2 Must Be Set Aside Because
             Mr. Enix Did Not Knowingly and Unlawfully Possess
             Firearms in Furtherance of a Racketeering Conspiracy,
             and Is Not Liable for Aiding and Abetting or Under a
             *Pinkerton* Theory. .................................................................. 20

    b)    Count 8 (formerly Count 45) Must Be Set Aside Because the
        South Buffalo Clubhouse Was Not Maintained for the Purpose
        of Distributing or Using Controlled Substances, and Mr. Enix
        Did Not Knowingly Maintain It For that Purpose. ....................... 21

        1)    The South Buffalo Clubhouse Was Not Maintained for
             the Purpose of Distributing or Using Controlled
             Substances. ............................................................... 21

       2)    Mr. Enix Did Not Act Knowingly. ......................................... 25

       3)    Mr. Enix Did Not Aid or Abet Maintenance of South
              Buffalo as a Drug Premises. ................................................... 26

       4)    Mr. Enix is Not Guilty Under a *Pinkerton* Theory............... 27

   c)    Count 9 (formerly Count 46) Must Be Set Aside Because
       Count 8 Fails, and Because Mr. Enix Did Not Knowingly Use
       or Carry a Firearm in Furtherance of Maintaining the South
       Buffalo Clubhouse as a Drug Premises. ......................................... 28

       1)    Mr. Enix Did Not Knowingly Use, Carry, or Possess a
              Firearm in Furtherance of Maintaining the South
              Buffalo Clubhouse as a Drug Premises................................ 29

       2)    Mr. Enix Did Not Aid or Abet Use or Carrying of a
              Firearm with *Rosemond* Knowledge or Intent. .................... 31

       3)    Mr. Enix is Not Guilty Under a *Pinkerton* Theory
              Because No One Used or Carried Guns for the Purpose
              or in Furtherance of Maintaining the South Buffalo
              Clubhouse as a Drug Premises.............................................. 32

   d)    Count 1 Must Be Set Aside Because the Jury Agreed Mr. Enix
       Did Not Conspire to Join the Same Conspiracy as His Co-
       Defendants. ..................................................................................... 32

The Two 924(c) Counts of Conviction Cannot Both Stand............................. 37

Rule 33 and a New Trial................................................................................. 39

   a)    In the Alternative, a New Trial is Necessary ................................. 39

       1)    A New Trial Is Necessary as to Count 1 Because The
              Jury Did Not Unanimously Agree that Mr. Enix Joined
              the Same Racketeering Conspiracy as His Co-
              Defendants. .......................................................................... 40

2)    A New Trial Is Necessary as to Counts 1, 2, 8, and 9
Because the Interest of Justice Necessitates Re-Trial as
to Mr. Enix on These Counts. ............................................... 41

Mr. Enix Joins the Post-Verdict Submissions of His Co-Defendants. ............ 42

CONCLUSION ............................................................................................. 42

## INTRODUCTION

On April 17, 2018, during the trial of this matter, the Supreme Court decided *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).  The case, and others decided in its aftermath, lead to the inexorable conclusion that conviction of Mr. Enix of Count 2 would deprive him of his right to due process under the Fifth Amendment.  Count 2 must be set aside and judgment of acquittal entered because of *Dimaya* and the due process implications of that count as charged.

In addition, judgment of acquittal is warranted as to each of Counts 1, 2, 8, and 9 (as renumbered in the redacted indictment), because the evidence is insufficient to sustain conviction as to each of these counts.

In the alternative, this Court should order a new trial under Rule 33 because the verdict sheet demonstrates that the jury was not unanimous that Mr. Enix joined the same conspiracy as co-defendants Pirk and Jenkins, and because the interest of justice warrants it.

## ARGUMENT

Federal Rule of Criminal Procedure 29 provides that a court may set aside a verdict and enter judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  *See* Rule 29(a), (c)(2).  The convictions as to each of Counts 1, 2, 8, and 9 must be set aside and judgment of acquittal entered, for the reasons set forth *infra*.

1

Additionally, Mr. Enix cannot be guilty of both 924(c) counts (Counts 2 and 9 (as renumbered in the redacted indictment)) simultaneously because he cannot be guilty twice for the same single course of conduct.

Federal Rule of Criminal Procedure 33 states that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." In the alternative, a new trial is warranted as to each of the counts of conviction in the interest of justice.


## RULE 29 JUDGMENT OF ACQUITTAL

   a) **Count 2 Must Be Set Aside Because the Statute (18 U.S.C. § 924(c)(3)(B)) is Unconstitutionally Void for Vagueness, and Because Mr. Enix Did Not Agree that a Member of the Racketeering Conspiracy Would Attempt, Solicit, or Conspire to Engage in Murder in Violation of the Florida Statutes.**

Count 2 charges Mr. Enix with violating 18 U.S.C. § 924(c) by knowingly and unlawfully possessing firearms (and aiding and abetting others who did so) in furtherance of a "crime of violence . . . that is, a violation of Title 18, United States Code, Section 1962(d) . . . ." Docket Item 33 (superseding indictment) Count 2. The Supreme Court's recent decision in *Dimaya* necessitates that Count 2 be dismissed as alleged against Mr. Enix. In the alternative, the evidence is insufficient to sustain conviction as to Count 2.

2

1) **18 U.S.C. § 924(c)(3)(B)(1) is Void for Vagueness and Mr. Enix Was Indicted and Charged with Violating an Unconstitutional Statute, Necessitating Setting Aside the Verdict.**

On April 17, 2018, during the trial, the Supreme Court decided *Sessions v. Dimaya*, 138 S. Ct. 1204, 2018 WL 1513558 (2018).  The *Dimaya* court held that a portion of the federal criminal code's definition of a "crime of violence," 18 U.S.C. § 16(b), is unconstitutionally void for vagueness in violation of the right to due process guaranteed by the Fifth Amendment.  *See* 138 S. Ct. at 1210-23.

The statutory provision addressed in *Dimaya* contains two clauses defining what constitutes a "crime of violence."  *See* 18 U.S.C. § 16(a), (b).  Those clauses are:

> (a)   an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b)   any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.*  The first clause is often referred to as the "elements clause," while the second is often called the "residual clause."  *See, e.g.*, *Dimaya*, 138 S. Ct. at 1211.  The residual clause is unconstitutionally vague because it provides for "more unpredictability and arbitrariness than the Due Process Clause tolerates."  138 S. Ct. at 1216 (quoting *Johnson v. United States*, 135 S. Ct. 2551, 2558 (2015)).

The statute that Mr. Enix is charged with violating in Count 2 – 18 U.S.C. § 924(c) – contains language identical to the language that the Supreme Court found to be unconstitutionally void for vagueness in *Dimaya*.  *Compare* 18 U.S.C. §

3

Case 1:15-cr-00142-EAW-MJR   Document 1322-1   Filed 06/25/18   Page 8 of 47

924(c)(3) *with* 139 S. Ct. at 1211 *and* 18 U.S.C. § 16(a), (b).  Seventeen days after

*Dimaya*, the Tenth Circuit concluded that the residual clause of § 924(c)(3), referred

to in the Second Circuit as the "risk-of-force[1] clause," suffers from the same

constitutional infirmity that plagues § 16(b).  *See United States v. Salas*, 889 F.3d

681 (10th Cir. 2018); *see also United States v. Hopper*, 2018 WL 2383258 (10th Cir.

May 25, 2018) (Federal Appendix decision following *Salas* to vacate a jury's 924(c)

guilty verdict in light of *Dimaya*).  The *Salas* decision reaches the unavoidable

conclusion (in the wake of *Johnson* and *Dimaya*) that just as § 16(b) is too vague to

withstand due process scrutiny, so too is the identical definition of "crime of

violence" set forth in the risk-of-force clause in 18 U.S.C. § 924(c)(3)(B).  *See* 889

F.3d at 684-88 (finding § 924(c)(3)(B) unconstitutional on plain-error review).

The Second Circuit has not yet addressed, post-*Dimaya*, whether the risk-of-

force clause in § 924(c)(3)(B) is unconstitutional.  *See United States v. Hill*, 890 F.3d

51, 53 n.2 (2d Cir. 2018) (declining to express a view as to whether the risk-of-force

clause, § 924(c)(3)(B), is void for vagueness as applied to Hobbs Act robbery because

the conclusion that Hobbs Act robbery is a crime of violence under the statute's

"force clause" (18 U.S.C. § 924(c)(3)(A)) eliminated the need to address the issue).

