# MANDATE

## UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of August, two thousand twenty-two,

Before:     Amalya L. Kearse,
            Dennis Jacobs,
            William J. Nardini,
                    *Circuit Judges.*

_____

United States of America,                          **JUDGMENT**

                    Appellee,                       Docket Nos. 19-610(L), 19-637(CON),
                                                    19-2778 (CON)
        v.

Andre Jenkins, AKA Little Bear, David Pirk,
Timothy Enix, AKA Blaze,

                    Defendants - Appellants.

_____

The appeals in the above captioned case from judgments of the United States District Court for the Western District of New York were argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's judgments are AFFIRMED in part, VACATED in part, and the matter REMANDED for further proceedings consistent with this Court's opinion and concurrently filed summary order.

                                        For the Court:
                                        Catherine O'Hagan Wolfe,
                                        Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 08/26/2022

19-610-cr (L)
United States v. Jenkins

# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term, 2021

Nos. 19-610-cr (L); 19-637-cr (Con), 19-2778-cr (Con)

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

ANDRE JENKINS, AKA LITTLE BEAR, DAVID PIRK, TIMOTHY ENIX, AKA
BLAZE,
*Defendants-Appellants.*[*]

_____

On Appeal from a Judgment of the United States District Court for
the Western District of New York.

_____

ARGUED: MAY 18, 2022
DECIDED: AUGUST 5, 2022

_____

Before: KEARSE, JACOBS, and NARDINI, *Circuit Judges.*

_____

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

Defendants-Appellants Andre Jenkins, David Pirk, and Timothy Enix were convicted in the United States District Court for the Western District of New York (Elizabeth A. Wolford, Chief Judge) of firearms, narcotics, and racketeering offenses following a jury trial at which Pirk and Enix testified in their own defense. In a concurrently filed summary order, we consider and reject nearly all of Defendants-Appellants' arguments except with respect to vacatur of Pirk's and Jenkins's convictions on Count 2 of the Superseding Indictment. In this opinion, we hold that, contrary to Pirk's and Enix's arguments, the district court did not err in instructing the jury on the principles to use in evaluating the testimony of interested witnesses, including Pirk and Enix. The district court's instruction did not assume the testifying defendants' guilt or otherwise undermine the presumption of innocence. Accordingly, we AFFIRM in part and VACATE in part the judgments of the district court and REMAND the case to the district court for further proceedings consistent with this opinion and the concurrently filed summary order.

———————————

KATHERINE A. GREGORY, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee*.

MICHAEL S. DEAL, Legal Aid Bureau of Buffalo, Inc., Buffalo, NY, *for Defendant-Appellant Jenkins*.

WILLIAM T. EASTON (Cheryl M. Buth, Meyers Buth Law Group, Orchard Park, NY, *on the brief*), Easton Thompson

Kasperek Shiffrin LLP, Rochester, NY, *for Defendant-Appellant Pirk*.

JAMES W. GRABLE, JR. (Terrence M. Connors, Rebecca F. Izzo, *on the brief*), Connors LLP, Buffalo, NY, *for Defendant-Appellant Enix*.

———————————————

WILLIAM J. NARDINI, *Circuit Judge*:

Defendants-Appellants Andre Jenkins, David Pirk, and Timothy Enix appeal from judgments of conviction entered after a jury trial on narcotics, firearms, and racketeering offenses. In this opinion, we address only Pirk's challenge, which Enix joins, to the district court's instruction on interested witnesses. Finding no error in that instruction, we AFFIRM the judgment of the district court in all respects but one. For reasons discussed in a concurrently filed summary order, we VACATE Pirk's and Jenkins's convictions on Count 2 of the Superseding Indictment and REMAND the case for further proceedings.

## I.    Background

Pirk, Enix, and Jenkins belonged to a motorcycle gang known as the Kingsmen Motorcycle Club ("KMC").  Pirk was the National President of the KMC beginning in 2013.  Enix was the Regional President of Florida and Tennessee and was appointed to the position of National Secretary and Treasurer by Pirk.  Jenkins did not hold a leadership position but was a member of a Florida KMC chapter.

The government charged Pirk, Enix, and Jenkins with racketeering, narcotics, and firearms offenses arising out of their membership in the KMC.  At trial, Pirk and Enix took the witness stand and testified on their own behalf.  After the close of evidence, the district court instructed the jury, in part:

> If [a witness] is interested in the outcome of the trial on one side or the other, you may consider such interest in determining how much credit or weight you will give to his or her testimony.  A witness is an interested witness when by reason of relationship, friendship, antagonism, or prejudice in favor of or against one side or the other, his or her testimony, in your judgment, is biased or likely to be biased toward the side which he or she favors. . . . In determining the credibility of a witness, you may

4

consider whether such witness has any bias or prejudice for or against any party in the case. In determining the credibility and weight to be given to the testimony of a witness, you should take into account such bias or prejudice. Evidence that a witness is biased or prejudiced for or against a party requires you to view the witness'[s] testimony with caution, to weigh it with care, and to subject it to close and searching scrutiny. However, keep in mind that you should not reject the testimony of an interested witness merely because of such interest. Nor should you accept the testimony of a witness merely because of such disinterest. It is your duty in the case of all witnesses to accept such of the testimony as you believe to be truthful and reject only such testimony as you believe to be false. As I said, interest and disinterest are merely factors you may consider in evaluating credibility.