---

[1] *United States v. Hill*, 890 F.3d 51, 54 & n.5 (2d Cir. 2018) ("We refer to § 924(c)(3)(A) as the 'force clause' and § 924(c)(3)(B) as the 'risk-of-force clause.'"). Given the Second Circuit's preference for that terminology, and consistent with *Hill*, this memorandum will adopt it and refer to clause (A) of 18 U.S.C. § 924(c)(3) as the "force" clause and (B) as the "risk-of-force" clause.  *But see Villanueva v. United States*, --- F.3d ---, 2018 WL 3077064, at *1 (2d Cir. June 22, 2018) (referring to almost identical statutory clauses in 18 U.S.C. § 924(e)(2)(B) as the "elements clause" and the "residual clause").

4

Given the identical statutory language, there is no basis to conclude that the risk-of-force clause in § 924(c)(3)(B) can survive constitutional scrutiny. *See Dimaya*, 138 S. Ct. at 1241 (Roberts, C.J., dissenting) (noting the "special concern" that the unconstitutional § 16(b) language "is replicated in the definition of 'crime of violence' applicable to § 924(c)"). While the *Dimaya* court did not reach the issue of the constitutionality of the risk-of-force clause in § 924(c)(3) as that issue was not before the court, Chief Justice Roberts's dissent noted that the Supreme Court's ruling as to § 16(b) "calls into question [§ 924(c)] convictions under what the Government warns us is an 'oft-prosecuted offense.'" *Id.*

It seems unavoidable that the Second Circuit will eventually reach the same conclusion that the Tenth Circuit recently reached in *Salas*. The risk-of-force clause in § 924(c)(3)(B) is every bit as vague and suffers from the same constitutional infirmity as the identical clause the Supreme Court declared unconstitutional in § 16(b).

During the trial, Mr. Enix moved to dismiss Count 2 in light of *Dimaya*. This Court reserved decision. Count 2 alleges that Mr. Enix violated 18 U.S.C. § 924(c) by knowingly and unlawfully possessing firearms (and aiding and abetting others who did so) in furtherance of a "crime of violence . . . that is, a violation of Title 18, United States Code, Section 1962(d) . . . ." Docket Item 33 (redacted indictment) Count 2. The question before this Court is whether 18 U.S.C. § 1962(d), RICO conspiracy, is a "crime of violence" under: (A) the force clause (§ 924(c)(3)(A)); or (B) the risk-of-force clause (§ 924(c)(3)(B)). If (B) and not (A), Mr. Enix stands convicted

of violating an unconstitutional statute that is void for vagueness, such that his motion to dismiss should be granted and his conviction should be set aside because he was charged in violation of his right to due process under the Fifth Amendment. If, on the other hand, he stands convicted of violating (A), his conviction need not be set aside on the constitutional grounds implicated by *Johnson*, *Dimaya*, and *Salas*.[2]

## A. The Categorical and Modified Categorical Approaches.

To determine whether an offense is a crime of violence, courts must employ one of two approaches: the "categorical approach" or the "modified categorical approach."  *See, e.g.*, *Hill*, 890 F.3d at 54-60 & n.6; *see also Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016); *United States v. Descamps*, 570 U.S. 254 (2013); *United States v. Taylor*, 495 U.S. 575 (1990) (setting forth these two approaches); .

Under the categorical approach, courts look only to the <u>elements</u> of a particular offense, and not to the underlying facts or circumstances of the particular crime charged.  *See, e.g.*, *Hill*, 890 F.3d at 55-56; *see also* 18 U.S.C. § 924(c)(3)(A) (requiring that conduct falls under the "force" clause of § 924(c)(3)(A) if it has "as an <u>element</u> the use, attempted use, or threatened use of force against the person or property of another" (emphasis added)); *Taylor*, 495 U.S. at 600.  If the minimum criminal conduct necessary for a conviction of the predicate offense is, after examination of the elements of the offense, insufficient to constitute a "crime of

---

[2] As explained in Parts (a)(2) & (3), *infra*, even if Count 2 need not be set aside on constitutional grounds, judgment of acquittal is nevertheless necessary as to Count 2 because the proof at trial is insufficient to sustain a conviction.

violence" as defined in the statute, then the predicate offense falls outside of §

924(c)(3).  *See, e.g.*, *Hill*, 890 F.3d at 54-60.

If a predicate statute "sets out one or more elements of the offense in the

alternative" and "some but not all of the alternative elements would amount to a

'crime of violence,'" in that situation courts can use a "modified" categorical

approach that would include "looking at a limited set of documents, including the

indictment, to consider under which portion of the statute the defendant was

charged."  *Id.* at 55 n.6.  This approach is appropriate when a single statute lists

elements in the alternative, "thereby defining multiple crimes."  *Mathis v. United

States*, 136 S. Ct. 2243, 2249 (2016).  The modified categorical approach "serves a

limited function: It helps effectuate the categorical analysis when a divisible

statute, listing potential offense elements in the alternative, renders opaque which

element played a part in the defendant's conviction."  *Descamps*, 570 U.S. at 260.

The modified categorical approach should only be used, however, if the statute at

issue lists multiple <u>elements</u> disjunctively; if instead a statute enumerates various

<u>factual</u> <u>means</u> of committing a single element of a single crime, the categorical

approach should be used as the default and the modified categorical approach

should not be employed.  *See Mathis*, 136 S. Ct. at 2249, 2253-56.

**B. The Categorical Approach is Appropriate, and Under the Categorical Approach, RICO Conspiracy Is Not a "Crime of Violence" Under the Force Clause of § 924(c)(3)(A).**

The issue, then, is whether the predicate statute implicated by the § 924(c) charge set forth in Count 2 – RICO conspiracy under 18 U.S.C. § 1962(d), should be addressed using the categorical approach or a modified categorical approach.

The Second Circuit has, pre-*Dimaya*, adopted what is essentially a modified categorical approach in determining whether RICO conspiracy is a crime of violence by looking beyond the elements of RICO conspiracy itself to assess whether the objectives of a particular charged conspiracy are "violent crimes or when its members intend to use violent methods to achieve its goals." *United States v. Elder*, 88 F.3d 127, 129 (2d Cir. 1996). In the wake of *Elder* – but pre-*Dimaya* – the Second Circuit has treated substantive RICO offenses "as a 'crime of violence' when at least two of the RICO predicates that are found by the jury to have been committed are themselves 'crimes of violence.'" *United States v. Scott*, 681 Fed. App'x. 89, 95 (2d Cir. 2017) (citing *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 1996)). It has treated conspiracy generally, including RICO conspiracy, "as a 'crime of violence if at least one of its objects is committing a crime of violence.'" *Id.* (quoting *Elder*); *see also United States v. Praddy*, 2018 WL 1513558 (2d Cir. Mar. 28, 2018) (non-precedential summary order Federal Appendix decision reaching the same conclusion using the same reliance on *Ivezaj* and *Elder*).

These decisions go past the elements of RICO conspiracy itself to consider the predicates and objects of a RICO offense in the particular case. They rely, however,

8

on *Ivezaj*, a 1990 Second Circuit decision that did not expressly determine whether

RICO offenses can be characterized as a "crime of violence" specifically under the

(A) force or (B) risk-of-force clauses of 18 U.S.C. § 924(c).  *See* 568 F.3d at 96.  The

opinion in *Ivezaj* cites to both prongs of the statute, but it quotes the risk-of-force

portion of the statute in stating that the "underlying predicate acts . . . allegedly

involved the use of violent means . . ." that "unquestionably" "posed a 'substantial

risk that physical force against the person or property of another' would be used" in

the commission of the offense.  *Id.* (emphasis added); *see also Elder*, 88 F.3d at 129

(quoting a case citing the "substantial risk of violence" language from the risk-of-

force clause of § 924(c)(3)(B)).  In other words, although it cites to both portions of

the statute, *Ivezaj* relies upon that portion of § 924(c)(3) – the risk-of-force clause in

sub (B) – that *Salas* finds unconstitutional because it is identical to the

unconstitutional language addressed by *Dimaya*.

      In any event, the appropriate approach consistent with *Taylor*, *Descamps*,

*Mathis*, and *Dimaya* – and the express statutory language of § 924(c)(3) itself – is to

apply the categorical approach to the RICO conspiracy statute and not some

modified categorical approach that looks beyond the basic elements of the statute.