As I have mentioned, in a criminal case, a defendant cannot be required to testify. Our Constitution provides that he has the right to elect not to testify. However, if a defendant chooses to testify, he is, of course, permitted to take the witness stand on his own behalf. In this case, Mr. Pirk and Mr. Enix decided to testify. You should examine and evaluate their testimony just as you would the testimony of any witness with an interest in the outcome of this case.

Joint App'x at 18408–09. The jury ultimately convicted Defendants-Appellants on each of the charges in the Superseding Indictment. This appeal followed.

## II. Discussion

On appeal, Pirk claims that the district court's interested-witness instruction undermined the presumption of innocence to which all criminal defendants are entitled at trial. *See Nelson v. Colorado*, 137 S. Ct. 1249, 1255–56 (2017) ("Axiomatic and elementary, the presumption of innocence lies at the foundation of our criminal law." (internal quotation marks and alteration omitted)). For the following reasons, we disagree.

### A. Standard of review

Although Defendants-Appellants submitted their own proposed jury instruction and lodged a general objection to the instructions "to the extent the Court's proposed charge is different from those that [Defendants-Appellants] submitted," Joint App'x at 17951, Pirk did not specifically object to the district court's proposed

interested witness instruction.  Pirk therefore concedes that he did not

preserve the issue for appellate review, because "[a] mere 'request for

an instruction before the jury retires' does not 'preserve an objection

to the instruction actually given by the court.'"  *United States v. Solano*,

966 F.3d 184, 193 (2d Cir. 2020) (quoting *Jones v. United States*, 527 U.S.

373, 388 (1999)); *see also* Fed. R. Crim. P. 30(d) ("A party who objects

to any portion of the instructions . . . must inform the court of the

specific objection and the grounds for the objection before the jury

retires to deliberate.").  Accordingly, we review for plain error.  Fed.

R. Crim. P. 52(b); *Solano*, 966 F.3d at 193.  On plain error review, the

burden rests on the appellant to establish that there is "(1) error, (2)

that is plain, and (3) that affects substantial rights.  If all three

conditions are met, an appellate court may then exercise its discretion

to notice a forfeited error, but only if (4) the error seriously affects the

fairness, integrity, or public reputation of judicial proceedings."

*Solano*, 966 F.3d at 193 (internal quotation marks and alterations omitted).

### B.    Interested-witness jury instructions in criminal cases

If the district court decides to instruct a jury on how to evaluate the testimony of a defendant who chooses to testify, the district court must be careful not to undermine two "bedrock constitutional principles": first, "that a defendant has the right to, but is not required to, testify in his own defense at trial," and second, "that the defendant is presumed innocent until proven guilty."  *Solano*, 966 F.3d at 194. For this reason, a district court errs when it instructs the jury that the defendant has a motive to testify falsely, whether it does so explicitly or implicitly.  In *United States v. Gaines*, we found error in instructions that explicitly identified the defendant's "deep personal interest in the result of his prosecution" as "creat[ing] a motive for false testimony." 457 F.3d 238, 242 (2d Cir. 2006).  We held that this instruction undermined the presumption of innocence and said that its "critical defect" was "its assumption that the defendant is guilty."  *Id.* at 247.

Indeed, such an instruction would be inaccurate in the case of an innocent testifying defendant, who would have a motive to testify truthfully to exonerate himself.  *See id.* at 246.

We reached a similar conclusion in *United States v. Brutus* with respect to a jury charge that highlighted the defendant as having "a deep personal interest in the outcome of her prosecution," an "interest which is possessed by no other witness," and that "creates a motive to testify falsely."  505 F.3d 80, 85 (2d Cir. 2007).  Relying on *Gaines*, we held that this instruction "impermissibly undermines the presumption of innocence because it presupposes the defendant's guilt."  *Id.* at 87.  We also extended the principle embodied by *Gaines* by adding that the error in a guilt-assuming jury instruction cannot be cured or balanced by additional, more favorable language.  *Id.* Likewise, in *United States v. Mehta*, we found plain error in a charge that told the jury that they could "consider the fact that a defendant's interest in the outcome of the case creates a motive for false testimony,

9

but it by no means follows that a defendant is not capable of telling the truth." 919 F.3d 175, 180 (2d Cir. 2019). Reviewing *Gaines* and *Brutus*, we noted that "[w]e have repeatedly held, in no uncertain terms, that this charge is forbidden," because "it presupposes the defendant's guilt." *Id.* at 182 (internal quotation marks omitted).