*Mathis*, consistent with *Taylor*, requires that if a statute lays out one crime with

one set of elements, even if it provides multiple means of satisfying or fulfilling a

particular element, then the straight categorical approach is to be used.  *See* 136 S.

Ct. at 2250, 2253-57.  As this Court instructed the jury, the RICO conspiracy

statute lays out one crime, with one set of fixed (and not alternative) elements: (1)

an agreement among two or more persons to participate in the affairs of an

enterprise that would affect interstate commerce through a pattern of racketeering

activity; (2) the defendant knowingly and willfully became a member of that

agreement; and (3) the defendant or another member of the conspiracy agreed to

commit two racketeering acts.[3]  While there are alternative ways of satisfying the

third element, and multiple means of fulfilling that element, the statute does <u>not</u>

provide for disjunctive or alternative <u>elements</u>.  Consequently, *Mathis* and its

progeny mandate[4] use of the strict categorical approach, and not some modified

categorical approach.  The Supreme Court reinforced the propriety of employing the

categorical approach in *Dimaya*, explaining that the analysis is "not whether 'the

particular facts' underlying a conviction" put the conviction within the ambit of one

or the other of the two statutory clauses.  138 S. Ct. at 1211, *see also id.* at 1217-18.

The inquiry is as to the crime "as generally committed," that is, to the statute of

conviction – and not to the particular facts of the conduct in a particular case.  *Id.* at

1217.

---

[3] Whether these elements are numbered, for purposes of instructing a jury, as three, four, or five elements, they remain fixed – meaning, there is no element that has an alterative depending on the nature of the count and charge.  Stated another way, RICO conspiracy is not divisible with alternative elements.  Its elements are fixed and consistent, how ever they might be numbered or worded in a jury instruction.

[4] This is consistent with the statutory language of § 924(c)(3) itself, which in clause (A) defines "crime of violence" by reference to an <u>element</u> of a statute that provides for use, attempted use, or threatened use of force; and clause (B), which refers to the "nature" of an offense (as opposed to the specific conduct associated with an offense).  In other words, the statutory language of § 924(c)(3) expressly calls for examination of the elements of an offense and the nature of an offense, rather than the specific offense conduct in a particular and specific case.

Cases that have considered RICO conspiracy as a predicate offense underlying a § 924(c) count, some pre and others post-*Dimaya*, have employed a straight categorical approach and have concluded, correctly, that RICO conspiracy categorically is <u>not</u> a crime of violence under the force clause (sub (A) of § 924(c)(3)). *See United States v. Chavez*, 2018 WL 339140, at \*13-\*14 (N.D. Cal. Jan. 9, 2018); *United States v. Shumilo*, 2016 WL 6302524, at \*5-\*7 (C.D. Cal. Oct. 24, 2016); *Alvarado v. United States*, 2016 WL 6302517, at \*9-\*11 (C.D. Cal. Oct. 14, 2016). This approach comports with *Mathis* and the statutory language of § 924(c)(3).  Use of a modified categorical approach is not consistent with *Mathis* and does not comport with the express statutory language of § 924(d)(3).

Consequently, it would seem that at some point in the very near future, the Second Circuit or the Supreme Court (or both) will address whether RICO conspiracy in the post-*Dimaya* landscape constitutes a "crime of violence" under the force clause of § 924(c)(3)(A), and whether the analysis should be undertaken using a straight categorical approach to determine whether 18 U.S.C. § 1962(d) "has as an <u>element</u>" the use, attempted use, or threatened use of physical force.  *See* § 924(c)(3)(A) (emphasis added).  A plain reading of the elements of RICO conspiracy reveals what cases such as *Chavez*, *Shumilo*, and *Alvarado* have concluded: 18 U.S.C. § 1962(d) categorically is <u>not</u> a crime of violence as defined under the force clause of § 924(c)(3)(A), because not only does § 1962(d) lack as an element the use, attempted use, or threatened use of force – it can be violated by mere agreement to violate the RICO statute (by, for example, agreeing that an enterprise might sell

11

contraband cigarettes), without the actual, attempted, or threatened use of any force[5] whatsoever.  *Cf. Alvarado*, 2016 WL 6302517, at *10-*11; *see also Salinas v. United States*, 522 U.S. 52, 62-65 (1997) (explaining that there is no requirement of an overt act or specific act in a RICO conspiracy case).

This Court should not, therefore, rely upon *Elder*, *Ivezaj*, or *Scott* – pre-*Dimaya* cases that employ a modified categorical approach and quote the risk-of-force clause while considering the specific conduct in the case, in conflict with the language of *Mathis*, *Dimaya*, and § 924(c)(3) itself.  The RICO conspiracy statute does not provide for alternative or disjunctive elements, so employing a modified categorical approach is not appropriate, despite the fact that there are alternative factual means of violating one of the fixed (non-alternative and non-disjunctive) elements.  This Court should instead employ a straight categorical approach and find that RICO conspiracy is not a crime of violence under the force clause in § 924(c)(3)(A), consistent with the Supreme Court's direction for use of a categorical approach in *Mathis*, *Descamps*, and *Taylor*, and consistent with cases such as *Alvarado*, *Shumilo*, and *Chavez*, because the elements of RICO conspiracy do not satisfy the statutory definition of a crime of violence in the force (elements) clause of the statute.

---

[5] As these cases which find that RICO conspiracy categorically is not a crime of violence under the force clause note, no underlying crime need actually occur for a defendant to be convicted, no overt act is required, and one can be convicted for merely agreeing, without ever using, attempting to use, or threatening the use of force.  *See, e.g.*, *Alvarado*, 2016 WL 6302517, at *10-*11.

The Second Circuit's post-*Dimaya* opinion in *Hill* adheres to straight categorical analysis (to ascertain whether Hobbs Act robbery is a "crime of violence"), *see* 890 F. 3d at 55-60, suggesting that the default will be to employ categorical analysis unless and until a statute in question is found to be clearly divisible with alternative elements. *See also* 890 F.3d at 55 n.6 (discussing use of a modified categorical approach to address "divisible" penal statutes with alternative elements). *But see Villanueva*, --- F.3d at ---, 2018 WL 3077064, at *4-*7 (using the modified categorical approach to analyze a Connecticut first degree assault statute). RICO conspiracy is not divisible with alternative elements; its elements are fixed and consistent. As such, it must be analyzed using the categorical approach.

Categorical analysis of the elements of RICO conspiracy establishes that it is not a crime of violence under the force clause. "Racketeering activity" can include, for example: gambling; dealing in obscene matter; bribery; counterfeiting; pension and welfare embezzlement; fraud; transmission of gambling information; mail fraud; wire fraud; reproduction of naturalization or citizenship papers; obstruction of justice; false statements in application and use of a passport; misuse of a passport; fraud and misuse of visas or permits; theft of trade secrets; interference with commerce; interstate transportation of wagering paraphernalia; unlawful welfare payments; trafficking in counterfeit labels for phonograph records, computer programs, motion pictures, or audiovisual works; criminal infringement of copyright;  trafficking in goods bearing counterfeit marks; trafficking in contraband cigarettes; improper payments or loans to labor organizations; embezzling union

13

money; or assisting aliens to enter the United States. *See* 18 U.S.C. § 1961(1). Given the expansive list of non-violent conduct that qualifies as "racketeering activity," it cannot be said that RICO conspiracy is, categorically, an offense that has as an element "the use, attempted use, or threatened use of physical force against the person or property of another" as set forth in § 924(c)(3)(A), the force clause of the "crime of violence" definition.

That leaves only the risk-of-force clause in § 924(c)(3)(B), which is unconstitutionally void for vagueness. Because prosecution of Mr. Enix under this portion of the statute would deprive him of his right to due process under the Fifth Amendment, his motion to dismiss Count 2 should be granted and his conviction as to Count 2 must be set aside.

### C. Even Under the Modified Categorical Approach, the RICO Conspiracy Mr. Enix is Convicted of Joining Is Not a "Crime of Violence" Under the Force Clause of § 924(c)(3)(A).

Even if this Court were to elect to employ a modified categorical approach despite *Taylor* and *Mathis*, and disregard cases such as *Alvarado*, *Chavez*, and *Shumilo* in favor of pre-*Dimaya* Second Circuit cases such as *Scott*, it should nevertheless conclude that the RICO conspiracy that the jury found Mr. Enix to have joined does not constitute a "crime of violence" under the force clause in § 943(c)(3)(A).