Finally, in *United States v. Solano*, we surveyed these and other decisions and applied their reasoning to identify plain error in a jury charge "which included the instruction (a) that a witness's interest 'in the outcome of the case . . . . creates a motive on the part of the witness to testify falsely[,]' and (b) that this applies to 'any witness[.]'" 966 F.3d at 197 (internal citation omitted). Such an instruction, we held, "suffers the same substantive constitutional defect identified and prohibited by *Gaines* and *Brutus* and their progeny." *Id.* Even though the district court's instruction did not explicitly single out the defendant as an interested witness (after identifying interested witnesses as possessing a motive to testify falsely), it did so implicitly

because "[i]t is a matter of common sense that the defendant in a criminal case has a profound interest in its outcome, [so] an instruction indicating to the jury that that interest gives him a motive to testify falsely is contrary to the presumption of innocence." *Id.* (internal citations omitted). Taken together, these cases reflect that a trial court may not, explicitly or implicitly, instruct the jury that a defendant has a motive to testify falsely because such guilt-assuming language runs counter to the presumption of innocence.

## C. Application

Contrary to Pirk's arguments, the district court's jury charge did not run afoul of these principles. At no point did the court assume the defendants' guilt by suggesting, directly or indirectly, that the defendants had a motive to testify falsely. The instructions here were guilt-neutral, not guilt-assuming. The district court even-handedly instructed the jury to consider the defendants' "testimony just as you would the testimony of any witness with an interest in the outcome of this case" after generally defining interested witnesses as those

whose testimony, "by reason of relationship, friendship, antagonism, or prejudice in favor of or against one side or the other, . . . in your judgment, is biased or likely to be biased toward the side which he or she favors." Joint App'x at 18408–09. The court did not equate "biased or likely to be biased" with a motive to testify falsely. Quite to the contrary, the court explained that a witness's interest or lack thereof should not cause the jury to automatically reject or accept a witness's testimony. Although we do not mandate that district courts provide an interested witness instruction or use any particular verbal formulas when they do so, we commend the charge given in the present case as a carefully balanced instruction on witness bias that did not undermine the presumption of innocence.

Accordingly, we find that the district court did not commit error (much less plain error) in instructing the jury on the principles to use in evaluating Pirk's and Enix's testimony.

III.    **Conclusion**

In sum, we hold that the district court's interested-witness instructions did not assume the defendants' guilt or otherwise undermine the presumption of innocence and were thus not erroneous.  We therefore AFFIRM in part, and, for the reasons stated in the concurrently filed summary order, VACATE in part the judgments of the district court, and REMAND the matter for further proceedings consistent with this opinion and the concurrently filed summary order.

**MANDATE**

19-610-cr (L)
*United States v. Jenkins*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of August, two thousand twenty-two.

Present:     AMALYA L. KEARSE,
             DENNIS JACOBS,
             WILLIAM J. NARDINI,
                         *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                            19-610-cr (L), 19-637-cr
>                                               (Con), 19-2778-cr (Con)

ANDRE JENKINS, AKA LITTLE BEAR,
DAVID PIRK, TIMOTHY ENIX, AKA BLAZE,

> *Defendants-Appellants.**

---

| | |
|---|---|
| For Appellee: | KATHERINE A. GREGORY, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY |
| For Defendant-Appellant Jenkins: | MICHAEL S. DEAL, Legal Aid Bureau of Buffalo, Inc., Buffalo, NY |
| For Defendant-Appellant Pirk: | WILLIAM T. EASTON (Cheryl M. Buth, Meyers Buth Law Group, Orchard Park, NY, *on the brief*), |

---

* The Clerk of Court is directed to amend the caption as set forth above.

**MANDATE ISSUED ON 08/26/2022**

Easton Thompson Kasperek Shiffrin LLP,
Rochester, NY

For Defendant-Appellant Enix:    JAMES W. GRABLE, JR. (Terrence M. Connors,
Rebecca F. Izzo, *on the brief*), Connors LLP,
Buffalo, NY

Appeal from a judgment of the United States District Court for the Western District of New York (Elizabeth A. Wolford, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **VACATED** and **REMANDED IN PART**.

Defendants-Appellants Andre Jenkins, David Pirk, and Timothy Enix appeal from their convictions (and, in Enix's case, his sentence) for narcotics and firearms offenses, as well as for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, and murder in aid of racketeering in connection with their membership in the Kingsmen Motorcycle Club ("KMC"). Specifically, the jury found that (1) Jenkins, Pirk, and Enix committed RICO conspiracy in violation of 18 U.S.C. § 1962(d) (Count 1); (2) Jenkins, Pirk, and Enix possessed a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Count 2); Jenkins and Pirk committed the murder of Paul Maue in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) (Count 3); Jenkins and Pirk committed the murder of Daniel "DJ" Szymanski in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) (Count 4); Jenkins and Pirk possessed and discharged a firearm in furtherance of a crime of violence (specifically the Maue murder charged in Count 3) in violation of 18 U.S.C. § 924(c) and (j) (Count 5); Jenkins and Pirk possessed and discharged a firearm in furtherance of a crime of violence (specifically the Szymanski murder charged in Count 4) in violation of 18 U.S.C. § 924(c) and (j) (Count 6); Jenkins possessed a firearm as a felon in violation of 18 U.S.C. § 922(g) (Count 7); Jenkins, Pirk, and Enix used and maintained the KMC's South Buffalo clubhouse for the purpose of drug distribution and use in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (Count 8); and Jenkins, Pirk, and Enix possessed firearms in furtherance of a drug trafficking crime (specifically Count 8) in violation of 18 U.S.C. §§ 924(c) and 2 (Count 9). In our concurrently filed opinion, we reject Pirk and Enix's challenge to the district court's interested-witness instruction to the jury. In this summary order, we conclude that none of Defendants-Appellants' remaining challenges warrants reversal, with one exception described below. We assume the parties' familiarity with the record.