This Court used a special verdict form for Count 2 that asked the jurors to make specific findings as to the agreement Mr. Enix joined. Significantly, the jury rejected the notion that Mr. Enix joined an agreement to engage in acts involving:

14

murder in violation of the New York Penal Law; robbery in violation of New York or Florida law; Hobbs Act robbery; or kidnapping in violation of Florida law. *See* Docket Item 1258 (verdict sheet) at 7-8. The jury found that he agreed that a member of the conspiracy would solicit, attempt, or conspire to commit murder in Florida[6] in the conduct of the affairs of the enterprise. *See id.* at 7. The issue created by this finding is whether each of these inchoate offenses of solicitation, attempt, and conspiracy to commit murder under Florida law have, "as an element the use, attempted use, or threatened use of physical force against the person or property of another"? *See* 18 U.S.C. § 924(c)(3)(A). If so, those offenses constitute a "crime of violence" under the force clause; if not, they do not.

An examination of Florida Statutes Annotated ("FSA") §§ 777.04(1), (2), and (3) reveals that each of these inchoate offenses do not have, as an element, the use, attempted use, or threatened use of physical force against a person. In particular, conspiracy to commit murder under Florida law need not involve the use, attempted use, or threatened use of force; the statute punishes those who agree, conspire, combine, or confederate to do so – even if the conspirators do not ever use, attempt to use, or threaten the use of physical force. *See* FSA § 777.04(3). Similarly, solicitation under Florida law is an offense that does not include, as an element, use, attempted use, or threatened use of force; the offense is complete without any of those things happening if a person encourages or requests another to engage in

---

[6] As there was no murder committed in Florida, by necessity the jury's finding was that a conspirator attempted, conspired to, or solicited murder in violation of Florida Statutes Annotated § 777.04(1), (2), or (3).

murder, regardless of whether the solicited person actually uses, attempts to use, or threatens the use of physical force against another. *See id.* § 777.04(2). These inchoate offenses cannot be said to satisfy the force clause definition of "crime of violence" in 18 U.S.C. § 924(c)(3)(A).[7]

If, under a modified categorical approach, this Court were to go beyond the elements of these statutes to examine the specific conduct in this case as charged in the indictment, the result is the same. The pertinent allegations in the indictment are that "[i]n or about January 2014, defendants [Caruso] and [Jenkins], while armed with firearms travelled to a KMC Clubhouse in Leesburg, Florida, met with KMC National President defendant David Pirk, KMC Florida/Tennessee Regional President defendant Timothy Enix, and others, and agreed that they would get their KMC colors back from the Pagans by any means necessary, including murdering Pagans and kidnapping Pagan Old Ladies." Docket Item 33 (superseding indictment) at 20 (overt act 33). This allegation concerns an agreement to get patches back from the Pagans by means that may – but need not necessarily – include the use, attempted use, or threatened use of force.[8] As such, the charged conduct does not implicate the force clause in § 924(c)(3)(A).

---

[7] To the extent these inchoate offenses involve a "substantial risk that physical force against the person or property of another may be used in the course of committing the offense," that would implicate the risk-of-force clause that is unconstitutional for the reasons explained in the cases cited and discussed *supra*.

[8] The jury expressly found that the conspiracy did not involve kidnapping or solicitation, conspiracy, or attempt to engage in kidnapping under Florida law. *See* Docket Item 1258 at 8.

Case 1:15-cr-00142-EAW-MJR   Document 1322-1   Filed 06/25/18   Page 21 of 47

And even if this Court were to go deeper and examine the indictment's allegations alongside the proof at trial, the evidence at trial established that force was never used, attempted, or even threatened against the Pagans, because Mr. Enix negotiated the successful return of the patches without using, attempting to use, or threatening the Pagans with murder or the use of force. The proof was that Mr. Enix negotiated for the successful return of the patches <u>without</u> resort to force, attempted force, or by even threatening the Pagans with the use of force. Consequently, even looking beyond the elements of the inchoate Florida offenses as defined in Florida law, it is clear that the force clause in § 924(c)(3)(A) is not implicated and that the conduct in Florida was not a "crime of violence" under that prong of the statute.

### D. Conclusion: Under Any Approach, Count 2 Must Be Set Aside Because Mr. Enix Was Charged With and Convicted Of Violating a Statute that Is Unconstitutionally Void for Vagueness.

Whether this Court employs a categorical approach or modified categorical approach, the result is the same: Mr. Enix cannot be guilty of violating 18 U.S.C. § 924(c) as charged in Count 2 because he did not commit a "crime of violence" as defined in § 924(c)(3)(A). Mr. Enix's case presents circumstances where under any analysis – categorical or modified categorical; straight elements or beyond the elements to the allegations and even jury findings – he was not charged with or convicted of committing a "crime of violence" that would fall under the force clause in § 924(c)(3)(A) as the predicate conduct underlying Count 2.

17

To the extent that the grand jury charged him with and the petit jury convicted him of possession of firearms in furtherance of a "crime of violence" as that term is defined in § 924(c)(3)(B) – the <u>risk</u>-of-force clause – that clause is unconstitutionally void for vagueness, such that his motion to dismiss should be granted and his conviction as to Count 2 set aside. Permitting that conviction to stand would deprive Mr. Enix of his right to due process in breach of the Fifth Amendment, because he was charged with and convicted of violating a statute that is too vague to comport with the requirements of due process. Consequently, this Court should grant his motion to dismiss and set aside the verdict as to Count 2, and enter judgment of acquittal as to Count 2.

### 2) In the Alternative, Mr. Enix Did Not Agree that a Member of the Racketeering Conspiracy Would Attempt, Solicit, or Conspire to Engage in Murder in Violation of the Florida Statutes.

There is an additional independent reason why Count 2 must be set aside and judgment of acquittal entered as to Mr. Enix: the evidence is insufficient to sustain his conviction as to that Count because he never agreed that a member of the racketeering conspiracy would attempt, solicit, or conspire to engage in murder in violation of Florida law. The jury's finding to the contrary is incorrect, even viewing the evidence in the light most favorable to the government.

The proof at trial was that Mr. Enix did <u>not</u> agree that any member of the racketeering conspiracy should engage in murder in Florida, or attempt, solicit, or conspire to engage in murder. Indeed, not only did he not agree – at worst,

18

Kingsmen in Florida considered the possibility of violence against the Pagans but were <u>prevented</u> from engaging in violence by Mr. Enix.

For example, David Masse testified that Tim Enix worked out the patch return without anybody using a gun or violence to get the patches back. Filly Caruso testified that Mr. Enix was trying to work it out peacefully with the Pagans and no violence was used. Sean McIndoo testified that Mr. Enix wanted to get the patches back "without violence" and that there were no guns used against the Pagans to obtain the patches, no fighting, and no violence. The witnesses agreed: the retrieval of the patches from the Pagans was achieved peacefully because Tim Enix took steps to make sure there was no use of force, attempted use of force, threatening of the Pagans, or violence employed.

The evidence at trial simply does not sustain conviction of Mr. Enix as to Count 2. At worst, the proof allows for the conclusion that Mr. Enix was prepared to engage in self-defense consistent with Florida law if he was attacked by Pagans. That evidence does not allow for the conclusion that Mr. Enix was willing or intending to use firearms in furtherance of a crime of violence involving the Pagans. That conclusion would not only be unsupported by any trial proof – it would be contrary to all of the evidence at trial. The proof established the opposite of that conclusion: Mr. Enix was <u>unwilling</u> to use firearms in furtherance of a crime of violence, and he made certain through his actions that firearms would <u>not</u> be used in furtherance of a crime of violence. The jury's finding as to Count 2 is contrary to the evidence that established, conclusively, that Mr. Enix lacked intent to engage in

violence or to conspire with those who were willing or prepared to engage in violence.  Consequently, Count 2 should be set aside and judgment of acquittal entered in his favor for this additional reason.

> **3) In the Alternative, Count 2 Must Be Set Aside Because Mr. Enix Did Not Knowingly and Unlawfully Possess Firearms in Furtherance of a Racketeering Conspiracy, and Is Not Liable for Aiding and Abetting or Under a *Pinkerton* Theory.**

Finally, and additionally, Mr. Enix's conviction as to Count 2 must be set aside and an acquittal entered because Mr. Enix never knowingly and unlawfully possessed a firearm in furtherance of a racketeering conspiracy, and did not aid and abet others nor participate in the firearms possession of others under a *Pinkerton* theory.