I.    **Evidentiary sufficiency challenges**

Jenkins, Pirk, and Enix challenge the sufficiency of the evidence underlying their convictions. We review such challenges *de novo*. *United States v. Ho*, 984 F.3d 191, 199 (2d Cir. 2020). In evaluating the sufficiency of the evidence, we draw all permissible inferences in favor of the government, resolve all issues of credibility in favor of the jury's verdict, and "ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

2

Pirk first challenges the sufficiency of the evidence underlying his convictions on Counts 1, 3, 4, 5, and 6. Specifically, Pirk notes that his liability for an intentional murder under New York Penal Law § 125.25(1) was an element of each of these charges.[1] The government's theory at trial was that Jenkins shot Maue and Szymanski at Pirk's direction and with his assistance such that Jenkins was liable for their murders as a principal and Pirk was liable as an aider and abettor. Pirk argues that the government introduced insufficient evidence of his accessorial liability for the Maue and Szymanski murders at trial, and thus the government failed to prove an element of Counts 1, 3, 4, 5, and 6. Accessorial liability under New York law requires that the defendant possess the same mental culpability required of the principal and "personally engage[] in some voluntary act that was specifically connected to the actual perpetrator's misconduct and in doing so, he intentionally and directly assisted in achieving the ultimate goal of the criminal enterprise." *United States v. Delgado*, 972 F.3d 63, 79 (2d Cir. 2020) (internal quotation marks, citations, and alterations omitted). Similarly, under federal law, a defendant is liable "if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Id.* at 73 (internal quotation marks omitted).

Pirk argues that the evidence was insufficient to establish (1) his intent to kill Maue and Szymanski and (2) his performance of an affirmative act in furtherance of the murders under either standard. We disagree.[2] As to Pirk's mental culpability, multiple witnesses testified that Jenkins told them that Pirk ordered the murders. As to Pirk's facilitation of the murders, evidence showed that Pirk, the president of the motorcycle club to which Jenkins belonged, ordered Jenkins to commit the murders. In addition, testimony of a club member present at the scene of the murders and corresponding cell phone records established that Pirk called Maue just before the murders, prompting Maue and Szymanski to leave the clubhouse just as Jenkins arrived in the parking lot where the murders occurred. A reasonable inference to draw from this evidence is that Pirk called Maue in order to facilitate the murders by drawing Maue and Szymanski from the relative safety of the clubhouse out into the parking lot where they were more vulnerable, so that Jenkins could kill them more easily. The evidence was therefore sufficient to establish both Pirk's intent and his affirmative facilitation of the murders and thus his accessorial liability under New York and federal law.

Pirk raises one additional challenge to the sufficiency of the evidence underlying his convictions on Counts 5 and 6 for aiding and abetting Jenkins's violations of 18 U.S.C. § 924(j). Pirk argues that there was insufficient evidence that he knew that Jenkins would use a gun in commission of the murders that served as the predicates to Counts 5 and 6, and thus insufficient evidence that Pirk "actively participated in the underlying . . . violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission" as required by *Rosemond v. United States*, 572 U.S. 65, 67 (2014). There was, however, sufficient

---

[1] Pirk was charged as an aider and abettor to the murders under a mix of state and federal law. Specifically, the murder enhancement to Count 1's RICO conspiracy charged Pirk as an aider and abettor under New York Penal Law § 20.00; the murder in aid of racketeering offenses charged in Counts 3 and 4 charged Pirk as an aider and abettor under both New York Penal Law § 20.00 and 18 U.S.C. § 2; and the firearms offenses charged in Counts 5 and 6 charged Pirk as an aider and abettor under 18 U.S.C. § 2.

[2] "Although the principles of accomplice liability under New York law may differ somewhat from the corresponding federal law," *Delgado*, 972 F.3d at 78, those differences are immaterial here and the evidence was sufficient to hold Pirk liable for the murders as an aider and abettor under either New York or federal law.

circumstantial evidence that Pirk was aware that Jenkins would use or carry a gun during the commission of the murders. *See United States v. Zhong*, 26 F.4th 536, 559 (2d Cir. 2022) ("[T]he sufficiency-of-the-evidence test may be satisfied by circumstantial evidence alone." (internal quotation marks omitted)). Testimony by KMC member Jimmy Ray Fritts established that, shortly before the murders, Jenkins stayed with Fritts in Tennessee and purchased from Fritts the gun he would eventually use in the murders. Pirk joined Fritts and Jenkins in Tennessee, and the men, along with other KMC members, discussed Pirk's plans to employ Jenkins to determine which New York KMC members were leaking information to rival clubs, a plan that involved "eliminating" a suspected leaker named Filip Caruso and finding out who else was responsible. Joint App'x at 15376. Pirk and Jenkins left Tennessee together to travel to New York, and the murders occurred one week later. A reasonable jury could infer that, during their travels to New York together to "eliminate" Caruso, Pirk learned that Jenkins was armed with a gun, and that Pirk therefore knew that Jenkins was armed with a gun when Pirk ordered him to kill Maue and Szymanski. Accordingly, the evidence that Pirk knew Jenkins would carry or use a gun in connection with the murders was sufficient under *Rosemond*.