The proof at trial was that Mr. Enix consistently acted to avoid the use of firearms in any crime of violence.  While he lawfully possessed firearms in places such as Tennessee and Florida and complied with state laws in those states that permitted him to carry firearms for self-defense, that is the extent of his use of firearms from the proof at trial – lawful carrying in self-defense.  He did not possess firearms in furtherance of any crime of violence ever, and no proof would allow for the conclusion that he harbored the intent to agree with others who were prepared to engage in violence that exceeded permissible self-defense.  In other words, he never joined any agreement that would have included the use of violence offensively consistent with any racketeering activity.  He lacked any such intent, and the proof at trial from numerous witnesses established that his intent was the opposite of

those who would use violence offensively to engage in a crime of violence or racketeering activity.

**b) Count 8 (formerly Count 45) Must Be Set Aside Because the South Buffalo Clubhouse Was Not Maintained for the Purpose of Distributing or Using Controlled Substances, and Mr. Enix Did Not Knowingly Maintain It For that Purpose.**

Count 8 (formerly Count 45) alleges that Mr. Enix "knowingly, intentionally, and unlawfully" used and maintained the South Buffalo clubhouse "for the purpose of manufacturing, distributing, and using cocaine . . .  and marijuana" in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2.  To establish Mr. Enix's guilt as to this Count, the government would had to have introduced evidence that he (1) maintained the South Buffalo premises; (2) for the purpose of manufacturing, distributing, or using any controlled substance; and (3) acted knowingly – or that he aided abetted others with the same intent or is culpable under a *Pinkerton* theory.

The proof at trial was insufficient to sustain a conviction as to Count 8 because the evidence established that Mr. Enix was anti-drug, and there is no evidence to support the conclusion that the South Buffalo clubhouse was maintained "for the purpose" of use as a drug premises.  Even under an aiding-and-abetting or *Pinkerton* theory, the proof was insufficient to establish that Mr. Enix ever possessed the requisite intent that would allow for a finding of guilt.

**1) The South Buffalo Clubhouse Was Not Maintained for the Purpose of Distributing or Using Controlled Substances.**

To establish that the South Buffalo clubhouse was maintained "for the purpose of" distributing or using cocaine or marijuana, the government must

21

introduce evidence that the drug activity at a premises was "a significant or important reason why the place was maintained."  Jury Instruction "21 U.S.C. § 856(a)(1)"; *see also, e.g.*, *United States v. Verners*, 53 F.3d 291, 296-97 (discussing the meaning of "for the purpose of" within 21 U.S.C. § 856(a)(1)); *United States v. Barnes*, 803 F.3d 209, 216-17 n.6; *United States v. Harris*, 443 Fed. App'x. 111, 115 (6th Cir. 2011).  "Purpose" is synonymous with "objective," "intention," and "aim." *Verners*, 53 F.3d at 296 (quoting *United States v. Chen*, 913 F.2d 183 (5th Cir. 1990)).  While the purpose of distributing or using drugs need not be the sole purpose for which a premises is maintained, distributing or using drugs "must be more than a mere collateral purpose" of the premises.  *Id.*

Here, the proof at trial was that the South Buffalo clubhouse was maintained for purposes of social gatherings, consumption of food and alcohol, and club meetings – and that some people present at the clubhouse sometimes used drugs in an upstairs room or in the bar area.  The testimony and evidence at trial established that while drugs were certainly used at the South Buffalo clubhouse, it cannot be said in any sense of the word "purpose" that the clubhouse was maintained "for the purpose of" distributing or using cocaine or marijuana.  That persons who were present at the South Buffalo clubhouse used drugs in the clubhouse is a far cry from the premises being maintained "for the purpose of" drug use.  No evidence at trial would support the conclusion that the objective, intention, or aim of maintaining the South Buffalo clubhouse was so that drugs could be distributed or used at that property.  No one testified to it, no meeting minutes

22

suggest it, and there was testimony that the formal club rules were to the contrary of such a purpose.

 In addition to testimony or meeting minutes – which do not support the "purpose" conclusion – evidence that a premises is being used "for the purpose of" distributing or using controlled substances might include, *inter alia*, laboratory equipment, scales, packaging materials, or employees engaged in the distribution or sale of drugs. *See Verners*, 53 F.3d at 296-97 (discussing *United States v. Banks*, 987 F.2d 463 (7th Cir. 1993)). None of this was found at the South Buffalo clubhouse when the search warrant was executed at that location. No evidence at trial suggests that there were ever drug distribution equipment or packaging materials at the clubhouse, and no one testified that those activities ever took place at the clubhouse. The trial proof does not allow for even the inference that any of the common indicia of a drug premises were ever at the clubhouse.

Indeed, witnesses who were questioned about drug usage at the South Buffalo clubhouse admitted that those who used drugs at the clubhouse were persons who were using drugs nearly everywhere they went – in parking lots, neighborhood bars, residences, cars – not just upstairs at the South Buffalo clubhouse. Evidence at trial about the distribution of drugs established that drug dealers dealt elsewhere and maintained the equipment necessary for their drug operations elsewhere.[9] They did not share their proceeds with the clubhouse or

---

[9] The search warrant executed at Gregory "Flip" Willson's home, for example, revealed the presence of a scale and other drug distribution paraphernalia at his

club.[10]  No one testified that they went to the clubhouse because it was a place where the purpose of the premises was to obtain drugs or use them, or because they could not obtain drugs elsewhere but went to the clubhouse because it was their source of cocaine or marijuana.[11]  Every single witness, even the drug users, went to the clubhouse for some other purpose – usually a social gathering – and any drug use was ancillary to the social gathering, but clearly not a purpose of maintaining the premises.

Concluding from the evidence at trial that the South Buffalo clubhouse was maintained "for the purpose of" distributing or using drugs on this trial record would render those words superfluous in the statute, because any premises where drugs were used would qualify as a drug premises using this distortion of the word "purpose."  Merriam-Webster's dictionary defines "purpose" as "something set up as an object or end to be attained"; "intention."[12]  If "purpose" in 21 U.S.C. § 856(a)(1) is to have any meaning – and surely it does or else Congress would not have included it – it must mean more than mere collateral usage on a premises that is dedicated to other purposes.  Mere collateral usage of drugs on a premises that

---

home and not the clubhouse, and items indicative of drug distribution were not present at the South Buffalo clubhouse.

[10] Jimmy Fritts testified that he did not join the Outlaws in Tennessee because the Outlaws as an organization take a cut of drug money from members who deal.  Fritts joined the Kingsmen because the KMC does not take a cut, and many witnesses testified that the official policy of the club was anti-drug but that members nevertheless used drugs despite this official policy.

[11] The witnesses who testified that there were drugs used at the South Buffalo clubhouse all used and obtained drugs elsewhere.

[12] Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/purpose.

24

clearly has, as its actual purpose, service as a place where people can gather socially and engage in legal activity with one another, cannot be enough.  Usage of drugs, even open usage, without something more cannot constitute maintenance of a premises "for the purpose of" usage or distribution of controlled substances.

Because the proof at trial is insufficient to sustain the conclusion that the South Buffalo clubhouse was maintained "for the purpose" of distributing or using cocaine or marijuana, the verdict as to Count 8 must be set aside and judgment of acquittal entered.  This conclusion is compelled regardless of the theory of culpability (principal, aiding and abetting, or *Pinkerton*) attributed to Mr. Enix.

### 2) Mr. Enix Did Not Act Knowingly.

The jury was instructed that an act is done "knowingly" if it is performed "intentionally and voluntarily, and not because of ignorance, mistake, accident or carelessness."  To find that Mr. Enix knowingly maintained the South Buffalo clubhouse for the purpose of distributing or using cocaine or marijuana, the jury would had to have been presented with evidence that Mr. Enix maintained the South Buffalo clubhouse not only for the <u>purpose</u> of drug distribution or usage, but also that he did so intentionally and voluntarily, and not because of ignorance, mistake, or accident.  *See* 21 U.S.C. § 856(a)(1) (requiring knowledge ("knowingly")).  There was no proof at trial that Mr. Enix was made aware of the fact that the South Buffalo clubhouse was being maintained for the purpose of drug usage or distribution, much less that he knowingly maintained the premises for that purpose.