Next, Enix challenges the sufficiency of the evidence underlying his convictions on Counts 1, 8, and 9.[3] Turning first to Count 1, "[t]he conspiracy provision of the [RICO statute], 18 U.S.C. § 1962(d), proscribes an agreement to conduct or to participate in the conduct of an enterprise's affairs through a pattern of racketeering activity." *United States v. Arrington*, 941 F.3d 24, 36 (2d Cir. 2019) (internal quotation marks and alteration omitted). The government "need only prove that the defendant knew of, and agreed to, the general criminal objective of a jointly undertaken scheme." *Id.* at 36–37. Although Enix argues that he had no involvement in or awareness of some of the criminal conduct charged as racketeering acts, the racketeering conspiracy involved far broader purposes and "there is no rule requiring the government to prove that a conspirator knew of all criminal acts by insiders in furtherance of the conspiracy." *United States v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000). In addition to the conduct Enix claims he had no involvement in, the Superseding Indictment charged that the purposes of the racketeering enterprise included "[p]reserving and protecting the [KMC's] power, territory, and reputation . . . through intimidation, violence, threats of violence, assaults, murder, and attempted murder." Gov't App'x at 9. Ample evidence established Enix's involvement in the plan to shoot members of a rival motorcycle gang if necessary to secure return of KMC property in Florida and avoid damage to the KMC's reputation. Count 1 also charged that the purposes of the KMC included "[g]enerating and maximizing [KMC's] profits, reputation, and membership . . . from a variety of illegal activity including but not limited to drug trafficking, firearms sales, sale of untaxed cigarettes, sale of alcohol, gambling, robbery, and prostitution." *Id.* Multiple witnesses reported that KMC clubhouses illegally sold alcohol and tax-free cigarettes, and that Enix, the National Secretary and Treasurer of the KMC, concealed these and other income streams from the KMC's outside accountant. A rational factfinder could therefore conclude beyond a reasonable doubt that Enix agreed with other KMC members that the KMC would function as a unit for the common purposes charged in the indictment.

Enix also challenges the sufficiency of the evidence supporting his conviction on Count 8 for maintaining the KMC's South Buffalo clubhouse as a drug-involved premises in violation of

---

[3] Pirk joins in Enix's arguments with respect to Counts 8 and 9.

21 U.S.C. § 856(a)(1). Section 856(a)(1) proscribes the knowing use or maintenance of any place "for the purpose of manufacturing, distributing, or using any controlled substance." Enix accepts that the "statute does not state that drug use must be the 'primary purpose' of maintaining a premises," but argues that the evidence was insufficient because "[h]ere, it was not *a* purpose." Enix Br. at 67. On the contrary, multiple witnesses testified to ubiquitous drug use and sales at the KMC clubhouses, including the South Buffalo clubhouse, and one former KMC member testified that the availability of drugs in the KMC clubhouses increased certain of the club's revenue streams and was central to driving enrollment of new members. Enix also argues that there is insufficient evidence of his *mens rea*. But Enix occupied a high-level position in the national KMC organization and was responsible for paying taxes and other bills for the South Buffalo clubhouse, which he occasionally visited. A rational jury could infer from the evidence of ubiquitous drug use at KMC clubhouses (including the South Buffalo clubhouse), Enix's attendance at the South Buffalo clubhouse, and his leadership position in which he was responsible for the clubhouses' financial reporting and legal structure, that Enix knew about the drug use and distribution in the clubhouse and intended for it to continue in order to boost the KMC's membership and profits. This evidence was also sufficient to hold Enix liable under a *Pinkerton* theory based on his participation in the RICO conspiracy charged in Count 1.[4] *See United States v. Gershman*, 31 F.4th 80, 99 (2d Cir. 2022) ("A *Pinkerton* charge informs the jury that it may find a defendant guilty of a substantive offense that he did not personally commit if it was committed by a coconspirator in furtherance of the conspiracy, and if commission of that offense was a reasonably foreseeable consequence of the conspiratorial agreement." (internal quotation marks omitted)).

Enix also challenges the sufficiency of the evidence supporting his conviction on Count 9 for a violation of 18 U.S.C. § 924(c) predicated on Count 8. "In order to sustain a conviction under . . . § 924, the Government must demonstrate some nexus between the firearm and the drug selling operation," and show that "a reasonable jury could, on the evidence presented at trial, find beyond a reasonable doubt that possession of the firearm facilitated the drug trafficking crime." *United States v. Thompson*, 528 F.3d 110, 119 (2d Cir. 2008) (internal quotation marks omitted). At trial, the government elicited testimony that a shotgun was stored behind the bar at the South Buffalo clubhouse and was accessible to all KMC members there. Other testimony established that more firearms were stored upstairs and that a portion of the roof of the clubhouse from which KMC members could fire guns was "used . . . for security." Joint App'x at 7035. Just as "[p]ossession of a firearm to defend a drug stash clearly furthers the crime of possession with intent to distribute the contents of that stash," *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005), possession of a firearm for the purpose of securing a premises that is maintained for the purpose of drug use and distribution furthers that crime. This evidence was sufficient to hold Enix liable under a *Pinkerton* theory of liability based on his participation in the RICO conspiracy charged in Count 1. Given the clubhouse's utility as a safe haven for drug use and distribution by KMC members, a practice that drove up profits and membership, and the testimony that there were guns stored in every clubhouse to protect the premises from outside interference, a reasonable jury could conclude that the possession of guns in furtherance of the maintenance of the South Buffalo