25

In the absence of knowledge, Mr. Enix could not have acted with the requisite mens rea to have violated 21 U.S.C. § 856(a)(1).

### 3) Mr. Enix Did Not Aid or Abet Maintenance of South Buffalo as a Drug Premises.

Even under an aiding-and-abetting theory, the proof is insufficient and the verdict as to Count 8 must be set aside.

First, one cannot be liable for aiding and abetting a crime that was not committed. Because the South Buffalo clubhouse was not maintained "for the purpose of" drug distribution or use, there was no violation of 21 U.S.C. § 856(a)(1) as alleged in Count 8.

Second, Mr. Enix could not have aided or abetted violation of 21 U.S.C. § 856(a)(1) unless he intended to facilitate maintenance of the South Buffalo clubhouse for the purpose of drug distribution or use. *See* Jury Instruction "Aiding and Abetting (Counts 2, 3, 4, 5, 6, 8, 9)." In other words, Mr. Enix must have possessed the mental state required for the principal offense – that is, he must have undertaken an affirmative act in furtherance of the purpose of maintaining the clubhouse for the purpose of drug distribution or use, and with <u>knowledge</u> and the <u>intent</u> to facilitate the purpose of maintenance of the South Buffalo clubhouse as a drug premises. In this regard, mere presence, even coupled with knowledge that others are committing an offense, is not enough to constitute aiding and abetting. *See id.* Mr. Enix must have acted with both the <u>knowledge</u> and <u>intention</u> that a

26

principal would have possessed to have committed the crime of maintaining the South Buffalo clubhouse as a drug premises.

There was no proof at trial that Mr. Enix acted with the requisite knowledge and intention to render him culpable for aiding and abetting maintaining the South Buffalo clubhouse for the purpose of drug usage.  As such, the evidence is insufficient and judgment of acquittal warranted as to Count 8 for this additional reason.

### 4)  Mr. Enix is Not Guilty Under a *Pinkerton* Theory.

Finally, Mr. Enix did not violate 21 U.S.C. § 856(a)(1) even under a *Pinkerton* theory.

First, *Pinkerton* culpability cannot lie where the underlying crime was not committed.  No one maintained the South Buffalo clubhouse "for the purpose" of distribution or use of cocaine or marijuana, so the underlying crime was not committed.

Second, to the extent some New York Kingsmen used drugs in the South Buffalo clubhouse unbeknownst to Mr. Enix, Mr. Pirk, or club leadership, it cannot be said that maintenance of the South Buffalo clubhouse as a drug premises was pursuant to some common plan and understanding common among the conspirators charged in Count 1.  *See* Jury Instruction "Pinkerton Charge (Counts 2, 8, and 9)."

Third, as explained in Part (d) and Part (a)(1), *infra*, the jury correctly found that Mr. Enix was not part of the agreement charged in Count 1 when it rendered the special verdict finding (for Count 2) that Mr. Enix was not part of the same

27

agreement as co-defendants Pirk and Jenkins.  There can be no *Pinkerton* liability

for someone who was not a member of the conspiracy charged in Count 1.

Consequently, Mr. Enix is not guilty of Count 8 even under a *Pinkerton*

theory.

c) <u>Count 9 (formerly Count 46) Must Be Set Aside Because Count 8 Fails, and Because Mr. Enix Did Not Knowingly Use or Carry a Firearm in Furtherance of Maintaining the South Buffalo Clubhouse as a Drug Premises.</u>

Count 9 charges Mr. Enix with violating 18 U.S.C. § 924(c) by knowingly and

unlawfully possessing firearms (and aiding and abetting others who did so) in

furtherance of using and maintaining the South Buffalo Chapter Kingsmen

clubhouse for drug dealing.  Docket Item 33 (superseding indictment) Counts 46

and 45 (renumbered for purposes of the redacted trial indictment as Counts 9 and

8).  Count 9 must be set aside and judgment of acquittal entered for various

reasons.

First, because the evidence is insufficient to sustain a conviction as to Count

8, *see* Part (b), *supra*, Count 9 must also be set aside and acquittal entered.

Acquittal as to Count 8 necessitates acquittal as to Count 9.

Second, the proof at trial established that Mr. Enix did not use or carry a

firearm in furtherance of maintaining the South Buffalo clubhouse as a drug

premises, and that he is not culpable under an aiding or abetting or *Pinkerton*

theory because there was no proof that he or anyone else used, carried, or possessed

28

a firearm in furtherance of maintaining the South Buffalo clubhouse as a drug premises.

### 1) Mr. Enix Did Not Knowingly Use, Carry, or Possess a Firearm in Furtherance of Maintaining the South Buffalo Clubhouse as a Drug Premises.

This Court instructed the jury that to possess a firearm in furtherance of maintaining the South Buffalo clubhouse, Mr. Enix would have to have possessed a gun to help "forward, advance, or promote the commission" of maintaining the South Buffalo clubhouse as a drug premises. Jury Instruction "Second Element: Possession of Firearm." Mere possession of a firearm at the South Buffalo clubhouse is not sufficient to constitute possession in furtherance of the drug offense; the firearm or firearms "must have played some part in furthering the crime" in order for the possession to have been in furtherance of the underlying drug offense. *See id.*; *see also, e.g.*, *United States v. Avery*, 295 F.3d 1158, 1174-75 (10th Cir. 2002); *United States v. Leary*, 422 Fed. App'x. 502, 510 (6th Cir. 2011). To establish possession "in furtherance," the government had to introduce evidence that a firearm in question "furthered, promoted or advanced" the maintenance of the South Buffalo clubhouse as a drug premises. *See Avery*, 295 F.3d at 1174-75.

There was no evidence whatsoever that Mr. Enix or anyone else ever possessed a firearm or firearms to further, promote, or advance maintaining the South Buffalo clubhouse as a drug premises. While there was testimony at trial from various government witnesses that drugs were sometimes used or transferred from one person to another at the South Buffalo clubhouse, there was no evidence

29

that anyone involved in that activity possessed a firearm in furtherance of maintaining the clubhouse as a drug premises.  A firearm at South Buffalo must have had some "purpose or effect" with respect to the drug offense, and the presence or involvement of a gun at South Buffalo could not be the result of coincidence or mere presence of a gun during a drug offense. *See, e.g., Avery*, 295 F.3d at 1174-75.

At the close of the government's proof and during oral argument of the Rule 29 motions, this Court asked the government about the "in furtherance" requirement and reserved decision as to Count 9.  The answer is that there was no proof that any gun at the South Buffalo clubhouse was possessed in furtherance of maintaining the clubhouse as a drug premises.  Instead, the testimony was that any guns on the premises at the South Buffalo clubhouse were to keep the peace within the clubhouse and guard against violence inflicted upon or among members and guests at the clubhouse.  The proof about any members individually possessing guns while at South Buffalo was that those members possessed those guns for personal protection[13]; there was no proof that anyone at the South Buffalo clubhouse used a gun or guns to further, promote, or advance drug activity at the clubhouse.

Accordingly, because evidence is insufficient to allow for the conclusion that a gun or guns were possessed in furtherance of maintaining the South Buffalo clubhouse as a drug premises, much less that Mr. Enix knowingly possessed a gun

---

[13] Other than Filly Caruso, who possessed a gun at the clubhouse to intimidate others but not in furtherance of drug activity.

or guns in furtherance of that purpose, this Court must set aside the guilty verdict as to Count 9 and enter an acquittal.

### 2) Mr. Enix Did Not Aid or Abet Use or Carrying of a Firearm with *Rosemond* Knowledge or Intent.

The government may respond that other Kingsmen possessed firearms and that Mr. Enix aided or abetted possession by others in furtherance of maintaining the South Buffalo clubhouse as a drug premises.  This claim fails as well.

First, there is no evidence that any Kingsmen ever possessed a gun or guns in furtherance of maintaining the South Buffalo clubhouse as a drug premises. Consequently, no one could have been aided or abetted because there is no evidence anyone engaged in possession in furtherance of maintaining the clubhouse as a drug premises, so there is no one Mr. Enix could have aided or abetted.