---

[4] For the same reasons, we reject Pirk's challenge to his conviction on Count 8.

clubhouse as a drug-involved premises was foreseeable to Enix as a member of the RICO conspiracy.[5]

Finally, Jenkins argues that insufficient evidence supports his convictions on Counts 3 through 6. Jenkins argues that insufficient evidence supports his convictions on these counts because his convictions rest "in large part on the testimony of liars." Jenkins Br. at 38. Although Jenkins identifies several instances at trial during which either an internal inconsistency in a witness's testimony was exposed or the witness admitted to lying in another context, it is "well established that it is the province of the jury and not of the court to determine whether a witness who may have been inaccurate, contradictory and even untruthful in some respects was nonetheless entirely credible in the essentials of his testimony." *United States v. Flores*, 945 F.3d 687, 710–11 (2d Cir. 2019) (internal quotation marks, alteration, and emphasis omitted).

## II.     Challenges to the admission of evidence

Enix and Jenkins next raise several challenges to the admission of certain evidence at trial. Enix challenges the admission of testimony by former KMC members David Masse and Timothy Haley as lay opinions under Federal Rule of Evidence 701. We review the admission of lay opinion testimony for abuse of discretion. *United States v. Persico*, 645 F.3d 85, 99 (2d Cir. 2011). Under Federal Rule of Evidence 701, a lay witness may provide opinion testimony so long as the testimony is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge." "The rational-basis requirement is the familiar requirement of first-hand knowledge or observation." *United States v. Dawkins*, 999 F.3d 767, 793 (2d Cir. 2021) (internal quotation marks omitted). This requirement works in tandem with the helpfulness requirement, which "is designed to provide assurance against the admission of opinions which would merely tell the jury what result to reach." *Id.* (internal quotation marks and alteration omitted).

Enix objects to the district court's admission of Masse's opinion testimony on two subjects: (1) the object of the agreement formed between the KMC members gathered at a Florida clubhouse, namely that they would use violence if necessary to secure the return of their property from a rival motorcycle group; and (2) that one hundred percent of the KMC membership was generally aware that members used and distributed drugs inside KMC clubhouses. First, the district court did not abuse its discretion by admitting Masse's opinion as to the violent means by which the KMC members agreed to retrieve their property from the rival gang. Masse's opinion was rationally based on his participation in the conversation during which the plan was hatched, and helped the jury understand, from an insider's perspective, the lengths to which the group was willing to go to retrieve their property. Second, Enix waived any challenge to the district court's admission of Masse's testimony that one hundred percent of the KMC was generally aware of drug use and distribution within the clubhouses. "A claim is waived . . . when a defendant makes an intentional decision not to assert a right or, put another way, acts intentionally in pursuing, or not pursuing, a particular course of action." *United States v. Williams*, 930 F.3d 44, 64–65 (2d Cir. 2019) (internal quotation marks and alteration omitted). That is the case here. After the district

---

[5] For the same reasons, we reject Pirk's challenge to his conviction on Count 9.

court granted Enix's motion to strike the testimony and give a curative instruction but ruled that the government would be allowed to recall Masse to the stand, defense counsel made the tactical decision to allow the testimony to stand and explore the issue through cross examination rather than draw attention to the issue.

Enix also challenges the admission of testimony by former KMC member Timothy Haley that (1) KMC was a "criminal organization" and "a collection of gangsters and tough guys," Joint App'x at 13891–92; and (2) many KMC members used drugs in clubhouses "that these defendants control," Joint App'x at 13893–94. As to the first portion of challenged testimony, even assuming that its admission was an abuse of discretion, it was harmless. "[E]ven manifestly erroneous evidentiary rulings are insufficient to warrant reversal if they do not affect substantial rights," a determination which "depends on the likelihood that the error affected the outcome of the case." *United States v. Miller*, 626 F.3d 682, 690 (2d Cir. 2010) (internal quotation marks omitted). There can be no serious claim that the challenged testimony had any likelihood of affecting the outcome of the case in light of the overwhelming evidence of guilt. As to the second portion of challenged testimony, Enix successfully objected, and the district court instructed the jury to disregard the testimony. "It is an 'almost invariable assumption of the law that jurors follow their instructions,'" and Enix provides no persuasive reason to suspect that the jurors here did otherwise. *United States v. Rasheed*, 981 F.3d 187, 196 (2d Cir. 2020) (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)).