Second, and by extension, there is no evidence to support the notion that Mr. Enix knew that a Kingsmen would possess or use a gun in furtherance of maintaining the South Buffalo clubhouse as a drug premises.  To be culpable for aiding or abetting, Mr. Enix must not just have associated himself with the Kingsmen, but also must have participated in possession of a firearm or firearms in furtherance of maintaining the South Buffalo clubhouse as a drug premises and possess knowledge beforehand "of a confederate's design to carry a gun."  *See Rosemond v. United States*, 134 S. Ct. 1240, 1242-50 (2014).  There is no evidence to suggest that Mr. Enix actively participated in gun possession by others with sufficient knowledge of the circumstances surrounding their gun possession or use

31

at the South Buffalo clubhouse, *see id.*, much less that he had any awareness that any Kingsmen would be possessing a firearm in furtherance of maintaining that clubhouse as a drug premises.  That proof simply does not exist.

### 3) Mr. Enix is Not Guilty Under a *Pinkerton* Theory Because No One Used or Carried Guns for the Purpose or in Furtherance of Maintaining the South Buffalo Clubhouse as a Drug Premises.

Similarly, there is no proof that Mr. Enix is culpable for Count 9 under a *Pinkerton* theory.  No supposed co-conspirator engaged in gun possession in furtherance of maintaining the South Buffalo clubhouse as a drug premises, so Mr. Enix could not be culpable in the absence of a culpable confederate.  Despite months of proof and dozens of witnesses, there was no evidence whatsoever that any Kingsmen possessed a gun or guns in furtherance of maintaining the South Buffalo clubhouse as a drug premises.  Absent such proof, Mr. Enix cannot be liable under a *Pinkerton* theory either.

Stated simply, the absence of any evidence of gun possession undertaken in furtherance of maintaining the South Buffalo clubhouse as a drug premises necessitates judgment of acquittal for Count 9 regardless of the theory – principal, aiding and abetting, or *Pinkerton*.  Mr. Enix simply is not guilty and the verdict as to Count 9 should be set aside and judgment of acquittal entered.

### d) Count 1 Must Be Set Aside Because the Jury Agreed Mr. Enix Did Not Conspire to Join the Same Conspiracy as His Co-Defendants.

The verdict convicting Mr. Enix of Count 1 must be set aside and an acquittal entered because the evidence is insufficient to sustain a conviction.  The jury found

that Mr. Enix joined an agreement that is different than the agreement the jury

concluded defendants Pirk and Jenkins joined.  This demonstrates that the jury was

not unanimous as to Mr. Enix's guilt as to Count 1.

The jury was instructed that jurors "must agree as to which type or types of

predicate racketeering activity the defendant agreed would be committed as part of

the conspiracy," and that the government had to prove "beyond a reasonable doubt

that the defendant agreed to participate in the RICO conspiracy with knowledge

and intent that at least one member of the conspiracy would commit at least two

acts of racketeering activity in the affairs of the enterprise, whether those acts were

actually committed or not."  Jury Instruction "RICO Conspiracy: Unanimity

Required as to Racketeering Activity."  This Court also told the jurors about the

"need for unanimity that is required as to the type or types of racketeering activity,"

specifically, that jurors "must be unanimous as to the type or types of racketeering

activity intended as part of the conspiracy that the defendant joined."  Jury

Instruction "Third Element of Count 1: Agreement to Commit Two Racketeering

Acts."  As these instructions made clear, jurors had to be unanimous as to the

nature of the agreement, and more specifically they had to be unanimous in their

determination about which type or types of racketeering activity were intended by

those who joined the agreement.  A jury must be unanimous not only that there was

an agreement to commit two or more predicate acts, but also unanimous as to each

of the predicate acts from among those charged.  *See, e.g.*, *Monsanto v. United*

33

*States*, 348 F.3d 345, 346 (2d Cir. 2005); *United States v. Carr*, 424 F.3d 213, 224 (2d Cir. 2005).

During the charge conference, counsel for Mr. Enix requested that the Court use a special verdict interrogatory for Count 1, to make certain that if jurors rendered a guilty verdict, they would designate which two (or more) acts of racketeering activity the defendants agreed a member or members of the conspiracy would commit. Counsel for Mr. Enix requested this approach to ensure juror unanimity as to each of the types of racketeering activity and racketeering acts might underlie any conviction as to Count 1. The government objected, and the Court declined to use a special verdict question for Count 1 over defense objection.

The Court did, however, use special verdict questions for Count 2 which asked jurors, if they found a defendant "guilty," to answer whether jurors unanimously found that the defendant "agreed with at least one other co-conspirator as part of the racketeering conspiracy charged in Count 1," that certain designated racketeering acts "would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise." Docket Item 1258 (verdict form) at 3-8. The special verdict questions as to Count 2 listed some but not all of the categories of racketeering activity set forth in Count 1, namely, those categories that might qualify as a crime of violence. *See id.*

The jury found each defendant guilty as to Count 1 and Count 2, and jurors answered the special verdict interrogatories for each defendant for Count 2. *See id.* at 1-8. Jurors found as to defendants Pirk and Jenkins that both agreed as to all of

34

the same racketeering acts, including racketeering acts in violation of the New York Penal Law and the Hobbs Act. *See id.* at 3-6. Significantly, however, jurors did <u>not</u> agree that Mr. Enix agreed as to all the same racketeering acts as his co-defendants; they expressly found that Mr. Enix did <u>not</u> agree as to any of the New York Penal Law violations nor the Hobbs Act offenses. *Compare id. with id.* at 7-8.

The logical conclusion that flows from these answers is that despite the Court's instructions about the need for unanimity as to the racketeering activity and agreed-upon racketeering acts underlying Count 1, jurors were <u>not</u> unanimous that Mr. Enix agreed to join the RICO conspiracy that jurors agreed co-defendants Pirk and Jenkins joined with one another. Clearly, jurors found that Pirk and Jenkins agreed upon a RICO conspiracy with predicate acts that would include murder and robbery in violation of New York law and Hobbs Act robbery in violation of federal law. But those same jurors answered that Mr. Enix did <u>not</u> agree that those same racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise, which establishes that the jurors found that Mr. Enix did <u>not</u> agree to join the same conspiracy as his co-defendants.

Consequently, because the jury found that Mr. Enix did <u>not</u> join the RICO conspiracy his co-defendants joined, this Court should set aside his conviction as to Count 1 and enter an acquittal, consistent with the jury's finding that he was not part of that conspiracy.

Indeed, the jury's finding that Mr. Enix did not join the same conspiracy as his co-defendants is consistent with the evidence adduced at trial, which would not allow a rational finder of fact to conclude that Mr. Enix joined the RICO conspiracy charged in Count 1. The proof established that Mr. Enix had nothing to do with any of the: Springville "shutdown"; New York infighting between northern New York and southern New York Kingsmen; or the planning or conspiring in Tennessee and New York related to the New York homicides or homicide planning. Mr. Enix was in Florida and had no involvement with: planned travel to Tennessee to obtain the motorcycle, murder weapon, and burner phones; transfer of the murder weapon; travel to New York; conspiring in New York in the leadup to the night of the murders; flight from New York after the homicides; destruction of evidence in Olean and elsewhere; deleting of video evidence; falsification of grand jury testimony; prevention of retaliation against Jenkins in Tennessee; additional murder plotting in Tennessee; or concealment of the murder weapon in New York. The trial evidence revealed, through witness after witness, that Mr. Enix was not part of any murder conspiracy or plotting. It is not surprising that jurors rendered special verdict answers as to Count 2 and the racketeering acts related to Count 1 for Mr. Enix that are different than the answers jurors returned as to Mr. Enix's co-defendants, because the proof at trial established that Mr. Enix was not part of any criminal conspiracy that involved a murder plot or violence in New York.

This Court should, therefore, set aside Mr. Enix's conviction as to Count 1 and enter judgment of acquittal as to that count, consistent with the evidence at

trial and the jury's special verdict findings that Mr. Enix was not part of the

agreement that involved his co-defendants.


### THE TWO 924(C) COUNTS OF CONVICTION CANNOT BOTH STAND

There is an additional basis for this Court to grant relief as to Counts 2 and

9: Mr. Enix cannot be guilty twice of the same conduct in two separate counts.  Both

of these counts charge possession of a firearm in connection with the racketeering

activity in Count 1.  Although ostensibly Count 9 (formerly Count 46) does not

expressly relate back to Count 1, it charges Mr. Enix with gun possession in

furtherance of predicate racketeering activity charged in Count 1 – just as Count 2

charges.