Jenkins challenges the denial of his motion for a mistrial based on the admission of testimony by Lieutenant Darryl Truty, a detective assigned to investigate the Maue and Szymanski murders, as a lay opinion under Rule 701 and the denial of his motion for a new trial under Federal Rule of Criminal Procedure 33 based on the admission of testimony regarding a post-arrest statement made by Enix to law enforcement. We review both challenged decisions for abuse of discretion. *Rasheed*, 981 F.3d at 195 (reviewing denial of mistrial for abuse of discretion); *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (reviewing denial of Rule 33 motion for abuse of discretion).

Truty prepared a composite video combining surveillance footage from two locations visited by Jenkins on the night of the Maue and Szymanski murders and testified that the black-and-white video showed Jenkins returning after the murders with stains on his jeans that were consistent with blood. Jenkins argues that Truty's testimony did not meet the requirements of Rule 701 and thus it was error to admit it. Even if the admission of Truty's testimony was erroneous, any error was harmless. *United States v. Garcia*, 413 F.3d 201, 217 (2d Cir. 2005) (evaluating admission of opinion testimony under Rule 701 for harmless error); *see also United States v. Apuzzo*, 555 F.2d 306, 308 (2d Cir. 1977) (evaluating failure to grant a mistrial for harmless error). The evidence of Jenkins's guilt with respect to the murders was overwhelming, and Truty's testimony about the stains was cumulative of eyewitness testimony by Rene Faulkner that Jenkins returned from the South Buffalo clubhouse with blood on his jeans. We therefore affirm the district court's denial of Jenkins's motion for a mistrial based on the admission of Truty's testimony.

With respect to the second challenge, Jenkins argues that the admission of a post-arrest statement by Enix thanking law enforcement for "getting the guy" who murdered Maue and Szymanski via the testimony of a federal agent and Enix himself constituted a manifest injustice,

and thus that the district court erred by denying Jenkins's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. Rule 33 allows a court to order a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A court evaluating a Rule 33 motion must "examine the entire case, take into account all facts and circumstances, and make an objective evaluation, keeping in mind that the ultimate test for such a motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Landesman*, 17 F.4th 298, 330 (2d Cir. 2021) (internal quotation marks omitted). Jenkins argued below that he was prejudiced by this testimony because an inculpatory statement by a co-defendant would be given special weight by the jury and because, had he known that the statement would be introduced, he would have pursued severance or an alternative trial strategy. The district court correctly rejected these arguments. First, as the district court noted, the evidence of Jenkins's guilt was overwhelming. Further, the district court instructed the jury to consider the statement only with respect to Enix's state of mind and not for the truth of who killed Maue and Szymanski, and Jenkins provides no persuasive reason to believe that the jury failed to follow this direction. *See Rasheed*, 981 F.3d at 196. Finally, the district court correctly rejected Jenkins's argument that he was unfairly surprised by the admission of the statement and thus lost the opportunity to pursue an individual defense strategy because the admissibility of Enix's statement was litigated well before trial. Accordingly, the district court did not abuse its discretion in denying Jenkins's Rule 33 motion.

## III. Pirk's right to be present during the May 1, 2018, in-chambers conference

Pirk argues that his Fifth and Sixth Amendment rights to be present at all stages of his trial were violated when the district court held a conference in chambers with a court security officer ("CSO") and counsel for Enix and the government regarding a comment made by a juror to the CSO. "A defendant in a criminal case has the right to be present at 'every trial stage.'" *United States v. Collins*, 665 F.3d 454, 459 (2d Cir. 2012) (quoting Fed. R. Crim. P. 43(a)(2)). Although the "constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, [the Supreme Court has] recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (internal citation omitted). "The Due Process Clause applies in lieu of the Sixth Amendment in situations where the defendant is not specifically confronting witnesses or evidence against him." *United States v. Jones*, 381 F.3d 114, 121 (2d Cir. 2004). Instead, "a defendant has a due process right to be present at a proceeding whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Gagnon*, 470 U.S. at 526 (internal quotation marks omitted). The presence of a defendant "is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.* (internal quotation marks omitted).

As an initial matter, the in-chambers conference involved only the questioning of a CSO concerning a remark a juror made to the CSO and therefore did not implicate Pirk's ability (or lack thereof) to confront witnesses or evidence against him, that is, his Sixth Amendment confrontation right. Nor did Pirk's absence from the conference relate, in a reasonably substantial way, to the fulness of Pirk's ability to defend the charges against him, that is, to his Fifth Amendment due process right. Pirk relies on cases involving a trial judge's *ex parte* communication with one or more jurors. *Ex parte* communications between judge and juror are particularly fraught because they "may unintentionally 'drift' into a supplemental instruction, for which the defendant has a

well-established right to be present." *Collins*, 665 F.3d at 460 (internal citations omitted). "Furthermore, unexpected questions or comments can generate unintended and misleading impressions of the judge's subjective personal views." *Id.* (internal quotation marks and alteration omitted). Here, however, there was no *ex parte* communication between the district court and any jurors, and so the concerns motivating the outcomes in these cases—avoiding *ex parte* supplemental instructions to the jury and preventing the jury from forming an impression of the judge's personal views—are not present. The district court therefore did not err in holding the May 1, 2018, in-chambers conference.