The Second Circuit has addressed similar situations and reversed convictions

where overlapping 924(c) counts in a single indictment involved a single predicate

offense.  *See, e.g.*, *United States v. Finley*, 245 F.3d 199, 206-08 (2d Cir. 2001)

(reversing conviction as to one of two 924(c) counts following a jury trial before

Judge Siragusa because the "predicate offenses were simultaneous or nearly so,"

such that "they consisted of virtually the same conduct with the same criminal

motivation and one of them . . . was a continuing offense"); *United States v.*

*Wallace*, 447 F.3d 184, 187-90 (2d Cir. 2006) (reversing and remanding a 924(c)

count of conviction following a trial because the "unit of prosecution is the same" for

two overlapping counts); *United States v. Whyte*, 630 Fed. App'x. 104, 109-10 (2d

Cir. 2015) (reversing one of two 924(c) counts in a RICO conspiracy case following

37

trial because Congress did not intend multiple 924(c) convictions for overlapping 924(c) counts).

The *Whyte* case is especially similar and instructive.  In that case, a defendant was charged with, *inter alia*, RICO conspiracy with underlying predicate acts that included a drug conspiracy, kidnapping, and attempted murder; and 924(c) counts alleging use of a firearm in furtherance of the racketeering conspiracy and drug distribution.  630 Fed. App'x. at 106, 109.  A jury convicted the defendant of the two 924(c) counts, one charging use of a firearm in furtherance of the racketeering conspiracy, and the other charging use of a firearm in furtherance of the drug distribution subsumed within the RICO conspiracy count.  *See id.* at 109. The Second Circuit concluded that one of the two 924(c) convictions "must be reversed" because Congress did not intend multiple 924(c) convictions predicated on lesser and greater offenses charged within the same racketeering count.  *See id.* at 109-10.

That same result is necessary here, because Mr. Enix's convictions as to Counts 2 and 9 both involve the predicate conduct charged in the RICO conspiracy in Count 1.  The Second Circuit put it best in reversing one of the 924(c) counts in Judge Siragusa's *Finley* case: "In our view, it was not Congress's intention in using the words, 'a second or subsequent conviction' to secure the imposition of a second, mandatory 25-year sentence where the two criminal transactions . . . are so inseparably intertwined."  245 F.3d at 208.

38

Both of Mr. Enix's 924(c) convictions cannot stand, and one must be set aside, because Congress did not intend that a second 924(c) conviction – with its mandatory 25-year sentence[14] – would be imposed when two 924(c) counts involve the same intertwined and overlapping conduct. *See also Wallace*, 447 F.3d at 190. Accordingly, this Court should set aside one of the two 924(c) counts and enter judgment of acquittal as to one of the two, because both cannot stand together.

## RULE 33 AND A NEW TRIAL

### a) In the Alternative, a New Trial is Necessary

Rule 33 provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33(a). The rule gives a trial court broad discretion to set aside a jury verdict and order a new trial "to avert a perceived miscarriage of justice." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992)). Although courts generally must "defer to the jury's resolution of conflicting evidence and assessment of witness credibility," in exceptional circumstances, such as when testimony is "patently incredible," a district court can reject trial testimony and order a new trial. *See Ferguson*, 246 F.3d at 133-34. "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for

---

[14] Where, as here, a defendant would suffer a 25-year mandatory minimum sentence derived from *Pinkerton* liability arising out of the conduct of others, the circumstances favoring relief are even more compelling than those presented in *Finley* and its progeny. And the *Pinkerton* liability underscores the point that the two 924(c) counts in this case are overlapping and indistinguishable.

acquittal under Rule 29," but it must exercise its Rule 33 authority "sparingly" and in extraordinary circumstances. *Id.* at 134.  Unlike with a Rule 29 motion, a judge adjudicating a Rule 33 motion may weigh the evidence and determine the credibility of witnesses, and is not required to view the evidence in the light most favorable to the government. *See Sanchez*, 969 F.2d at 1413; *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).  A new trial motion should be granted to prevent a serious miscarriage of justice and to prevent an injustice "such that an innocent person may have been convicted" giving rise to the need for a new trial. *United States v. Ferguson*, 49 F. Supp. 2d 321, 323 (S.D.N.Y. 1999) (citing *Sanchez*, 969 F.2d at 1414).

Those exceptional circumstances are present here.  In the event that this Court concludes that it lacks Rule 29 authority to enter judgment of acquittal as to any count, in the alternative it should order a new trial under Rule 33.

### 1) A New Trial Is Necessary as to Count 1 Because The Jury Did Not Unanimously Agree that Mr. Enix Joined the Same Racketeering Conspiracy as His Co-Defendants.

As explained in Part (d), *supra*, the jury's answers on the special verdict form for Count 2 reveal that the jury concluded that Mr. Enix was not a part of the conspiracy and did not reach the same agreement as his co-defendants.  The conviction as to Count 1 should therefore be set aside and acquittal entered in favor of Mr. Enix.

In the alternative, this Court must order a new trial as to Count 1 because the jury was not unanimous as to that count, and because errors related to the

40

verdict sheet necessitate a new trial as to Count 1.  The lack of unanimity is discussed *supra*.  The jury clearly concluded that Tim Enix did not conspire with his co-defendants to participate in the same conspiracy as they were convicted of joining with one another.  Special verdict questions as to Count 1 may have helped ensure unanimity as to a single agreement and single conspiracy, but in the absence of special verdict questions for Count 1, the special verdict questions and answers as to Count 2 reveal that jurors were not unanimous as to a single agreement with the same racketeering acts underlying the agreement.

Consequently, Mr. Enix's conviction as to Count 1 cannot stand.  To allow his conviction despite the fact that jurors found that he did not join the same agreement as his co-defendants would result in a manifest injustice.  He clearly is not guilty of participating in the RICO conspiracy that jurors concluded his co-defendants joined.  If this Court will not set aside his conviction and enter judgment of acquittal as to Count 1, it should nevertheless order a new trial on that count to prevent unjust conviction without sufficient juror unanimity.

### 2) A New Trial Is Necessary as to Counts 1, 2, 8, and 9 Because the Interest of Justice Necessitates Re-Trial as to Mr. Enix on These Counts.

In the event that this Court disagrees that the insufficiency of the evidence as to Counts 1, 2, 8, and 9 warrant judgment of acquittal, in the alternative it should order a new trial as to those counts.  Consideration of the evidence adduced at trial reveals that Mr. Enix is not guilty of these counts and that allowing his conviction to stand would constitute a manifest injustice.  This Court should

exercise its discretion to avoid that result by ordering a new trial in the interest of justice, pursuant to Rule 33.

## MR. ENIX JOINS THE POST-VERDICT SUBMISSIONS OF HIS CO-DEFENDANTS.

It is anticipated that Mr. Enix's co-defendants will submit post-verdict submissions. To the extent that these submissions pertain or relate to Mr. Enix and provide for the relief requested in this memorandum or additional relief, Mr. Enix incorporates their arguments by reference, and he asks that this Court grant him additional relief warranted by these co-defendants' submissions.

## CONCLUSION

Mr. Enix's conviction as to Count 2 cannot stand in light of *Dimaya*. His pre-verdict motion to dismiss should be granted, and his conviction as to Count 2 should be set aside. Any other result would deprive him of his right to due process under the Fifth Amendment.

In addition, judgment of acquittal is warranted as to each of Counts 1, 2, 8, and 9 (as renumbered in the redacted indictment), because the evidence is insufficient to sustain conviction as to each of these counts.

In the alternative, this Court should order a new trial under Rule 33 because the verdict sheet demonstrates that the jury was not unanimous that Mr. Enix joined the same conspiracy as co-defendants Pirk and Jenkins. As to any count of conviction that

42

is not set aside in accordance with Rule 29, the interest of justice requires that Mr.

Enix be afforded a new trial for that count or those counts.


DATED:      Buffalo, New York
            June 25, 2018


                          **CONNORS LLP**
                          *Attorneys for Defendant Timothy Enix*


                          By:  ___/s James W. Grable, Jr._____
                              Terrence M. Connors, Esq.
                              James W. Grable, Jr., Esq.
                              1000 Liberty Building
                              424 Main Street
                              Buffalo, NY  14202
                              716-852-5533
                              *tmc@connorsllp.com*
                              *jwg@connorsllp.com*


43