## IV.    The denial of Pirk's transfer motion

Pirk next argues that the district court erred by denying his motion for an intra-district transfer of the location of his trial from Buffalo to Rochester. We disagree. Federal Rule of Criminal Procedure 18 provides that "[t]he court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." The Advisory Committee notes to the 1966 amendment to Rule 18 also contemplate prejudice to the defendant as grounds for an intra-district transfer. Fed. R. Crim. P. 18 advisory committee's notes to 1966 amendment.

We find no abuse of discretion in the district court's careful weighing of the relevant factors and resulting denial of Pirk's transfer motion. *Cf. United States v. Maldonado-Rivera*, 922 F.2d 934, 966–67 (2d Cir. 1990) (reviewing a motion to transfer brought pursuant to Federal Rule of Criminal Procedure 21(a) based on adverse publicity for abuse of discretion). The district court acknowledged that "in the Buffalo area, pretrial press coverage of this case has been significant during various periods of time" but reasonably concluded that the sizable population in the Buffalo division, the years that had elapsed between the bulk of the potentially prejudicial press coverage and the trial, and careful *voir dire* would dilute any prejudicial effect. Joint App'x at 2606–09. Nor do we accept Pirk's argument that the district court underweighted the likely effect of holding such a substantial trial in Buffalo on her own docket.[6] The district court therefore did not abuse its discretion in denying Pirk's transfer motion.

## V.    Multiplicity challenges

Pirk argues that his convictions for Counts 5 and 6, § 924(j) convictions based on the murders in aid of racketeering of Maue and Szymanski, respectively, are multiplicitous and must therefore be vacated. "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Kerley*, 544 F.3d 172, 178 (2d Cir. 2008) (internal quotation marks omitted). We have held that the "appropriate unit of prosecution under § 924(c)(1) is the predicate

---

[6] Similarly, the district court appropriately took account of the preferences of the other defendants and their counsel, all of whom (except Pirk and Jenkins) expressed a strong preference for trying the case in Buffalo. Pirk argues that doing so was error because these defendants had pleaded guilty before the district court issued its written Decision and Order. But the district court's January 15, 2018, written Decision and Order simply memorialized the district court's reasoning for its May 9, 2017, oral denial of Pirk's motion. At the time that the district court orally denied Pirk's motion, these other defendants had not yet pleaded guilty, and so it was reasonable at that time for the district court to consider their preferences.

offense (i.e., the 'crime of violence') rather than the number of firearms." *United States v. Mejia*, 545 F.3d 179, 204–05 (2d Cir. 2008). Here, Counts 5 and 6 are predicated on separate offenses—namely, the murders of two victims, charged as separate offenses in Counts 3 and 4. Although Pirk emphasizes that the murders happened "within seconds" of each other, Pirk Br. at 66, such temporal proximity does not collapse the two murders into a single crime. *See Mejia*, 545 F.3d at 205–06 (rejecting multiplicity challenge to three separate § 924(c) charges based on two shooting incidents that injured three individuals).

## VI. Enix's procedural reasonableness challenge

Next, Enix argues that the district court erred by considering the Maue and Szymanski homicides as part of the nature and circumstances of Enix's offense under 18 U.S.C. § 3553(a). The district court agreed with Enix that the murders were not "relevant conduct" under U.S.S.G. § 1B1.3 for purposes of calculating Enix's advisory Guidelines range. During its consideration of the § 3553(a) factors at Enix's sentencing, however, the district court noted that Enix led a "violent motorcycle gang" and that it was "not surprising . . . that, ultimately, at the end of the day, two individuals end up being killed execution style in the back of the North Tonawanda clubhouse." Joint App'x at 19803–04. Enix contends that, once the district court determined that the homicides were not "relevant conduct" within the meaning of U.S.S.G. § 1B1.3, the district court was not allowed to consider the homicides in its analysis of the § 3553(a) factors. We disagree.

Although the concept of "relevant conduct" constrains a district court's ability to consider certain conduct in calculating a defendant's Guidelines range, a "district court may make its own evaluation of the characteristics of the defendant, and the need of the sentence to punish, deter, and protect the public." *United States v. Wernick*, 691 F.3d 108, 119 (2d Cir. 2012). A finding that certain acts "are not technically 'relevant conduct' to the specific offense charged . . . does not imply that those acts are not highly relevant (in a non-technical sense) to the district court's evaluation." *Id.* The district court therefore did not err by considering the homicides during Enix's sentencing.

## VII. Pirk and Jenkins's *Davis* challenge to Count 2

Finally, we vacate Pirk's and Jenkins's convictions on Count 2 for violations of 18 U.S.C. § 924(c) predicated on Count 1's RICO conspiracy. The government consents to vacatur of these convictions in light of our recent decision in *United States v. Capers*, 20 F.4th 105 (2d Cir. 2021), in which we held that RICO conspiracy is not categorically a crime of violence and thus cannot serve as a predicate for a conviction under § 924(c), *id.* at 120.

*     *     *

For the reasons stated above, and in the concurrently filed opinion, the judgment of the district court is **AFFIRMED IN PART** and **VACATED IN PART**, and the case is **REMANDED** to the district court for further proceedings consistent with this order.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk